**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
JUAN PEDRAZA,

                          Plaintiff,

              -against-

MANHATTAN MONSTER INC. d/b/a
THE MONSTER BAR, SPUNK EVENTS INC.
d/b/a SPUNK INC., CHARLES RAYMOND RICE,
DANIEL TOBEY, and LUIS GOMEZ,

                        Defendants.
------------------------------------------------------------------X

**23-CV-2596 (VF)**

**<u>ORDER</u>**

**VALERIE FIGUEREDO, United States Magistrate Judge**

        Attached to this Order are the following Court Exhibits:

- Exhibit 1: The draft jury charge circulated to the parties on December 30, 2024.

- Exhibit 2: Defendants' objections to Exhibit 1, received by the Court on January 2, 2025.

- Exhibit 3: The draft verdict sheet circulated to the parties on January 3, 2025.

- Exhibit 4: The draft jury charge circulated to the parties on January 6, 2025.

- Exhibit 5: The draft jury charge circulated to the parties on January 7, 2025.

- Exhibit 6: The draft verdict sheet circulated to the parties on January 7, 2025 and provided to the jury on January 10, 2025.

- Exhibit 7: The jury charge as read orally to the jury and provided to the jury on January 10, 2025.

        **SO ORDERED.**

DATED:      New York, New York
               January 13, 2025

                                       _____
                                       VALERIE FIGUEREDO
                                       United States Magistrate Judge

# EXHIBIT 1

**Court Exhibit 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
 JUAN PEDRAZA,

       Plaintiff,     **23-CV-2596 (VF)**

-against-

 MANHATTAN MONSTER INC. d/b/a   **<u>FINAL JURY INSTRUCTIONS</u>**
 THE MONSTER BAR, SPUNK EVENTS INC.
 d/b/a SPUNK INC., CHARLES RAYMOND RICE,
 DANIEL TOBEY, and JOSE LUIS LEPE,

       Defendants.
-------------------------------------------------------------
**VALERIE FIGUEREDO, United States Magistrate Judge**

## TABLE OF CONTENTS

I. GENERAL INSTRUCTIONS .......................................................................................... 4

   Introductory Remarks ................................................................................................. 4

   Duty of the Court ........................................................................................................ 5

   Duty of the Jury .......................................................................................................... 6

   Burden of Proof & Preponderance of the Evidence ................................................... 8

   What is Evidence ...................................................................................................... 10

   What is Not Evidence ............................................................................................... 11

   Direct and Circumstantial Evidence; Inferences ...................................................... 12

   Evidence for a Limited Purpose ............................................................................... 14

   Corporate Defendants/General Principles of Agency ............................................... 15

   Adverse Inference ...................................................**Error! Bookmark not defined.**

   Role of Counsel/Objections and Sidebars ................................................................ 17

   The Court's Role ....................................................................................................... 19

   Witness Credibility ................................................................................................... 20

   Preparation of Witnesses .......................................................................................... 23

II. SUBSTANTIVE CLAIMS ......................................................................................... 24

   A. Overview of Claims and Defenses ....................................................................... 24

   1. Discrimination Under Title VII ............................................................................ 27

   2. Discriminatory Termination Claim Under NYSHRL & NYCHRL...................... 30

   3. Individual Defendants' Liability for Discrimination Under NYSHRL & NYCHRL .... **Error! Bookmark not defined.**

   4. Retaliatory Termination Under Title VII ............................................................. 32

   5. Retaliatory Termination Under New York Labor Law..........**Error! Bookmark not defined.**

   6. Individual Defendant Dr. Femia's Liability Under the NYLL ............ **Error! Bookmark not defined.**

   7. Retaliatory Termination Under the Equal Pay Act ...............**Error! Bookmark not defined.**

   8. Retaliatory Termination Under NYSHRL & NYCHRL........................................ 35

   9. Individual Liability for Retaliation Under NYSHRL & NYCHRL ...................... 37

   B. Damages ............................................................................................................... 38

   1. Economic Damages – Back Pay Damages............................................................ 39

2. Back Pay and Front Pay Damages – Plaintiff's Duty to Mitigate .......................................... 41

3. Compensatory Damages ......................................................................................................... 42

4. Punitive Damages .................................................................................................................... 43

5. Willfulness ................................................................................**Error! Bookmark not defined.**

III.  CLOSING INSTRUCTIONS ................................................................................................... 46

Right to See Exhibits and Hear Testimony; Communications with the Court .......................... 46

Notes ......................................................................................................................................... 48

Duty to Deliberate/Unanimous Verdict .................................................................................... 49

Verdict Form/Return of Verdict ................................................................................................ 51

Selecting a Foreperson ............................................................................................................. 52

Juror Oath/Sympathy or Bias ................................................................................................... 53

IV. CONCLUSION ........................................................................................................................ 54

## I.  GENERAL INSTRUCTIONS

### **Introductory Remarks**

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions. First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case. These instructions really would apply to just about any trial. Second, I'll give you some specific instructions about the legal rules applicable to this particular case. Third, I'll give you some final instructions about procedure. Listening to these instructions may not be easy. It is important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention. You'll notice that I'm reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying. I will be distributing to you a verdict form in which to record your verdict. It will list the questions that you must consider, in the order that you should consider them.

## **Duty of the Court**

We are now approaching the most important part of this case: your deliberations. You have heard all of the evidence in this case, as well as the final arguments of the lawyers for the parties. It is my duty to provide these instructions, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration. It is your duty to accept these instructions of law and apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be. You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or should be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any particular instruction alone as stating the law, and you should consider my instructions as a whole when you retire to deliberate in the jury room. You are not to infer from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case. Any questions I asked were designed to make sure that the testimony was clear and to avoid confusion. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

## Duty of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in testimony; you draw whatever reasonable inferences you decide to draw from the facts as you determine them, and you determine the weight of the evidence.

In determining the facts, you must rely upon your own recollection of the evidence. None of what the lawyers have said in their opening statements, in their closing arguments, or in their objections is evidence. You should bear in mind particularly that a question put to a witness is never evidence. It is only the answer in the context of the question that is evidence. You may not consider any answer that I directed you to disregard. I remind you that nothing I have said during the trial or will say during these instructions is evidence. Similarly, the rulings I have made during the trial are not any indication of my views of what your decision should be.

The evidence before you consists of the answers given by witnesses, the exhibits that were received in evidence, and stipulated facts and admissions. Exhibits marked for identification but not received may not be considered as evidence. Anything you may have seen or heard about this case outside the courtroom is not evidence and must be disregarded entirely.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or

matters outside the case.

## Burden of Proof & Preponderance of the Evidence

Because this is a civil lawsuit, Mr. Pedraza has the burden of proving each disputed part of his claims by a preponderance of the evidence and Defendants have the burden of proving each disputed part of their affirmative defenses by a preponderance of the evidence.

A preponderance of the evidence simply means that something is more likely so than not so. In other words, if you find that the credible evidence on a given issue is evenly divided between Mr. Pedraza and Defendants, then you must decide that issue for Defendants. However, if you find that the scales tip, however slightly, in favor of Mr. Pedraza that the issue is more likely than not true, then you are to find that Mr. Pedraza has proven the issue by a preponderance of the evidence. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

If Mr. Pedraza fails to prove an issue by a preponderance of the evidence, then you must find that issue in favor of Defendants. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. You should attach no significance to the fact that certain witnesses were called to testify by Plaintiff or by Defendants. Nor should you attach any meaning to the fact that a document or other exhibit was introduced by one party rather than another. Every party is entitled to the benefit of any evidence tending to support its arguments, even if such evidence came from witnesses or documents introduced by the other party. This is true with respect to any contested issue of fact in this case.

The law does not require any party to call as witnesses each and every person who may

have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. You should not draw any negative inference against any party with respect to any issue in dispute based on their failure to produce a witness over whom the party has no control.

A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented. Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should not consider or discuss that standard in your deliberations.

For certain defenses and issues in this case, the Defendants have the burden of proof. I will describe the burden of proof for each defense in a few minutes.

**What is Evidence**

As I have said, in determining the facts, you must rely on your own recollection of the evidence. What is evidence? Evidence consists of the testimony of witnesses, whether here at trial or previously at their depositions, the exhibits that have been received into evidence, any stipulations of fact to which the lawyers have agreed, and any facts I may instruct you to accept as proven and not in dispute.

## **What is Not Evidence**

I also want to be clear on what is not evidence. What the attorneys say in their opening statements is not evidence, what they say in their closing arguments is not evidence, nor is testimony that I ask you to disregard. Any demonstratives used by attorneys during opening statements or closing statements is also not evidence. Anything I say is not evidence. The only testimony that is evidence in this case will come from a witness sitting in the witness stand or from depositions previously taken. Although the lawyers may comment to you about the testimony, their arguments are not evidence. Their arguments are just intended to help you understand the evidence.

If in the course of your deliberations your recollection of the facts differs from the lawyers' arguments, it is your recollection that controls. Also, anything that you see or hear when the court is not in session, even if it is said by one of the lawyers or one of the parties – for example, out in the hall or in the elevator – that is not evidence. Only what is admitted into evidence here that all of us can see and hear at the same time may be considered by you as evidence.

I want to say something about the subject of implicit bias. Everyone, including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern race, gender, national origin, sexual orientation, class, education, and many other issues.

These hidden thoughts can impact what we see and hear, how we remember what we see and hear and how we make important decisions. Because you're making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist

jumping to conclusions based on personal likes and dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes or biases. The law requires that you return a just verdict based solely on the evidence, your individual evaluation of the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence and not on any bias.

### Direct and Circumstantial Evidence; Inferences

In my beginning remarks, I told you that there were two kinds of evidence that you could use in reaching your verdict. One is direct evidence and the other is circumstantial evidence.

Direct evidence is when a witness testifies about something the witness knows by virtue of his or her senses. So, something the witness has observed or felt or touched or heard. Direct evidence may also be in the form of a document, or another exhibit admitted into evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

There is a simple example of circumstantial evidence that is often used in the courthouse. Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. Assume that the courtroom windows were covered so you couldn't see outside. Then, as you were sitting here, someone walked in with an umbrella that was dripping wet, and a few minutes later someone else also entered with a wet umbrella or a wet raincoat. Now, you can't see outside the courtroom and so you can't see with your own senses whether it is raining, so you have no direct evidence that it is raining. But on the

combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining. That is all there is to circumstantial evidence. You infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of some other fact. Similarly, based on the evidence presented at this trial, you may infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of other facts.

Let me say a few words about inferences. An inference is not speculation, suspicion or guess. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. There are times when different inferences may be drawn from the same proven facts. Here, the plaintiffs ask you to draw one set of inferences, while the defendant asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

### Evidence for a Limited Purpose

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

## Corporate Defendants/General Principles of Agency

As corporations, Manhattan Monster Inc. and Spunk Events Inc. act through their employees. It is established law that under certain circumstances an employer may be liable for the wrongs, even willful wrongs, done by its employees if the wrongs are committed during the scope of the employee's employment duties and in furtherance of the employer's business. An employer's liability rests upon a broad principle that if a corporation manages its affairs through others, the corporation is bound to manage them in such a way that no person shall suffer injury from a wrong done by that other while engaged upon the employer's business and acting within the scope of their employment.

The fact that an employee was not specifically authorized to commit the act or was even violating instructions which had been given to them does not relieve the corporation from liability if unlawful conduct is proven. A corporation is liable even if the employee was acting unlawfully if the acts were committed within the scope of his or her employment.

In this case, it is not disputed that the Daniel Tobey is the manager of Manhattan Monster Inc. and the owner of Spunk Events Inc. and any conduct by Mr. Tobey with respect to Mr. Pedraza was made while acting within the scope of his employment at Manhattan Monster Inc. and Spunk Events Inc. It is undisputed that if you find any unlawful acts were committed by Mr. Tobey, that such acts were the result of his attempts to carry out work that was entrusted to him by Manhattan Monster Inc. and Spunk Events Inc. Therefore, I instruct you that Manhattan Monster Inc. and Spunk Events Inc. are liable for Mr. Tobey's conduct. Plaintiff also alleges that Mr. Lepe is an agent of Manhattan Monster Inc. and Spunk Events Inc. If you find that to be true and find that any unlawful acts were committed by Mr. Lepe while acting within the scope of his agency relationship with Manhattan Monster Inc. and/or Spunk Events Inc., I instruct you that

15

Manhattan Monster Inc. and/or Spunk Events Inc. are liable for Mr. Lepe's conduct.

I am not suggesting that Manhattan Monster Inc. or Spunk Inc. are liable. Whether or not Mr. Pedraza was discriminated and/or retaliated against is a matter for you to decide in accordance with these instructions.

## Role of Counsel/Objections and Sidebars

Let me talk about the role of counsel and objections and sidebars. In the course of this trial, there may have been objections, motions may have been made to strike answers, or conferences may have been held. But you should not pay any attention to those matters. They are procedural matters; they are matters of law, and although you may have been curious about them, you should not consider them in your deliberations. Objections are not evidence. Objections are a proper part of the trial process, and you should make no inference or be influenced in any way by an objection or by the Court's ruling on it. Likewise, it is my function to cut off questioning, to strike remarks and to reprimand any person when I think it is necessary, but you should draw no inference from that.

During the trial, I may have sustained objections to questions that were asked. When that happened, the witness was not permitted to answer or if the witness had already answered, I instructed that the answer be stricken from the record. You may not consider any testimony that I directed you to disregard or that I directed be stricken from the record. In reaching your decision, you may not draw any inference from an unanswered question.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also has the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. You should not draw any inferences or harbor any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

None of the events relating to these conferences should enter into your deliberations at

all. Similarly, the personalities and the conduct of counsel in the courtroom are not in any way in issue. If you formed reactions of any kind to any of the lawyers, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

## The Court's Role

During the trial, I have been called upon to make various rulings – my rulings are not evidence.

The fact that I may have commented during the course of the trial or asked questions of witnesses does not indicate any feeling of mine about the facts or the credibility of any witness. I have no such feelings, and my comments were intended only to clarify the issue at hand. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or party because of any comment, question, or instruction of mine. It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

## **Witness Credibility**

You have now had the opportunity to listen to and observe all of the witnesses. It is now your job to decide how believable you find each witness's testimony to be. So how do you determine where the truth lies? You should use all of the tests for truthfulness that you would use in determining matters of importance in your own everyday life.

One thing you should consider is any motivation, hostility, opinion or affection that a witness may have shown for or against a party. It is your duty to consider whether the witness has permitted any such bias to color their testimony. If you find a witness is biased, then you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny. When I use the word bias here, I am not necessarily speaking of discriminatory bias, but bias in general – a favoritism or partiality to one of the parties in this action.

You should consider any other interest or motive that the witness may have in cooperating with a particular party, as well as any interest the witness may have in the outcome of the case. Interest in the outcome of the case may create a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interest. Therefore, you should accept the testimony of interested witnesses with great care. Keep in mind, though, that it doesn't automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter how strong their interest in the outcome of a case, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, a witness's interest has affected his or her testimony.

Additional factors you should consider are: the opportunity the witness had to see, hear and know the things about which he or she has testified; the accuracy of the witness's memory; the

witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's testimony; and the testimony's consistency or lack of consistency with other credible evidence or testimony. In other words, what you must try to do in deciding credibility is to size up a witness in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

You have heard evidence that at some earlier time witnesses have said or done something, or failed to say or do something, which counsel argues is inconsistent with the witnesses' testimony here in court. Evidence of a prior inconsistent statement was placed before you for the purpose of helping you decide whether to believe the trial testimony of the witness. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

If you find that any witness has willfully testified falsely to any material fact – that is, to an important matter – then the law permits you to disregard the entire testimony of that witness based upon the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem true and disregard what you find to be false. While it is quite legitimate for an attorney to try to attack the credibility of a witness, as the sole arbiters of the facts, you must decide for yourselves which witnesses you will believe, what portion of their testimony you will accept, and what weight you will give their testimony.

I will remind you of something I instructed on at the beginning of the case. Everyone,

including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices, and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern, race, gender, national origin, sexual orientation, class, education, and many other issues. These hidden thoughts can impact what we see and hear, how we remember what we see and hear, and how we make important decisions. Because you are making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your individual evaluation of that the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence, not on biases.

## **Preparation of Witnesses**

You may have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying. The weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

## II.    SUBSTANTIVE CLAIMS

### A.  **Overview of Claims and Defenses**

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations, claims, and defenses made in this case.

I am going to briefly state the contentions of the respective parties. In stating these contentions, I express no opinion about the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact in this case, then you are to disregard that, as you alone are the judges of the facts. You will consider all the facts, the testimony from the witness stand, the physical facts, and all legitimate inferences.

Plaintiff, Mr. Pedraza, brings gender and sexual-orientation discrimination and retaliation claims against Defendants under Title VII of the Civil Rights Act of 1964, which I will refer to as "Title VII" and the New York City Human Rights Law, which I will refer to by the acronym "NYCHRL."

These two statutes both prohibit discrimination in the terms and conditions of employment based on, among other things, a person's gender or sexual orientation. There are similarities among these laws and I will point out to you where the requirements of certain laws are the same. But there are also some differences, as I will draw to your attention.

Specifically, Mr. Pedraza alleges that Manhattan Monster Inc. discriminated against him in violation of Title VII and the NYCHRL, because he was subjected to a hostile work environment due to his gender and sexual orientation. Mr. Pedraza also alleges that he was retaliated against due to his gender and sexual orientation when he was constructively discharged from his position after he rejected verbal and physical sexual advances of Mr. Lepe. Based on these allegations, Mr. Pedraza brings hostile work environment and retaliation claims against

Manhattan Monster Inc. under Title VII. Mr. Pedraza also brings discrimination and retaliation claims against all Defendants under the NYCHRL.

Defendants deny all of Mr. Pedraza's claims. They deny that Mr. Pedraza was subject to a hostile work environment or that he was retaliated against in the terms and conditions of his employment. Defendants assert that Mr. Pedraza voluntarily quit and was not terminated or constructively discharged.

Thus, you are charged with determining the following:

1. Whether Manhattan Monster Inc. discriminated against Mr. Pedraza based on his gender in violation of Title VII, by creating a hostile work environment when Mr. Lepe made verbal and physical sexual advances on Mr. Pedraza;

2. Whether Manhattan Monster Inc. discriminated against Mr. Pedraza based on his sexual orientation in violation of Title VII, by creating a hostile work environment when Mr. Lepe made verbal and physical sexual advances on Mr. Pedraza;

3. Whether Manhattan Monster Inc. discriminated against Mr. Pedraza because of his gender or sexual orientation and constructively discharged Mr. Pedraza's employment in retaliation for his complaints about Mr. Lepe's conduct in violation of Title VII;

4. Whether all Defendants discriminated against Mr. Pedraza based on his gender in violation of the NYCHRL, by creating a hostile work environment when Mr. Lepe made verbal and physical sexual advances on Mr. Pedraza;

5. Whether all Defendants discriminated against Mr. Pedraza based on his sexual orientation in violation of the NYCHRL, by creating a hostile work environment

when Mr. Lepe made verbal and physical sexual advances on Mr. Pedraza;

6. Whether all Defendants discriminated against Mr. Pedraza because of his gender or sexual orientation and constructively discharged Mr. Pedraza's employment in retaliation for his opposition to Mr. Lepe's conduct in violation of the NYCHRL;

As to damages, Mr. Pedraza claims that, as a result of the violations of law, he was deprived of wages and certain benefits and that he suffered emotional distress. Mr. Pedraza also seeks punitive damages.

I'm about to turn to the first of the claims. I want to emphasize here that, although certain claims are related in ways that I will explain, you must consider each claim and each defendant separately. With respect to each claim and each defendant, the critical issue is whether Mr. Pedraza has proved all the elements of the claim you are considering against the defendant you are considering by a preponderance of the evidence. If you find a defendant liable to Mr. Pedraza, you must then decide the amount of damages, if any, for which that defendant is responsible.

1.  **Hostile Work Environment Under Title VII**

Title VII prohibits the creation of a hostile work environment caused by harassment because of an employee's protected characteristics. Mr. Pedraza brings gender and sexual-orientation discrimination claims against Manhattan Monster Inc. under Title VII, alleging that Manhattan Monster Inc. created a hostile work environment because of his gender and sexual orientation. Mr. Pedraza claims that Mr. Lepe physically and verbally harassed him because of his gender and/or sexual orientation, creating a hostile work environment. Mr. Pedraza further claims that he suffered damages because of said hostile environment. Defendants deny engaging in any unlawful discrimination against Mr. Pedraza and deny they created a hostile work environment. Last, Defendants assert that Mr. Pedraza suffered no damages.

To succeed on his Title VII claim against Manhattan Monster, Inc., Mr. Pedraza must prove each of the following elements by a preponderance of the evidence: ***First***, that he was subjected to unwelcome harassment, ridicule, or other abusive conduct. ***Second***, that the abusive conduct was motivated, at least in part, by Mr. Pedraza's gender or sexual orientation. ***Third***, that the abusive conduct was so severe or pervasive that both Mr. Pedraza himself and a reasonable person in Mr. Pedraza's position would find his work environment so hostile or offensive that it would interfere with his work performance. And ***Fourth***, that the management of Manhattan Monster Inc. knew, or should have known, of the abusive conduct.

The test for a hostile environment has both objective and subjective elements: a hostile environment is one that would reasonably be perceived and is perceived as hostile or abusive.[1] The plaintiff must establish that he was adversely affected by the conduct and that a reasonable

---

[1] Faragher v. Boca Raton, 524 U.S. 775, 787 (1998); San Juan v. Leach, 278 A.D.2d 299 (N.Y. App. Div. 2000).

person also would have been adversely affected by the conduct.[2] Although generally isolated remarks or occasional episodes will not suffice,[3] if the alleged conduct is extraordinarily severe, a single incident may create a hostile environment.[4]

Harassment need not involve touching or be physically threatening to be actionable where, for example, it is humiliating and demeaning. Also, the conduct need not seriously affect an employee's psychological well-being or lead the employee to suffer injury in order to meet this standard. Rather, psychological harm is merely a relevant factor that may be taken into account in determining whether or not the employee actually found the environment abusive. When an alleged harasser is in a supervisory position over an employee, the objectionable conduct is automatically imputed to the employer—here, Manhattan Monster Inc.—for purposes of asserting a hostile work environment claim.

To determine whether the conduct in this case was "so severe or pervasive" that it materially altered the terms and conditions of Mr. Pedraza's employment, you should consider all the circumstances, including such matters as:

a. How often the discriminatory conduct occurred;

b. Its severity;

---

[2] Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 208 (4th Cir. 2014) (plaintiff was required to show that she perceived, and that a reasonable person would perceive, the environment to be abusive or hostile; district court accepted that plaintiff subjectively perceived her workplace to be offensive, but concluded that she had failed to produce evidence to satisfy the objective component of her claim).

[3] Forrest v. Jewish Guild for the Blind, 309 A.D.2d 546 (N.Y. App. Div. 2003) (three epithets over nine years insufficient) superseded by statute on other grounds, Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85; Thompson v. Lamprecht Transp., 39 A.D.3d 846 (N.Y. App. Div. 2007).

[4] Wahlstrom v. Metro-North Commuter R. Co., 89 F. Supp. 2d 506, 520 (S.D.N.Y. 2000); San Juan v. Leach, 278 A.D.2d 299 (N.Y. App. Div. 2000).

c. Whether it was physically or psychologically threatening or humiliating; and

d. Whether it unreasonably interfered with Mr. Pedraza's work performance.[5]

Manhattan Monster Inc. may be liable for discriminatory acts of Mr. Tobey if the jury finds that Mr. Tobey as plaintiff's supervisor acted as the proxy or alter ego of Monster Bar Inc.[6] A supervisor acts as a proxy or alter ego for his employer if he holds a sufficiently high position in the management hierarchy so as to speak for the corporate employer.

If the jury finds that Mr. Pedraza has proven that he was subjected to a hostile work environment by Mr. Lepe, the jury must decide whether Manhattan Monster Inc. is responsible for Mr. Lepe's conduct. Manhattan Monster Inc. is liable for permitting such behavior by Mr. Lepe if Mr. Pedraza proves by a preponderance of the evidence that: ***First***, Manhattan Monster Inc. either failed to provide a reasonable avenue for complaint; or ***Second***, that Manhattan Monster Inc. knew, or in the exercise of reasonable care should have known, about Mr. Lepe's discriminatory conduct and failed to take appropriate remedial action.[7]

---

[5] Mack v. Port Authority of N.Y. & N.J., 225 F. Supp. 2d 376, 387 (S.D.N.Y. 2002).

[6] Townsend v. Benjamin Enterprises, Inc., 679 F.3d 41 (2d Cir. 2012).

[7] Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000).

2. __Discrimination Based on Gender and Sexual Orientation Under the New York City Human Rights Law (NYCHRL)__

Mr. Pedraza also brings discrimination claims on the basis of gender and sexual orientation under the New York City Human Rights Law, the NYCHRL, against all Defendants. The NYCHRL requires you to apply a different standard in determining whether Defendants subjected Mr. Pedraza to a hostile work environment. The NYCHRL was intended to be more protective than the federal counterpart.

Under the NYCHRL standard, Mr. Pedraza must prove that Defendants subjected him to unwelcomed discriminatory conduct that a reasonable person would find was more than "petty slights and trivial inconveniences."[8] Thus, a single act or comment related to Mr. Pedraza's gender or sexual orientation may be sufficient for Mr. Pedraza to prove his case as long as the comment or comments are more than petty slights or trivial inconveniences.[9]

Also, under the NYCHRL, employers are strictly liable for the harassing and hostile acts of any of its supervisors. Strictly liable means that if you believe that Mr. Tobey, as Mr. Pedraza's supervisor, subjected Mr. Pedraza to conduct that is more than a petty slight or trivial inconvenience, you should find in Mr. Pedraza's favor on this claim as against Manhattan Monster Inc. and Spunk Events Inc.[10]

---

[8] New York State Executive Law § 296(1)(h); Milhalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102, 114-15 (2d Cir. 2013).

[9] N.Y.C. Administrative Code §8-107(1)(a); Williams v. New York City Hous. Authority, 61 A.D.3d 62 (N.Y. App. Div. 2009).

[10] NYCHRL §8-107(13)(b)(1); Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 547, 556 (S.D.N.Y. 2013) ("[s]trict liability in employment context for acts of managers and supervisors").

Mr. Pedraza must show that Defendants intentionally discriminated against him.

However, Mr. Pedraza is not required to produce direct evidence of intentional discrimination.

Intentional discrimination may be inferred from the existence of other facts.[11]

---

[11] Federal Jury Practice and Instructions, Vol. 3C § 177:23 (Oct. 2024 Update).

3. **Retaliatory Termination Under Title VII**

Mr. Pedraza also alleges that Manhattan Monster Inc. unlawfully retaliated against him in violation of Title VII, by terminating his employment because he opposed Mr. Lepe's sexual harassment. Title VII makes it an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice under Title VII. This is referred to as retaliation.

Mr. Pedraza's Title VII claim is against Manhattan Monster Inc. However, you may consider the conduct of Mr. Rice, Mr. Tobey, and/or Mr. Lepe in determining whether Mr. Pedraza has proven that his employment was constructively discharged because of his opposition to discrimination, in violation of Title VII.

Accordingly, to prove a claim of retaliation under Title VII, Mr. Pedraza must prove, by a preponderance of the evidence, each of the following elements.

*First*, that Mr. Pedraza engaged in protected activity;

*Second*, that Manhattan Monster Inc. was aware of Mr. Pedraza's protected activity;

*Third*, that Mr. Pedraza was then subject to a material adverse action by Manhattan Monster Inc., such as constructive discharge; and

*Finally*, that there was a causal connection between Mr. Pedraza's protected activity and the materially adverse employment action.

First, in determining whether Manhattan Monster Inc. unlawfully retaliated against Mr. Pedraza for opposing Mr. Lepe's sexual harassment and discrimination of him, you must first decide whether Mr. Pedraza engaged in protected activity. A protected activity includes the opposition to any unlawful employment practice, including gender discrimination, sexual discrimination, and/or sexual harassment. Mr. Pedraza must prove that he had a good faith,

reasonable belief that Manhattan Monster Inc.'s conduct violated the laws prohibiting gender and/or sexual orientation discrimination and sexual harassment. He need not establish that he was correct in his actions demonstrating an opposition to Manhattan Monster Inc.'s conduct or that there was indeed discrimination.

The second element that Mr. Pedraza must prove by a preponderance of the evidence is that Manhattan Monster Inc. was aware of his protected activity. If you find that Mr. Pedraza has proved by a preponderance of the evidence that he complained to Mr. Tobey about Mr. Lepe's alleged discriminatory behavior, then this satisfies the requirement that he prove Manhattan Monster Inc. was aware of the protected activity. If, however, you find that Mr. Pedraza did not prove by a preponderance of the evidence that he complained to Mr. Tobey about alleged discriminatory behavior, then he has failed to prove this second element of his retaliatory termination claim.

The third element that Mr. Pedraza must prove by a preponderance of the evidence is that he suffered a materially adverse employment action, one that reasonably deterred him from complaining about discriminatory conduct. Here, Mr. Pedraza claims he suffered an adverse employment action when Manhattan Monster Inc. constructively discharged Mr. Pedraza by creating working conditions that were so intolerable a reasonable person in Mr. Pedraza's position would feel compelled to resign.

The fourth element requires that Mr. Pedraza prove by a preponderance of the evidence that there was a causal connection between his complaint of discrimination and the adverse employment action. Mr. Pedraza does not need to prove that retaliation was the one and only cause of the employer's action. A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory

treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against Mr. Pedraza by Manhattan Monster Inc.

As you evaluate whether a particular action was taken in retaliation, you should consider the length of time between the protected activity and the allegedly retaliatory act. Although there is no hard and fast rule fixing a specific period of time beyond which it is not possible to infer that an adverse action is retaliatory, logic will tell you that the longer the period between the protected activity and the adverse employment action, the less likely it is that the adverse action resulted from retaliation. You should consider the totality of the evidence on the question of causation.

Manhattan Monster Inc. contends that it did not engage in any retaliatory action against Mr. Pedraza. Manhattan Monster Inc. instead contends that Mr. Pedraza resigned without notice.

If Mr. Pedraza proves by a preponderance of the evidence that he engaged in protected activity, that Manhattan Monster Inc. took an adverse employment action, and that the action was causally related to Mr. Pedraza's protected activity, you must find that Manhattan Monster Inc. unlawfully retaliated against Mr. Pedraza. If, however, Mr. Pedraza fails to prove even one of the elements by a preponderance of the evidence, you must find for Manhattan Monster Inc.

4. **Retaliatory Termination Under the NYCHRL**

Mr. Pedraza also brings retaliation claims against all Defendants under the NYCHRL. The NYCHRL makes it an unlawful practice to retaliate in any manner against any person because such person has opposed discrimination.

To prevail on his retaliation claim against Manhattan Monster Inc. and Spunk Events Inc. under the NYCHRL, Mr. Pedraza must prove each of the following four elements by a preponderance of the evidence.

*First*, that he was engaged in protected activity, such as making a complaint to his employer about unlawful discrimination or opposing conduct that he believed was unlawful discrimination. With respect to the first element, "protected activity," you must use the same analysis that you used in analyzing Mr. Pedraza's Title VII retaliatory claim as to whether he proved, by a preponderance of the evidence, that he engaged in protected activity under NYCHRL.

*Second*, that Manhattan Monster Inc. and/or Spunk Events Inc. knew about Mr. Pedraza's protected activity—that is, Mr. Pedraza's alleged opposition to Mr. Lepe's sexual harassment. General corporate knowledge that Mr. Pedraza engaged in protected activity is sufficient to establish this element of a retaliation claim under the NYCHRL. With respect to the second element, you must use the same analysis that you used in analyzing the second element of Mr. Pedraza's Title VII retaliatory claim.

*Third*, that Manhattan Monster Inc. and/or Spunk Events Inc. engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity.

*Fourth*, that Mr. Pedraza's protected activity was a motivating factor in Manhattan Monster Inc.'s and/or Spunk Events Inc.'s constructive discharge of Mr. Pedraza as an

35

employee.

In sum, if you find that Mr. Pedraza has proved each of the four elements I just outlined by a preponderance of the evidence, you must find that Manhattan Monster Inc. and/or Spunk Events Inc. is liable.

**5.** <u>**Individual Liability for Retaliation Under the NYCHRL**</u>

Mr. Pedraza also brings retaliation claims for individual liability against Mr. Rice, Mr. Tobey, and Mr. Lepe under the NYCHRL. The NYCHRL provides that an individual defendant who participates in the conduct giving rise to a retaliation claim can be found individually liable.

Specifically, if you find that Mr. Pedraza has proven, by a preponderance of the evidence, that the Mr. Rice, Mr. Tobey, and/or Mr. Lepe had personal knowledge of Mr. Pedraza's protected activity and that his protected activity was a motivating factor in the materially adverse employment action, you must find for Mr. Pedraza with respect to the individual liability of Mr. Rice, Mr. Tobey, and/or Mr. Lepe. However, if you find that Mr. Pedraza has not proven by a preponderance of evidence these two elements, then you must find for Mr. Rice, Mr. Tobey, and/or Mr. Lepe.

You must find Manhattan Monster Inc. and/or Spunk Events Inc. liable for retaliation under the NYCHRL in order to find Mr. Rice, Mr. Tobey, and/or Mr. Lepe individually liable under the NYCHRL. If you find that Mr. Pedraza has not proven, by a preponderance of evidence, that Manhattan Monster Inc. and/or Spunk Events Inc. retaliated against him based on his protected activity under the NYCHRL, then you must find for Mr. Tobey, Mr. Rice, and Mr. Lepe.

**B. <u>Damages</u>**

I will now instruct you on the measure of damages you should award to Mr. Pedraza in the event you conclude that Mr. Pedraza has proven his claims for discrimination and/or retaliation. The law permits me to charge you on damages now so that in the event you decide that Mr. Pedraza is entitled to prevail on any of his claims and you reach the issue of damages, you will not have to come back in to listen to my charge on damages.

You should not interpret the fact that I am giving instructions about damages now as an indication that I believe that Mr. Pedraza should, or should not, receive damages. It is your task and yours alone to decide whether Mr. Pedraza is entitled to prevail on his claims. In other words, you should only reach the issue of what damages may be appropriate if you decide that Mr. Pedraza prevails on any of his claims.

You may award only those damages that Mr. Pedraza has proved by a preponderance of the evidence. Any damages that you may choose to award should be based on the evidence presented at trial.

If you decide to award damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

I will explain each category of damages separately, but generally Mr. Pedraza seeks lost wages, compensatory damages, and punitive damages.

1. **Economic Damages – Back Pay Damages**

If you determine that Mr. Pedraza has proven, by a preponderance of the evidence, that he was discriminated or retaliated against, he may recover wages, bonuses, and other benefits he would have earned if he had not been discriminated or retaliated against by Defendants. An award of back pay runs from the date of the discriminatory or retaliatory action to the date of the judgment. Therefore, in awarding back pay, you must determine the damages Mr. Pedraza is entitled to starting from May 22, 2022, through the present. In other words, you must determine the total amount of compensation Mr. Pedraza would have earned between the time Defendants constructively discharged him through the present. You should include any lost or reduced salary, bonuses, raises, benefits, promotions, training opportunities and other compensation increases or payments necessary to make Mr. Pedraza whole in determining your total award for back pay damages.

Please note that Mr. Pedraza is only entitled to be compensated once for any alleged back pay that arose from his proven discriminatory and/or retaliatory termination claims.

If Mr. Pedraza has proved a claim, he would be entitled to back pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Mr. Pedraza should be resolved in his favor. That said, Mr. Pedraza has the burden of proving by a preponderance of the evidence that he actually incurred a loss of back pay.

**2.** **Economic Damages – Front Pay Damages**

Front pay damages, if any, represent a plaintiff's lost salary and benefits caused by an unlawful adverse action.

If you find for Mr. Pedraza on any of his claims for retaliatory termination, and if you find that Mr. Pedraza will be unable to earn in the future what he would have earned at Manhattan Monster Inc., then you may award him, as additional compensation, the amount he would have earned from the day of your verdict until either: (i) the date you believe he would have worked at Manhattan Monster Inc. absent any discriminatory conduct or (ii) the date you can reasonably predict that he has a reasonable prospect of obtaining comparable employment. Factors to be considered in determining front pay include Mr. Pedraza's age and his reasonable prospects of obtaining comparable employment. You should bear in mind that the purpose of front pay is to make a plaintiff whole—that is, to put the plaintiff in the position he would have been in if Defendants had not discriminated and/or retaliated against him.

Please note that Mr. Pedraza is entitled to be compensated only once for any alleged front pay that arose from his proven claims.

If Mr. Pedraza has proved a claim, he would be entitled to front pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Mr. Pedraza should be resolved in his favor. That said, Mr. Pedraza has the burden of proving by a preponderance of the evidence that he actually incurred a loss of front pay.

**3.** __Plaintiff's Duty to Mitigate Damages__

A plaintiff has a duty to mitigate back pay and front pay damages by using reasonable care and diligence in seeking suitable alternative employment. The burden is on Defendants to prove by a preponderance of the evidence that Mr. Pedraza has failed in his duty to mitigate. Thus, if you find that Mr. Pedraza failed to use reasonable care and diligence and that he could have obtained a job substantially equivalent to the one he left at Manhattan Monster Inc., then you should reduce any award of back pay by the amount you find he could have earned from such employment.

In assessing the reasonableness of Mr. Pedraza's efforts to mitigate his damages, you may consider what you have learned about Mr. Pedraza's qualifications for employment, the characteristics of the job market, and the quantity and quality of the efforts made by Mr. Pedraza to find suitable work. The question whether Mr. Pedraza acted reasonably with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. In weighing the evidence, keep in mind that Mr. Pedraza was under no obligation to enter another line of work, or to take a demotion or a demeaning job.

Mr. Pedraza's failure to make a reasonable effort to minimize damages does not prevent all recovery, but does prevent recovery of such damages as might have been avoided.

4. **Compensatory Damages**

If you find that Mr. Pedraza has established any of his claims, you may award him compensatory damages for injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life that was caused by the Defendants' unlawful conduct. Compensatory damages are separate from back pay and front pay and are an amount that will fairly compensate Mr. Pedraza for any injury he actually sustained as a result of Defendants' conduct. There is no requirement that a claim for emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damages. No expert testimony is necessary to prove such harm, and you may rest your findings solely on Mr. Pedraza's testimony.

No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Rather, you may issue an award of monetary damages based on the emotional harm you determine Mr. Pedraza to have suffered, based on the evidence presented and your best judgment. You may not simply award damages for any injury suffered by Mr. Pedraza, you must award damages only for those injuries that were a proximate result of conduct by Defendants that violated Mr. Pedraza's rights. But, you may not award compensatory damages based on speculation or sympathy.

### 5. __Punitive Damages__

If you find that Mr. Pedraza prevails on any of his claims under Title VII or the NYCHRL, you may award him punitive damages. Punitive damages are awarded, in the discretion of the jury, to punish a defendant and to set an example in order to deter Defendants and others from committing similar acts in the future. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct. There is no exact rule by which to determine the amount of punitive damages. It is up to the jury to decide what amount is sufficient to punish Defendants.

A plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Under this standard, a defendant need not know that it or he was violating the law, and the plaintiff is not required to prove intentional or malicious conduct.

In calculating a punitive damages award, you should consider, among other things, the (1) nature and reprehensibility of the Defendants' conduct, including the character of the wrongdoing and the Defendants' awareness of what harm the conduct caused or was likely to cause; (2) the amount of time the Defendants engaged in the conduct; and (3) the Defendants' financial condition and the impact your punitive damages award will have on the Defendants. If you award punitive damages, you may consider the Defendants' net worth and the impact of paying that award.

Keep in mind that punitive damages are not intended to, and may not be used to, compensate a plaintiff for his injuries. Instead, the purpose of punitive damages is to punish a defendant and to deter similar conduct in the future. Any punitive damages award should be

limited to the amount reasonably necessary to achieve the goals of punishment and deterrence.

There is an affirmative defense to punitive damages available to an employer such as Manhattan Monster Inc. and/or Spunk Events Inc. under Title VII and the NYCHRL. An employer will not be liable for punitive damages if it has made good faith efforts to enforce an antidiscrimination policy. This defense requires an employer to establish both that it had an antidiscrimination policy and that it made good faith effort to enforce it. This defense focuses on the employer's state of mind. It precludes punitive damages unless the employer discriminated in the face of a perceived risk that its actions would violate federal, state, or local law.

Under the NYCHRL, an employer will not be liable for punitive damages if it has made a good faith effort to enforce an antidiscrimination policy. However, even if you decide to award punitive damages to Mr. Pedraza based on Mr. Lepe's conduct and not Manhattan Monster Inc.'s or Spunk Events Inc.'s, Manhattan Monster Inc. and/or Spunk Events Inc. may still be liable for Mr. Lepe's punitive damages. Under the NYCHRL, an employer is held liable for any award of punitive damages imposed on a managerial or supervisory employee found to have engaged in unlawful discrimination with the necessary state of mind. In effect, the liability for the misconduct of the manager or supervisor is attributed to the employer. Thus, if you assess punitive damages against Mr. Tobey, Manhattan Monster Inc. and/or Spunk Events Inc. would be obligated to pay the amount of such damages you impose. That liability would be joint, meaning that the entire award could be collected from either one or from all of these Defendants in amounts adding up to the total punitive damages. However, you may, in your discretion, reduce the amount of the punitive damages award imposed upon Mr. Tobey that is imputed to Manhattan Monster Inc. and/or Spunk Events Inc. In doing so, you may consider whether Manhattan Monster Inc. and/or Spunk Events Inc. established and complied with policies,

programs, and procedures for the prevention and detection of unlawful discriminatory or retaliatory practices by employees, including, but not limited to:

1. A meaningful and responsive procedure for investigation of complaints of discriminatory practices by employees and for taking appropriate action against those persons who are found to have engaged in such practices;

2. A firm policy against such practices, which is effectively communicated to employees and gives employees the opportunity to make complaints of discrimination or retaliation to her employer;

3. A program to educate employees about unlawful discriminatory practices under the local, state, and federal law; and

4. Procedures for the supervision of employees specifically directed at the prevention and detection of such practices.

You may also consider whether Manhattan Monster Inc. and/or Spunk Events Inc. had a record of no or relatively few prior incidents of sex-based or sexual orientation-based discriminatory or retaliatory conduct.

You must consider whether Manhattan Monster Inc. and/or Spunk Events Inc. has established any or all of the factors listed above, and, if so, the degree to which the award against Manhattan Monster Inc. and/or Spunk Events Inc. should be reduced relative to the award against Mr. Tobey, if any. Further, you may take into account Manhattan Monster Inc. and/or Spunk Events Inc.'s financial condition in deciding whether to reduce its responsibility for any punitive damages you may impose against Mr. Tobey.

### III.    CLOSING INSTRUCTIONS

**<u>Right to See Exhibits and Hear Testimony; Communications with the Court</u>**

If during your deliberations you want to see any of the exhibits, you may request that they be sent to you in the jury room. A list of exhibits received in evidence will be forwarded to you in the jury room. If you want any of the testimony read, that can also be done and will occur here in open court. Please remember that it is not always easy to locate what you may want, so try to be as specific as you possibly can in requesting exhibits or portions of the testimony. To this end, please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request. If you want any further explanation of the law as I have explained it to you, you may also request that.

Your requests for exhibits or testimony—in fact, any communication with the Court, including any questions on the law, should be made to me in writing, signed by your foreperson, and given to the marshal. If there is any doubt or question about the meaning of any part of the instructions that I have given you during this trial, you should not hesitate to send me a note asking for clarification or for a further explanation. I will respond to any questions or requests you have as promptly as possible, by having you return to the courtroom so that I can address you in person. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching this case. There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me—to request testimony, or to request clarification on the law—you should send a note to me, in writing, signed by your foreperson, and given to one of the court security officers or to my courtroom

deputy. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing, or orally here in open court. If you send any notes to the Court, do not disclose anything about your deliberations. Specifically, do not disclose to anyone—not even to me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

## Notes

Many of you have taken notes periodically throughout this trial. You should not show your notes to, or discuss your notes with, any other jurors during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

## Duty to Deliberate/Unanimous Verdict

You will now retire to the jury room to begin your deliberations. In order for Mr. Pedraza to prevail on his claims, Mr. Pedraza must sustain his burden of proof as I have explained to you with respect to his claims and the specific questions you are considering. Your verdict on each question must be unanimous. Similarly, defendants must carry their burden as to those areas I have likewise identified for you.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard and is entitled to their opinion, but you are required to exchange views with your fellow jurors. No one juror should hold center stage in the jury room, and no one juror should control and monopolize the deliberations. It is your duty to discuss the evidence. If, after listening to your fellow jurors, and if, after stating your own view, you become convinced that your view is wrong, do not hesitate to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered. Your final vote must reflect your conscientious belief as to how the issues should be decided.

Your verdict must be unanimous. Until such time as you reach unanimous agreement, you must not reveal the standing of the jurors, that is, the split of the vote, to anyone, including the court or anyone else outside the jury room. You are not to discuss the case until all jurors are present. Without all members of the jury, a select handful of jurors is only a gathering of individuals and only collectively when all are present do you constitute a jury, and only then may you deliberate.

Your duty is to decide the issues fairly and impartially, to apply the law as I instructed you, and to see that justice is done. Remember at all times, you are not partisans. You are judges

– judges of the facts, evidence, and the application of the law. Your sole interests are to seek the truth from the evidence in the case, and to determine whether the plaintiff has proved his claims by a preponderance of evidence and whether the defendants have proven any of their defenses by a preponderance of the evidence with respect to damages sought. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

**<u>Verdict Form/Return of Verdict</u>**

I have prepared a verdict form for you to use in recording your decision. Please use that form to report your verdict. Once you have made your verdict, you will record your decisions in the verdict form. You should also proceed through the questions in the order in which they are listed, following the instructions on that form.

After you have reached a verdict, your foreperson will fill out the jury verdict form that will be given to you, sign, and date it, and the foreperson will advise the marshal outside your door that you are ready to return to the courtroom. Do not specify what the verdict is in your note.

I stress that each of you must be in agreement with the verdict that is announced by the foreperson in open court and officially recorded. Once your verdict is announced by your foreperson in open court, and officially recorded, it cannot ordinarily be revoked.

**Selecting a Foreperson**

Members of the jury, the first thing you should do when you retire to the jury room is to elect one member of the jury as your foreperson. The foreperson has no greater voice or authority than any other juror, and their vote or opinion does not count for any more than any other juror's vote or opinion. The foreperson is simply the person who will communicate with the Court when questions arise. The foreperson is merely your spokesperson to the court. The foreperson can send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict.

## Juror Oath/Sympathy or Bias

I will remind you that you took an oath to render judgment impartially and fairly, without regard to prejudice or sympathy and without fear, solely upon the evidence and the applicable law. So that is your duty, and I know you will do your duty and reach a just and fair verdict.

If you follow that oath and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict. You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence. It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex, sexual orientation, or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. Both parties are entitled to the same fair trial at your hands. Both parties stand equal before the law and are to be dealt with as equals in this Court.

I have just one more comment. I don't think it is necessary because it seems that even though you haven't known each other very long you have a good relationship, but it is the custom in this courthouse to say it. You should treat each other with courtesy and respect during your deliberations. All litigants stand equal in this room. All litigants stand equal before the bar of justice. Your duty is to decide between these parties fairly and impartially to see that justice is done, all in accordance with your oath as jurors. Thank you for your time and your attentiveness, and now the case is in your hands.

## IV.    CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement. Please don't discuss the case while seated in the box because the case still has not been formally submitted to you.

* * *

Members of the jury, my deputy is going to swear the court security officer.

(Court Security Officer sworn)

Members of the jury, you may now retire. You are instructed to retire to the jury room and you may begin your deliberations.

# EXHIBIT 2

**Court Exhibit 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

 JUAN PEDRAZA,

                          Plaintiff,              **23-CV-2596 (VF)**

-against-

 MANHATTAN MONSTER INC. d/b/a           **FINAL JURY INSTRUCTIONS**
 THE MONSTER BAR, SPUNK EVENTS INC.
 d/b/a SPUNK INC., CHARLES RAYMOND RICE,
 DANIEL TOBEY, and LUIS GOMEZ,

                        Defendants.
-----------------------------------------------------------------
**VALERIE FIGUEREDO, United States Magistrate Judge**

1

**TABLE OF CONTENTS**

I. GENERAL INSTRUCTIONS...................................................................................... 4

    Introductory Remarks ............................................................................................... 4

    Duty of the Court...................................................................................................... 5

    Duty of the Jury ....................................................................................................... 6

    Burden of Proof & Preponderance of the Evidence ................................................ 8

    What is Evidence .................................................................................................... 10

    What is Not Evidence ............................................................................................ 11

    Direct and Circumstantial Evidence; Inferences ................................................... 12

    Evidence for a Limited Purpose ............................................................................ 14

    Corporate Defendants/General Principles of Agency ............................................ 15

    Adverse Inference ......................................................................**Error! Bookmark not defined.**

    Role of Counsel/Objections and Sidebars ............................................................ 17

    The Court's Role ................................................................................................... 19

    Witness Credibility................................................................................................ 20

    Preparation of Witnesses ...................................................................................... 23

II. SUBSTANTIVE CLAIMS ..................................................................................... 24

    A. Overview of Claims and Defenses ................................................................... 24

    1. Discrimination Under Title VII ........................................................................ 27

    2. Discriminatory Termination Claim Under NYSHRL & NYCHRL.................... 30

    3. Individual Defendants' Liability for Discrimination Under NYSHRL & NYCHRL.... **Error! Bookmark not defined.**

    4. Retaliatory Termination Under Title VII ........................................................... 32

    5. Retaliatory Termination Under New York Labor Law..........**Error! Bookmark not defined.**

    6. Individual Defendant Dr. Femia's Liability Under the NYLL ............ **Error! Bookmark not defined.**

    7. Retaliatory Termination Under the Equal Pay Act ...............**Error! Bookmark not defined.**

    8. Retaliatory Termination Under NYSHRL & NYCHRL.................................... 35

    9. Individual Liability for Retaliation Under NYSHRL & NYCHRL.................... 37

    B. Damages ......................................................................................................... 38

    1. Economic Damages – Back Pay Damages......................................................... 39

2. Back Pay and Front Pay Damages – Plaintiff's Duty to Mitigate.........................................41

3. Compensatory Damages.................................................................................................42

4. Punitive Damages..........................................................................................................43

5. Willfulness ................................................................**Error! Bookmark not defined.**

III.  CLOSING INSTRUCTIONS .........................................................................................46

Right to See Exhibits and Hear Testimony; Communications with the Court..........................46

Notes.................................................................................................................................48

Duty to Deliberate/Unanimous Verdict................................................................................49

Verdict Form/Return of Verdict .........................................................................................51

Selecting a Foreperson ......................................................................................................52

Juror Oath/Sympathy or Bias ............................................................................................53

IV. CONCLUSION............................................................................................................54

## I.     GENERAL INSTRUCTIONS

### **Introductory Remarks**

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions. First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case. These instructions really would apply to just about any trial. Second, I'll give you some specific instructions about the legal rules applicable to this particular case. Third, I'll give you some final instructions about procedure. Listening to these instructions may not be easy. It is important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention. You'll notice that I'm reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying. I will be distributing to you a verdict form in which to record your verdict. It will list the questions that you must consider, in the order that you should consider them.

4

## **Duty of the Court**

We are now approaching the most important part of this case: your deliberations. You have heard all of the evidence in this case, as well as the final arguments of the lawyers for the parties. It is my duty to provide these instructions, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration. It is your duty to accept these instructions of law and apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be. You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or should be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any particular instruction alone as stating the law, and you should consider my instructions as a whole when you retire to deliberate in the jury room. You are not to infer from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case. Any questions I asked were designed to make sure that the testimony was clear and to avoid confusion. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

5

**Duty of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in testimony; you draw whatever reasonable inferences you decide to draw from the facts as you determine them, and you determine the weight of the evidence.

In determining the facts, you must rely upon your own recollection of the evidence. None of what the lawyers have said in their opening statements, in their closing arguments, or in their objections is evidence. You should bear in mind particularly that a question put to a witness is never evidence. It is only the answer in the context of the question that is evidence. You may not consider any answer that I directed you to disregard. I remind you that nothing I have said during the trial or will say during these instructions is evidence. Similarly, the rulings I have made during the trial are not any indication of my views of what your decision should be.

The evidence before you consists of the answers given by witnesses, the exhibits that were received in evidence, and stipulated facts and admissions. Exhibits marked for identification but not received may not be considered as evidence. Anything you may have seen or heard about this case outside the courtroom is not evidence and must be disregarded entirely.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or

matters outside the case.

**<u>Burden of Proof & Preponderance of the Evidence</u>**

Because this is a civil lawsuit, Mr. Pedraza has the burden of proving each disputed part of his claims by a preponderance of the evidence and Defendants have the burden of proving each disputed part of their affirmative defenses by a preponderance of the evidence.

A preponderance of the evidence simply means that something is more likely so than not so. In other words, if you find that the credible evidence on a given issue is evenly divided between Mr. Pedraza and Defendants, then you must decide that issue for Defendants. However, if you find that the scales tip, however slightly, in favor of Mr. Pedraza that the issue is more likely than not true, then you are to find that Mr. Pedraza has proven the issue by a preponderance of the evidence. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

If Mr. Pedraza fails to prove an issue by a preponderance of the evidence, then you must find that issue in favor of Defendants. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. You should attach no significance to the fact that certain witnesses were called to testify by Plaintiff or by Defendants. Nor should you attach any meaning to the fact that a document or other exhibit was introduced by one party rather than another. Every party is entitled to the benefit of any evidence tending to support its arguments, even if such evidence came from witnesses or documents introduced by the other party. This is true with respect to any contested issue of fact in this case.

The law does not require any party to call as witnesses each and every person who may

8

have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. You should not draw any negative inference against any party with respect to any issue in dispute based on their failure to produce a witness over whom the party has no control.

A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented. Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should not consider or discuss that standard in your deliberations.

For certain defenses and issues in this case, the Defendants have the burden of proof. I will describe the burden of proof for each defense in a few minutes.

**<u>What is Evidence</u>**

As I have said, in determining the facts, you must rely on your own recollection of the evidence. What is evidence? Evidence consists of the testimony of witnesses, whether here at trial or previously at their depositions, the exhibits that have been received into evidence, any stipulations of fact to which the lawyers have agreed, and any facts I may instruct you to accept as proven and not in dispute.

10

**What is Not Evidence**

I also want to be clear on what is not evidence. What the attorneys say in their opening statements is not evidence, what they say in their closing arguments is not evidence, nor is testimony that I ask you to disregard. Any demonstratives used by attorneys during opening statements or closing statements is also not evidence. Anything I say is not evidence. The only testimony that is evidence in this case will come from a witness sitting in the witness stand or from depositions previously taken. Although the lawyers may comment to you about the testimony, their arguments are not evidence. Their arguments are just intended to help you understand the evidence.

If in the course of your deliberations your recollection of the facts differs from the lawyers' arguments, it is your recollection that controls. Also, anything that you see or hear when the court is not in session, even if it is said by one of the lawyers or one of the parties – for example, out in the hall or in the elevator – that is not evidence. Only what is admitted into evidence here that all of us can see and hear at the same time may be considered by you as evidence.

I want to say something about the subject of implicit bias. Everyone, including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern race, gender, national origin, sexual orientation, class, education, and many other issues.

These hidden thoughts can impact what we see and hear, how we remember what we see and hear and how we make important decisions. Because you're making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist

11

jumping to conclusions based on personal likes and dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes or biases. The law requires that you return a just verdict based solely on the evidence, your individual evaluation of the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence and not on any bias.

### **Direct and Circumstantial Evidence; Inferences**

In my beginning remarks, I told you that there were two kinds of evidence that you could use in reaching your verdict. One is direct evidence and the other is circumstantial evidence.

Direct evidence is when a witness testifies about something the witness knows by virtue of his or her senses. So, something the witness has observed or felt or touched or heard. Direct evidence may also be in the form of a document, or another exhibit admitted into evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

There is a simple example of circumstantial evidence that is often used in the courthouse. Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. Assume that the courtroom windows were covered so you couldn't see outside. Then, as you were sitting here, someone walked in with an umbrella that was dripping wet, and a few minutes later someone else also entered with a wet umbrella or a wet raincoat. Now, you can't see outside the courtroom and so you can't see with your own senses whether it is raining, so you have no direct evidence that it is raining. But on the

12

combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining. That is all there is to circumstantial evidence. You infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of some other fact. Similarly, based on the evidence presented at this trial, you may infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of other facts.

Let me say a few words about inferences. An inference is not speculation, suspicion or guess. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. There are times when different inferences may be drawn from the same proven facts. Here, the plaintiffs ask you to draw one set of inferences, while the defendant asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

13

**<u>Evidence for a Limited Purpose</u>**

      Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

14

**<u>Corporate Defendants/General Principles of Agency</u>**

As corporations, Manhattan Monster Inc. and Spunk Events Inc. act through their employees. It is established law that under certain circumstances an employer may be liable for the wrongs, even willful wrongs, done by its employees if the wrongs are committed during the scope of the employee's employment duties and in furtherance of the employer's business. An employer's liability rests upon a broad principle that if a corporation manages its affairs through others, the corporation is bound to manage them in such a way that no person shall suffer injury from a wrong done by that other while engaged upon the employer's business and acting within the scope of their employment.

The fact that an employee was not specifically authorized to commit the act or was even violating instructions which had been given to them does not relieve the corporation from liability if unlawful conduct is proven. A corporation is liable even if the employee was acting unlawfully if the acts were committed within the scope of his or her employment.

In this case, it is not disputed that the Daniel Tobey is the manager of Manhattan Monster Inc. and the owner of Spunk Events Inc. and any conduct by Mr. Tobey with respect to Mr. Pedraza was made while acting within the scope of his employment at Manhattan Monster Inc. and Spunk Events Inc. It is undisputed that if you find any unlawful acts were committed by Mr. Tobey, that such acts were the result of his attempts to carry out work that was entrusted to him by Manhattan Monster Inc. and Spunk Events Inc. Therefore, I instruct you that Manhattan Monster Inc. and Spunk Events Inc. are liable for Mr. Tobey's conduct. Plaintiff also alleges that Mr. Lepe is an agent of Manhattan Monster Inc. and Spunk Events Inc. If you find that to be true and find that any unlawful acts were committed by Mr. Lepe while acting within the scope of his agency relationship with Manhattan Monster Inc. and/or Spunk Events Inc., I instruct you that

15

Manhattan Monster Inc. and/or Spunk Events Inc. are liable for Mr. Lepe's conduct.

I am not suggesting that Manhattan Monster Inc. or Spunk Inc. are liable. Whether or not Mr. Pedraza was discriminated and/or retaliated against is a matter for you to decide in accordance with these instructions.

16

### **Role of Counsel/Objections and Sidebars**

Let me talk about the role of counsel and objections and sidebars. In the course of this trial, there may have been objections, motions may have been made to strike answers, or conferences may have been held. But you should not pay any attention to those matters. They are procedural matters; they are matters of law, and although you may have been curious about them, you should not consider them in your deliberations. Objections are not evidence. Objections are a proper part of the trial process, and you should make no inference or be influenced in any way by an objection or by the Court's ruling on it. Likewise, it is my function to cut off questioning, to strike remarks and to reprimand any person when I think it is necessary, but you should draw no inference from that.

During the trial, I may have sustained objections to questions that were asked. When that happened, the witness was not permitted to answer or if the witness had already answered, I instructed that the answer be stricken from the record. You may not consider any testimony that I directed you to disregard or that I directed be stricken from the record. In reaching your decision, you may not draw any inference from an unanswered question.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also has the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. You should not draw any inferences or harbor any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

None of the events relating to these conferences should enter into your deliberations at

17

all. Similarly, the personalities and the conduct of counsel in the courtroom are not in any way

in issue. If you formed reactions of any kind to any of the lawyers, favorable or unfavorable,

whether you approved or disapproved of their behavior as advocates, those reactions should

not enter into your deliberations.

18

**The Court's Role**

During the trial, I have been called upon to make various rulings – my rulings are not evidence.

The fact that I may have commented during the course of the trial or asked questions of witnesses does not indicate any feeling of mine about the facts or the credibility of any witness. I have no such feelings, and my comments were intended only to clarify the issue at hand. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or party because of any comment, question, or instruction of mine. It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

19

## **Witness Credibility**

You have now had the opportunity to listen to and observe all of the witnesses. It is now your job to decide how believable you find each witness's testimony to be. So how do you determine where the truth lies? You should use all of the tests for truthfulness that you would use in determining matters of importance in your own everyday life.

One thing you should consider is any motivation, hostility, opinion or affection that a witness may have shown for or against a party. It is your duty to consider whether the witness has permitted any such bias to color their testimony. If you find a witness is biased, then you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny. When I use the word bias here, I am not necessarily speaking of discriminatory bias, but bias in general – a favoritism or partiality to one of the parties in this action.

You should consider any other interest or motive that the witness may have in cooperating with a particular party, as well as any interest the witness may have in the outcome of the case. Interest in the outcome of the case may create a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interest. Therefore, you should accept the testimony of interested witnesses with great care. Keep in mind, though, that it doesn't automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter how strong their interest in the outcome of a case, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, a witness's interest has affected his or her testimony.

Additional factors you should consider are: the opportunity the witness had to see, hear and know the things about which he or she has testified; the accuracy of the witness's memory; the

20

witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's testimony; and the testimony's consistency or lack of consistency with other credible evidence or testimony. In other words, what you must try to do in deciding credibility is to size up a witness in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

You have heard evidence that at some earlier time witnesses have said or done something, or failed to say or do something, which counsel argues is inconsistent with the witnesses' testimony here in court. Evidence of a prior inconsistent statement was placed before you for the purpose of helping you decide whether to believe the trial testimony of the witness. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

If you find that any witness has willfully testified falsely to any material fact – that is, to an important matter – then the law permits you to disregard the entire testimony of that witness based upon the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem true and disregard what you find to be false. While it is quite legitimate for an attorney to try to attack the credibility of a witness, as the sole arbiters of the facts, you must decide for yourselves which witnesses you will believe, what portion of their testimony you will accept, and what weight you will give their testimony.

I will remind you of something I instructed on at the beginning of the case. Everyone,

21

including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices, and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern, race, gender, national origin, sexual orientation, class, education, and many other issues. These hidden thoughts can impact what we see and hear, how we remember what we see and hear, and how we make important decisions. Because you are making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your individual evaluation of that the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence, not on biases.

22

## **Preparation of Witnesses**

You may have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying. The weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

## II.    SUBSTANTIVE CLAIMS

### A.  <u>Overview of Claims and Defenses</u>

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations, claims, and defenses made in this case.

I am going to briefly state the contentions of the respective parties. In stating these contentions, I express no opinion about the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact in this case, then you are to disregard that, as you alone are the judges of the facts. You will consider all the facts, the testimony from the witness stand, the physical facts, and all legitimate inferences.

Plaintiff, Mr. Pedraza, brings gender and sexual-orientation discrimination and retaliation claims against Defendants under Title VII of the Civil Rights Act of 1964, which I will refer to as "Title VII" and the New York City Human Rights Law, which I will refer to by the acronym "NYCHRL."

These two statutes both prohibit discrimination in the terms and conditions of employment based on, among other things, a person's gender or sexual orientation. There are similarities among these laws and I will point out to you where the requirements of certain laws are the same. But there are also some differences, as I will draw to your attention.

Specifically, Mr. Pedraza alleges that Manhattan Monster Inc. discriminated against him in violation of Title VII and the NYCHRL, because he was subjected to a hostile work environment due to his gender and sexual orientation. Mr. Pedraza also alleges that he was retaliated against due to his gender and sexual orientation when he was constructively discharged from his position after he rejected verbal and physical sexual advances of Mr. Lepe. Based on these allegations, Mr. Pedraza brings hostile work environment and retaliation claims against

24

Manhattan Monster Inc. under Title VII. Mr. Pedraza also brings discrimination and retaliation claims against all Defendants under the NYCHRL.

Defendants deny all of Mr. Pedraza's claims. They deny that Mr. Pedraza was subject to a hostile work environment or that he was retaliated against in the terms and conditions of his employment. Defendants assert that Mr. Pedraza voluntarily quit and was not terminated or constructively discharged.

Thus, you are charged with determining the following:

1. Whether Manhattan Monster Inc. discriminated against Mr. Pedraza based on his gender in violation of Title VII, by creating a hostile work environment [IF YOU TAKE THE POSITION THAT]when USING THE WORD "WHEN" SUGGESTS THAT MR. LEPE DID INFACT MAKE VERBAL AND PHYSICAL SEXUAL ADVANCES Mr. Lepe made verbal and physical sexual advances on Mr. Pedraza;

2. Whether Manhattan Monster Inc. discriminated against Mr. Pedraza based on his sexual orientation in violation of Title VII, by creating a hostile work environment when Mr. Lepe made verbal and physical sexual advances on Mr. Pedraza;

> **Commented [s1]:** SAME AS ABOVE – IMPLIES SEXUAL ADVANCES ARE AN UNDISPUTED FACT

3. Whether Manhattan Monster Inc. discriminated against Mr. Pedraza because of his gender or sexual orientation and constructively discharged Mr. Pedraza's employment in retaliation for his complaints about Mr. Lepe's conduct in violation of Title VII;

4. Whether all Defendants discriminated against Mr. Pedraza based on his gender in violation of the NYCHRL, by creating a hostile work environment when Mr.

> **Commented [s2]:** REPLACE WHEN FOR ..IF YOU TAKE THE POSITION THAT

Lepe made verbal and physical sexual advances on Mr. Pedraza;

5.  Whether all Defendants discriminated against Mr. Pedraza based on his sexual orientation in violation of the NYCHRL, by creating a hostile work environment when Mr. Lepe made verbal and physical sexual advances on Mr. Pedraza;

> **Commented [s3]:** SAME AS ABOVE
>
> **Commented [s4R3]:**

6.  Whether all Defendants discriminated against Mr. Pedraza because of his gender or sexual orientation and constructively discharged Mr. Pedraza's employment in retaliation for his opposition to Mr. Lepe's conduct in violation of the NYCHRL;

As to damages, Mr. Pedraza claims that, as a result of the violations of law, he was deprived of wages and certain benefits and that he suffered emotional distress. Mr. Pedraza also seeks punitive damages.

I'm about to turn to the first of the claims. I want to emphasize here that, although certain claims are related in ways that I will explain, you must consider each claim and each defendant separately. With respect to each claim and each defendant, the critical issue is whether Mr. Pedraza has proved all the elements of the claim you are considering against the defendant you are considering by a preponderance of the evidence. If you find a defendant liable to Mr. Pedraza, you must then decide the amount of damages, if any, for which that defendant is responsible.

1. **Hostile Work Environment Under Title VII**

   Title VII prohibits the creation of a hostile work environment caused by harassment because of an employee's protected characteristics. Mr. Pedraza brings gender and sexual-orientation discrimination claims against Manhattan Monster Inc. under Title VII, alleging that Manhattan Monster Inc. created a hostile work environment because of his gender and sexual orientation. Mr. Pedraza claims that Mr. Lepe physically and verbally harassed him because of his gender and/or sexual orientation, creating a hostile work environment. Mr. Pedraza further claims that he suffered damages because of said hostile environment. Defendants deny engaging in any unlawful discrimination against Mr. Pedraza and deny they created a hostile work environment. Last, Defendants assert that Mr. Pedraza suffered no damages.

   To succeed on his Title VII claim against Manhattan Monster, Inc., Mr. Pedraza must prove each of the following elements by a preponderance of the evidence: *First*, that he was subjected to unwelcome harassment, ridicule, or other abusive conduct. *Second*, that the abusive conduct was motivated, at least in part, by Mr. Pedraza's gender or sexual orientation. *Third*, that the abusive conduct was so severe or pervasive that both Mr. Pedraza himself and a reasonable person in Mr. Pedraza's position would find his work environment so hostile or offensive that it would interfere with his work performance. And *Fourth*, that the management of Manhattan Monster Inc. knew, or should have known, of the abusive conduct.

   The test for a hostile environment has both objective and subjective elements: a hostile environment is one that would reasonably be perceived and is perceived as hostile or abusive.[1] The plaintiff must establish that he was adversely affected by the conduct and that a reasonable

   ---

   [1] Faragher v. Boca Raton, 524 U.S. 775, 787 (1998); San Juan v. Leach, 278 A.D.2d 299 (N.Y. App. Div. 2000).

27

person also would have been adversely affected by the conduct.[2] Although generally isolated

remarks or occasional episodes will not suffice,[3] if the alleged conduct is extraordinarily severe,

a single incident may create a hostile environment.[4]

Harassment need not involve touching or be physically threatening to be actionable

where, for example, it is humiliating and demeaning. Also, the conduct need not seriously affect

an employee's psychological well-being or lead the employee to suffer injury in order to meet

this standard. Rather, psychological harm is merely a relevant factor that may be taken into

account in determining whether or not the employee actually found the environment abusive.

When an alleged harasser is in a supervisory position over an employee, the objectionable

conduct is automatically imputed to the employer—here, Manhattan Monster Inc.—for purposes

of asserting a hostile work environment claim.

To determine whether the conduct in this case was "so severe or pervasive" that it

materially altered the terms and conditions of Mr. Pedraza's employment, you should consider

all the circumstances, including such matters as:

a. How often the discriminatory conduct occurred;

b. Its severity;

---

[2] Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 208 (4th Cir. 2014) (plaintiff was required to show that she perceived, and that a reasonable person would perceive, the environment to be abusive or hostile; district court accepted that plaintiff subjectively perceived her workplace to be offensive, but concluded that she had failed to produce evidence to satisfy the objective component of her claim).

[3] Forrest v. Jewish Guild for the Blind, 309 A.D.2d 546 (N.Y. App. Div. 2003) (three epithets over nine years insufficient) superseded by statute on other grounds, Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85; Thompson v. Lamprecht Transp., 39 A.D.3d 846 (N.Y. App. Div. 2007).

[4] Wahlstrom v. Metro-North Commuter R. Co., 89 F. Supp. 2d 506, 520 (S.D.N.Y. 2000); San Juan v. Leach, 278 A.D.2d 299 (N.Y. App. Div. 2000).

28

---

**Commented [s5]:** REPLACE ALTHOUGH WITH "PLEASE NOTE" GENERALLY ISOLATED … THE WORD ALTHOUGH ALONE DOES NOT MAKE IT CLEAR TO A LAY PERSON THAT FREQUENCY OF THE CONDUCT IS AN IMPORTANT ASPECT TO THE STATUTE AND ONE IN WHICH DEFENDANTS RELY ON-

c. Whether it was physically or psychologically threatening or humiliating; and

d. Whether it unreasonably interfered with Mr. Pedraza's work performance.[5]

Manhattan Monster Inc. may be liable for discriminatory acts of Mr. Tobey if the jury finds that Mr. Tobey as plaintiff's supervisor acted as the proxy or alter ego of Monster Bar Inc.[6] A supervisor acts as a proxy or alter ego for his employer if he holds a sufficiently high position in the management hierarchy so as to speak for the corporate employer.

If the jury finds that Mr. Pedraza has proven that he was subjected to a hostile work environment by Mr. Lepe, the jury must decide whether Manhattan Monster Inc. is responsible for Mr. Lepe's conduct. Manhattan Monster Inc. is liable for permitting such behavior by Mr. Lepe if Mr. Pedraza proves by a preponderance of the evidence that: *First*, Manhattan Monster Inc. either failed to provide a reasonable avenue for complaint; or *Second*, that Manhattan Monster Inc. knew, or in the exercise of reasonable care should have known, about Mr. Lepe's discriminatory conduct and failed to take appropriate remedial action.[7]

---

[5] <u>Mack v. Port Authority of N.Y. & N.J.</u>, 225 F. Supp. 2d 376, 387 (S.D.N.Y. 2002).

[6] <u>Townsend v. Benjamin Enterprises, Inc.</u>, 679 F.3d 41 (2d Cir. 2012).

[7] <u>Howley v. Town of Stratford</u>, 217 F.3d 141, 154 (2d Cir. 2000).

**2. <u>Discrimination Based on Gender and Sexual Orientation Under the New York City Human Rights Law (NYCHRL)</u>**

Mr. Pedraza also brings discrimination claims on the basis of gender and sexual orientation under the New York City Human Rights Law, the NYCHRL, against all Defendants. The NYCHRL requires you to apply a different standard in determining whether Defendants subjected Mr. Pedraza to a hostile work environment. The NYCHRL was intended to be more protective than the federal counterpart.

Under the NYCHRL standard, Mr. Pedraza must prove that Defendants subjected him to unwelcomed discriminatory conduct that a reasonable person would find was more than "petty slights and trivial inconveniences."[8] Thus, a single act or comment related to Mr. Pedraza's gender or sexual orientation may be sufficient for Mr. Pedraza to prove his case as long as the comment or comments are more than petty slights or trivial inconveniences.[9]

Also, under the NYCHRL, employers are strictly liable for the harassing and hostile acts of any of its supervisors. Strictly liable means that if you believe that Mr. Tobey, as Mr. Pedraza's supervisor, subjected Mr. Pedraza to conduct that is more than a petty slight or trivial inconvenience, you should find in Mr. Pedraza's favor on this claim as against Manhattan Monster Inc. and Spunk Events Inc.[10]

---

[8] New York State Executive Law § 296(1)(h); <u>Milhalik v. Credit Agricole Cheuvreux North America, Inc.</u>, 715 F.3d 102, 114-15 (2d Cir. 2013).

[9] N.Y.C. Administrative Code §8-107(1)(a); <u>Williams v. New York City Hous. Authority</u>, 61 A.D.3d 62 (N.Y. App. Div. 2009).

[10] NYCHRL §8-107(13)(b)(1); <u>Chen-Oster v. Goldman, Sachs & Co.</u>, 293 F.R.D. 547, 556 (S.D.N.Y. 2013) ("[s]trict liability in employment context for acts of managers and supervisors").

Mr. Pedraza must show that Defendants intentionally discriminated against him.

However, Mr. Pedraza is not required to produce direct evidence of intentional discrimination.

Intentional discrimination may be inferred from the existence of other facts.[11]

---

[11] Federal Jury Practice and Instructions, Vol. 3C § 177:23 (Oct. 2024 Update).

### 3. <u>Retaliatory Termination Under Title VII</u>

Mr. Pedraza also alleges that Manhattan Monster Inc. unlawfully retaliated against him in violation of Title VII, by terminating his employment because he opposed Mr. Lepe's sexual harassment. Title VII makes it an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice under Title VII. This is referred to as retaliation.

Mr. Pedraza's Title VII claim is against Manhattan Monster Inc. However, you may consider the conduct of Mr. Rice, Mr. Tobey, and/or Mr. Lepe in determining whether Mr. Pedraza has proven that his employment was constructively discharged because of his opposition to discrimination, in violation of Title VII.

Accordingly, to prove a claim of retaliation under Title VII, Mr. Pedraza must prove, by a preponderance of the evidence, each of the following elements.

***First***, that Mr. Pedraza engaged in protected activity;

***Second***, that Manhattan Monster Inc. was aware of Mr. Pedraza's protected activity;

***Third***, that Mr. Pedraza was then subject to a material adverse action by Manhattan Monster Inc., such as constructive discharge; and

***Finally***, that there was a causal connection between Mr. Pedraza's protected activity and the materially adverse employment action.

First, in determining whether Manhattan Monster Inc. unlawfully retaliated against Mr. Pedraza for opposing Mr. Lepe's sexual harassment and discrimination of him, you must first decide whether Mr. Pedraza engaged in protected activity. A protected activity includes the opposition to any unlawful employment practice, including gender discrimination, sexual discrimination, and/or sexual harassment. Mr. Pedraza must prove that he had a good faith,

32

reasonable belief that Manhattan Monster Inc.'s conduct violated the laws prohibiting gender and/or sexual orientation discrimination and sexual harassment. He need not establish that he was correct in his actions demonstrating an opposition to Manhattan Monster Inc.'s conduct or that there was indeed discrimination.

The second element that Mr. Pedraza must prove by a preponderance of the evidence is that Manhattan Monster Inc. was aware of his protected activity. If you find that Mr. Pedraza has proved by a preponderance of the evidence that he complained to Mr. Tobey about Mr. Lepe's alleged discriminatory behavior, then this satisfies the requirement that he prove Manhattan Monster Inc. was aware of the protected activity. If, however, you find that Mr. Pedraza did not prove by a preponderance of the evidence that he complained to Mr. Tobey about alleged discriminatory behavior, then he has failed to prove this second element of his retaliatory termination claim.

The third element that Mr. Pedraza must prove by a preponderance of the evidence is that he suffered a materially adverse employment action, one that reasonably deterred him from complaining about discriminatory conduct. Here, Mr. Pedraza claims he suffered an adverse employment action when Manhattan Monster Inc. constructively discharged Mr. Pedraza by creating working conditions that were so intolerable a reasonable person in Mr. Pedraza's position would feel compelled to resign.

The fourth element requires that Mr. Pedraza prove by a preponderance of the evidence that there was a causal connection between his complaint of discrimination and the adverse employment action. Mr. Pedraza does not need to prove that retaliation was the one and only cause of the employer's action. A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory

33

treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against Mr. Pedraza by Manhattan Monster Inc.

As you evaluate whether a particular action was taken in retaliation, you should consider the length of time between the protected activity and the allegedly retaliatory act. Although there is no hard and fast rule fixing a specific period of time beyond which it is not possible to infer that an adverse action is retaliatory, logic will tell you that the longer the period between the protected activity and the adverse employment action, the less likely it is that the adverse action resulted from retaliation. You should consider the totality of the evidence on the question of causation.

Manhattan Monster Inc. contends that it did not engage in any retaliatory action against Mr. Pedraza. Manhattan Monster Inc. instead contends that Mr. Pedraza resigned without notice.

If Mr. Pedraza proves by a preponderance of the evidence that he engaged in protected activity, that Manhattan Monster Inc. took an adverse employment action, and that the action was causally related to Mr. Pedraza's protected activity, you must find that Manhattan Monster Inc. unlawfully retaliated against Mr. Pedraza. If, however, Mr. Pedraza fails to prove even one of the elements by a preponderance of the evidence, you must find for Manhattan Monster Inc.

4. **<u>Retaliatory Termination Under the NYCHRL</u>**

Mr. Pedraza also brings retaliation claims against all Defendants under the NYCHRL. The NYCHRL makes it an unlawful practice to retaliate in any manner against any person because such person has opposed discrimination.

To prevail on his retaliation claim against Manhattan Monster Inc. and Spunk Events Inc. under the NYCHRL, Mr. Pedraza must prove each of the following four elements by a preponderance of the evidence.

*First*, that he was engaged in protected activity, such as making a complaint to his employer about unlawful discrimination or opposing conduct that he believed was unlawful discrimination. With respect to the first element, "protected activity," you must use the same analysis that you used in analyzing Mr. Pedraza's Title VII retaliatory claim as to whether he proved, by a preponderance of the evidence, that he engaged in protected activity under NYCHRL.

*Second*, that Manhattan Monster Inc. and/or Spunk Events Inc. knew about Mr. Pedraza's protected activity—that is, Mr. Pedraza's alleged opposition to Mr. Lepe's sexual harassment. General corporate knowledge that Mr. Pedraza engaged in protected activity is sufficient to establish this element of a retaliation claim under the NYCHRL. With respect to the second element, you must use the same analysis that you used in analyzing the second element of Mr. Pedraza's Title VII retaliatory claim.

*Third*, that Manhattan Monster Inc. and/or Spunk Events Inc. engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity.

*Fourth*, that Mr. Pedraza's protected activity was a motivating factor in Manhattan Monster Inc.'s and/or Spunk Events Inc.'s constructive discharge of Mr. Pedraza as an

35

employee.

In sum, if you find that Mr. Pedraza has proved each of the four elements I just outlined by a preponderance of the evidence, you must find that Manhattan Monster Inc. and/or Spunk Events Inc. is liable.

36

5. **<u>Individual Liability for Retaliation Under the NYCHRL</u>**

Mr. Pedraza also brings retaliation claims for individual liability against Mr. Rice, Mr. Tobey, and Mr. Lepe under the NYCHRL. The NYCHRL provides that an individual defendant who participates in the conduct giving rise to a retaliation claim can be found individually liable.

Specifically, if you find that Mr. Pedraza has proven, by a preponderance of the evidence, that the Mr. Rice, Mr. Tobey, and/or Mr. Lepe had personal knowledge of Mr. Pedraza's protected activity and that his protected activity was a motivating factor in the materially adverse employment action, you must find for Mr. Pedraza with respect to the individual liability of Mr. Rice, Mr. Tobey, and/or Mr. Lepe. However, if you find that Mr. Pedraza has not proven by a preponderance of evidence these two elements, then you must find for Mr. Rice, Mr. Tobey, and/or Mr. Lepe.

You must find Manhattan Monster Inc. and/or Spunk Events Inc. liable for retaliation under the NYCHRL in order to find Mr. Rice, Mr. Tobey, and/or Mr. Lepe individually liable under the NYCHRL. If you find that Mr. Pedraza has not proven, by a preponderance of evidence, that Manhattan Monster Inc. and/or Spunk Events Inc. retaliated against him based on his protected activity under the NYCHRL, then you must find for Mr. Tobey, Mr. Rice, and Mr. Lepe.

**B.  <u>Damages</u>**

I will now instruct you on the measure of damages you should award to Mr. Pedraza in the event you conclude that Mr. Pedraza has proven his claims for discrimination and/or retaliation. The law permits me to charge you on damages now so that in the event you decide that Mr. Pedraza is entitled to prevail on any of his claims and you reach the issue of damages, you will not have to come back in to listen to my charge on damages.

You should not interpret the fact that I am giving instructions about damages now as an indication that I believe that Mr. Pedraza should, or should not, receive damages. It is your task and yours alone to decide whether Mr. Pedraza is entitled to prevail on his claims. In other words, you should only reach the issue of what damages may be appropriate if you decide that Mr. Pedraza prevails on any of his claims.

You may award only those damages that Mr. Pedraza has proved by a preponderance of the evidence. Any damages that you may choose to award should be based on the evidence presented at trial.

If you decide to award damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

I will explain each category of damages separately, but generally Mr. Pedraza seeks lost wages, compensatory damages, and punitive damages.

38

1. **<u>Economic Damages – Back Pay Damages</u>**

If you determine that Mr. Pedraza has proven, by a preponderance of the evidence, that he was discriminated or retaliated against, he may recover wages, bonuses, and other benefits he would have earned if he had not been discriminated or retaliated against by Defendants. An award of back pay runs from the date of the discriminatory or retaliatory action to the date of the judgment. Therefore, in awarding back pay, you must determine the damages Mr. Pedraza is entitled to starting from May 22, 2022, through the present. In other words, you must determine the total amount of compensation Mr. Pedraza would have earned between the time Defendants constructively discharged him through the present. You should include any lost or reduced salary, bonuses, raises, benefits, promotions, training opportunities and other compensation increases or payments necessary to make Mr. Pedraza whole in determining your total award for back pay damages.

Please note that Mr. Pedraza is only entitled to be compensated once for any alleged back pay that arose from his proven discriminatory and/or retaliatory termination claims.

If Mr. Pedraza has proved a claim, he would be entitled to back pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Mr. Pedraza should be resolved in his favor. That said, Mr. Pedraza has the burden of proving by a preponderance of the evidence that he actually incurred a loss of back pay.

**2.** **Economic Damages – Front Pay Damages**

Front pay damages, if any, represent a plaintiff's lost salary and benefits caused by an unlawful adverse action.

If you find for Mr. Pedraza on any of his claims for retaliatory termination, and if you find that Mr. Pedraza will be unable to earn in the future what he would have earned at Manhattan Monster Inc., then you may award him, as additional compensation, the amount he would have earned from the day of your verdict until either: (i) the date you believe he would have worked at Manhattan Monster Inc. absent any discriminatory conduct or (ii) the date you can reasonably predict that he has a reasonable prospect of obtaining comparable employment. Factors to be considered in determining front pay include Mr. Pedraza's age and his reasonable prospects of obtaining comparable employment. You should bear in mind that the purpose of front pay is to make a plaintiff whole—that is, to put the plaintiff in the position he would have been in if Defendants had not discriminated and/or retaliated against him.

Please note that Mr. Pedraza is entitled to be compensated only once for any alleged front pay that arose from his proven claims.

If Mr. Pedraza has proved a claim, he would be entitled to front pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Mr. Pedraza should be resolved in his favor. That said, Mr. Pedraza has the burden of proving by a preponderance of the evidence that he actually incurred a loss of front pay.

40

**3.  <u>Plaintiff's Duty to Mitigate Damages</u>**

A plaintiff has a duty to mitigate back pay and front pay damages by using reasonable care and diligence in seeking suitable alternative employment. The burden is on Defendants to prove by a preponderance of the evidence that Mr. Pedraza has failed in his duty to mitigate. Thus, if you find that Mr. Pedraza failed to use reasonable care and diligence and that he could have obtained a job substantially equivalent to the one he left at Manhattan Monster Inc., then you should reduce any award of back pay by the amount you find he could have earned from such employment.

In assessing the reasonableness of Mr. Pedraza's efforts to mitigate his damages, you may consider what you have learned about Mr. Pedraza's qualifications for employment, the characteristics of the job market, and the quantity and quality of the efforts made by Mr. Pedraza to find suitable work. The question whether Mr. Pedraza acted reasonably with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. In weighing the evidence, keep in mind that Mr. Pedraza was under no obligation to enter another line of work, or to take a demotion or a demeaning job.

Mr. Pedraza's failure to make a reasonable effort to minimize damages does not prevent all recovery, but does prevent recovery of such damages as might have been avoided.

41

4. **<u>Compensatory Damages</u>**

If you find that Mr. Pedraza has established any of his claims, you may award him compensatory damages for injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life that was caused by the Defendants' unlawful conduct. Compensatory damages are separate from back pay and front pay and are an amount that will fairly compensate Mr. Pedraza for any injury he actually sustained as a result of Defendants' conduct. There is no requirement that a claim for emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damages. No expert testimony is necessary to prove such harm, and you may rest your findings solely on Mr. Pedraza's testimony.

No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Rather, you may issue an award of monetary damages based on the emotional harm you determine Mr. Pedraza to have suffered, based on the evidence presented and your best judgment. You may not simply award damages for any injury suffered by Mr. Pedraza, you must award damages only for those injuries that were a proximate result of conduct by Defendants that violated Mr. Pedraza's rights. But, you may not award compensatory damages based on speculation or sympathy.

42

**5.** **Punitive Damages**

If you find that Mr. Pedraza prevails on any of his claims under Title VII or the NYCHRL, you may award him punitive damages. Punitive damages are awarded, in the discretion of the jury, to punish a defendant and to set an example in order to deter Defendants and others from committing similar acts in the future. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct. There is no exact rule by which to determine the amount of punitive damages. It is up to the jury to decide what amount is sufficient to punish Defendants.

A plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Under this standard, a defendant need not know that it or he was violating the law, and the plaintiff is not required to prove intentional or malicious conduct.

In calculating a punitive damages award, you should consider, among other things, the (1) nature and reprehensibility of the Defendants' conduct, including the character of the wrongdoing and the Defendants' awareness of what harm the conduct caused or was likely to cause; (2) the amount of time the Defendants engaged in the conduct; and (3) the Defendants' financial condition and the impact your punitive damages award will have on the Defendants. If you award punitive damages, you may consider the Defendants' net worth and the impact of paying that award.

Keep in mind that punitive damages are not intended to, and may not be used to, compensate a plaintiff for his injuries. Instead, the purpose of punitive damages is to punish a defendant and to deter similar conduct in the future. Any punitive damages award should be

43

limited to the amount reasonably necessary to achieve the goals of punishment and deterrence.

There is an affirmative defense to punitive damages available to an employer such as Manhattan Monster Inc. and/or Spunk Events Inc. under Title VII and the NYCHRL. An employer will not be liable for punitive damages if it has made good faith efforts to enforce an antidiscrimination policy. This defense requires an employer to establish both that it had an antidiscrimination policy and that it made good faith effort to enforce it. This defense focuses on the employer's state of mind. It precludes punitive damages unless the employer discriminated in the face of a perceived risk that its actions would violate federal, state, or local law.

Under the NYCHRL, an employer will not be liable for punitive damages if it has made a good faith effort to enforce an antidiscrimination policy. However, even if you decide to award punitive damages to Mr. Pedraza based on Mr. Lepe's conduct and not Manhattan Monster Inc.'s or Spunk Events Inc.'s, Manhattan Monster Inc. and/or Spunk Events Inc. may still be liable for Mr. Lepe's punitive damages. Under the NYCHRL, an employer is held liable for any award of punitive damages imposed on a managerial or supervisory employee found to have engaged in unlawful discrimination with the necessary state of mind. In effect, the liability for the misconduct of the manager or supervisor is attributed to the employer. Thus, if you assess punitive damages against Mr. Tobey, Manhattan Monster Inc. and/or Spunk Events Inc. would be obligated to pay the amount of such damages you impose. That liability would be joint, meaning that the entire award could be collected from either one or from all of these Defendants in amounts adding up to the total punitive damages. However, you may, in your discretion, reduce the amount of the punitive damages award imposed upon Mr. Tobey that is imputed to Manhattan Monster Inc. and/or Spunk Events Inc. In doing so, you may consider whether Manhattan Monster Inc. and/or Spunk Events Inc. established and complied with policies,

44

programs, and procedures for the prevention and detection of unlawful discriminatory or retaliatory practices by employees, including, but not limited to:

1. A meaningful and responsive procedure for investigation of complaints of discriminatory practices by employees and for taking appropriate action against those persons who are found to have engaged in such practices;

2. A firm policy against such practices, which is effectively communicated to employees and gives employees the opportunity to make complaints of discrimination or retaliation to her employer;

3. A program to educate employees about unlawful discriminatory practices under the local, state, and federal law; and

4. Procedures for the supervision of employees specifically directed at the prevention and detection of such practices.

You may also consider whether Manhattan Monster Inc. and/or Spunk Events Inc. had a record of no or relatively few prior incidents of sex-based or sexual orientation-based discriminatory or retaliatory conduct.

You must consider whether Manhattan Monster Inc. and/or Spunk Events Inc. has established any or all of the factors listed above, and, if so, the degree to which the award against Manhattan Monster Inc. and/or Spunk Events Inc. should be reduced relative to the award against Mr. Tobey, if any. Further, you may take into account Manhattan Monster Inc. and/or Spunk Events Inc.'s financial condition in deciding whether to reduce its responsibility for any punitive damages you may impose against Mr. Tobey.

45

III.    **CLOSING INSTRUCTIONS**

**<u>Right to See Exhibits and Hear Testimony; Communications with the Court</u>**

If during your deliberations you want to see any of the exhibits, you may request that

they be sent to you in the jury room. A list of exhibits received in evidence will be forwarded to

you in the jury room. If you want any of the testimony read, that can also be done and will occur

here in open court. Please remember that it is not always easy to locate what you may want, so

try to be as specific as you possibly can in requesting exhibits or portions of the testimony. To

this end, please be patient—with respect to requests for testimony, it can sometimes take counsel

and the Court some time to identify the portions that are responsive to your request. If you want

any further explanation of the law as I have explained it to you, you may also request that.

Your requests for exhibits or testimony—in fact, any communication with the Court,

including any questions on the law, should be made to me in writing, signed by your foreperson,

and given to the marshal. If there is any doubt or question about the meaning of any part of the

instructions that I have given you during this trial, you should not hesitate to send me a note

asking for clarification or for a further explanation. I will respond to any questions or requests

you have as promptly as possible, by having you return to the courtroom so that I can address

you in person. In any event, do not tell me or anyone else how the jury stands on any issue until

after a unanimous verdict is reached.

It is very important that you not communicate with anyone outside the jury room about

your deliberations or about anything touching this case. There is only one exception to this rule.

If it becomes necessary during your deliberations to communicate with me—to request

testimony, or to request clarification on the law—you should send a note to me, in writing,

signed by your foreperson, and given to one of the court security officers or to my courtroom

46

deputy. No member of the jury should ever attempt to communicate with me except by a signed

writing, and I will never communicate with a member of the jury on any subject touching on the

merits of the case other than in writing, or orally here in open court. If you send any notes to the

Court, do not disclose anything about your deliberations. Specifically, do not disclose to

anyone—not even to me—how the jury stands, numerically or otherwise, until after you have

reached a unanimous verdict or have been discharged.

47

### Notes

Many of you have taken notes periodically throughout this trial. You should not show your notes to, or discuss your notes with, any other jurors during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

**Duty to Deliberate/Unanimous Verdict**

You will now retire to the jury room to begin your deliberations. In order for Mr. Pedraza to prevail on his claims, Mr. Pedraza must sustain his burden of proof as I have explained to you with respect to his claims and the specific questions you are considering. Your verdict on each question must be unanimous. Similarly, defendants must carry their burden as to those areas I have likewise identified for you.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard and is entitled to their opinion, but you are required to exchange views with your fellow jurors. No one juror should hold center stage in the jury room, and no one juror should control and monopolize the deliberations. It is your duty to discuss the evidence. If, after listening to your fellow jurors, and if, after stating your own view, you become convinced that your view is wrong, do not hesitate to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered. Your final vote must reflect your conscientious belief as to how the issues should be decided.

Your verdict must be unanimous. Until such time as you reach unanimous agreement, you must not reveal the standing of the jurors, that is, the split of the vote, to anyone, including the court or anyone else outside the jury room. You are not to discuss the case until all jurors are present. Without all members of the jury, a select handful of jurors is only a gathering of individuals and only collectively when all are present do you constitute a jury, and only then may you deliberate.

Your duty is to decide the issues fairly and impartially, to apply the law as I instructed you, and to see that justice is done. Remember at all times, you are not partisans. You are judges

49

– judges of the facts, evidence, and the application of the law. Your sole interests are to seek the truth from the evidence in the case, and to determine whether the plaintiff has proved his claims by a preponderance of evidence and whether the defendants have proven any of their defenses by a preponderance of the evidence with respect to damages sought. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

**<u>Verdict Form/Return of Verdict</u>**

I have prepared a verdict form for you to use in recording your decision. Please use that form to report your verdict. Once you have made your verdict, you will record your decisions in the verdict form. You should also proceed through the questions in the order in which they are listed, following the instructions on that form.

After you have reached a verdict, your foreperson will fill out the jury verdict form that will be given to you, sign, and date it, and the foreperson will advise the marshal outside your door that you are ready to return to the courtroom. Do not specify what the verdict is in your note.

I stress that each of you must be in agreement with the verdict that is announced by the foreperson in open court and officially recorded. Once your verdict is announced by your foreperson in open court, and officially recorded, it cannot ordinarily be revoked.

**<u>Selecting a Foreperson</u>**

Members of the jury, the first thing you should do when you retire to the jury room is to elect one member of the jury as your foreperson. The foreperson has no greater voice or authority than any other juror, and their vote or opinion does not count for any more than any other juror's vote or opinion. The foreperson is simply the person who will communicate with the Court when questions arise. The foreperson is merely your spokesperson to the court. The foreperson can send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict.

**<u>Juror Oath/Sympathy or Bias</u>**

I will remind you that you took an oath to render judgment impartially and fairly, without regard to prejudice or sympathy and without fear, solely upon the evidence and the applicable law. So that is your duty, and I know you will do your duty and reach a just and fair verdict.

If you follow that oath and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict. You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence. It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex, sexual orientation, or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. Both parties are entitled to the same fair trial at your hands. Both parties stand equal before the law and are to be dealt with as equals in this Court.

I have just one more comment. I don't think it is necessary because it seems that even though you haven't known each other very long you have a good relationship, but it is the custom in this courthouse to say it. You should treat each other with courtesy and respect during your deliberations. All litigants stand equal in this room. All litigants stand equal before the bar of justice. Your duty is to decide between these parties fairly and impartially to see that justice is done, all in accordance with your oath as jurors. Thank you for your time and your attentiveness, and now the case is in your hands.

53

**IV.    CONCLUSION**

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement. Please don't discuss the case while seated in the box because the case still has not been formally submitted to you.

* * *

Members of the jury, my deputy is going to swear the court security officer.

(Court Security Officer sworn)

Members of the jury, you may now retire. You are instructed to retire to the jury room and you may begin your deliberations.

54

# EXHIBIT 3

**Court Exhibit 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
 JUAN PEDRAZA,

                                 Plaintiff,                               **23-CV-2596 (VF)**

-against-

 MANHATTAN MONSTER INC. d/b/a
 THE MONSTER BAR, SPUNK EVENTS INC.
 d/b/a SPUNK INC., CHARLES RAYMOND RICE,
 DANIEL TOBEY, and JOSE LUIS LEPE,

                                 Defendants.
-----------------------------------------------------------------
**VALERIE FIGUEREDO, United States Magistrate Judge**

<u>PLEASE CHECK ( ✔ ) YOUR ANSWERS</u>
All jurors must agree on the answers to all the questions.

## I.    <u>Discrimination Based on Gender under Title VII</u>

       1.     Do you find from a preponderance of the evidence that Manhattan Monster Inc.

created or maintained a severe or pervasive hostile work environment on the basis of Mr.

Pedraza's gender?

                             YES _____           NO_____

## II.    <u>Discrimination Based on Sexual Orientation under Title VII</u>

       1.     Do you find from a preponderance of the evidence that Manhattan Monster Inc.

created or maintained a severe or pervasive hostile work environment on the basis of Mr.

Pedraza's perceived sexual orientation?

                             YES _____           NO_____

**III.**    **Discrimination Based on Gender under NYCHRL**

1.    Do you find from a preponderance of the evidence that Manhattan Monster Inc. created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's gender?

YES _____        NO _____

2.    Do you find from a preponderance of the evidence that Spunk Events Inc. created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's gender?

YES _____        NO _____

3.    Do you find from a preponderance of the evidence that Charles Raymond Rice created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's gender?

YES _____        NO _____

4.    Do you find from a preponderance of the evidence that Daniel Tobey created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's gender?

YES _____        NO _____

5.    Do you find from a preponderance of the evidence that Jose Luis Lepe created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's gender?

YES _____        NO _____

**IV.**     **Discrimination Based on Sexual Orientation under NYCHRL**

1.      Do you find from a preponderance of the evidence that Manhattan Monster Inc. created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's perceived sexual orientation?

YES _____          NO_____

2.      Do you find from a preponderance of the evidence that Spunk Events Inc. created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's perceived sexual orientation?

YES _____          NO_____

3.      Do you find from a preponderance of the evidence that Charles Raymond Rice created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's perceived sexual orientation?

YES _____          NO_____

4.      Do you find from a preponderance of the evidence that Daniel Tobey created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's perceived sexual orientation?

YES _____          NO_____

5.      Do you find from a preponderance of the evidence that Jose Luis Lepe created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's perceived sexual orientation?

YES _____          NO_____

**V.**     **Retaliation under Title VII of the Civil Rights Act of 1964**

1.     Has Mr. Pedraza proved, by a preponderance of the evidence, that Manhattan Monster Inc. subjected him to a retaliatory adverse employment action in the form of constructive discharge based on his protected activity in violation of Title VII?

YES _____          NO_____

**VI.**     **Retaliation under NYCHRL**

1.     Has Mr. Pedraza proved, by a preponderance of the evidence, that he was subjected to retaliatory adverse employment action in the form of constructive discharge based on his protected activity in violation of NYCHRL?

a)     By Manhattan Monster Inc.?

YES _____          NO_____

b)     By Spunk Events Inc.?

YES _____          NO_____

c)     By Charles Raymond Rice? [*You may only answer YES to this question if you answered YES to Question No. VI (1)(a) above*]

YES _____          NO_____

d)     By Daniel Tobey? [*You may only answer YES to this question if you answered YES to Question No. VI (1)(a) and/or VI (1)(b) above*]

YES _____          NO_____

e)     By Jose Luis Lepe? [*You may only answer YES to this question if you answered YES to Question No. VI (1)(a) and/or VI (1)(b) above*]

YES _____          NO_____

4

VII. __Damages__

*The following questions need only be answered if you answered YES to one or more of the prior questions.*

    1.    Has Mr. Pedraza proven, by a preponderance of the evidence, that he is entitled to back pay, as a result of the Defendants' discrimination against him and/or retaliatory constructive discharge of his employment?

                 YES _____          NO_____

    2.    If you answered "YES" to Question VII (1), state below the amount that is to be awarded in back pay. If you answered "NO" to Question VII (1), proceed to Question VII (3).

                 $_____

    3.    If you answered "YES" to any Questions in Parts V through VI, do you find that Mr. Pedraza has proven, by a preponderance of the evidence, that he is entitled to front pay as a result of the discrimination against him and/or retaliatory constructive discharge of his employment?

                 YES _____          NO_____

    4.    If you answered "YES" to Question VII (3), state below the amount that is to be awarded in front pay. If you answered "NO" to Question VII (3), proceed to Question VII (5).

                 $_____

    5.    Do you find that Mr. Pedraza has proven, by a preponderance of evidence, that he is entitled to compensatory damages for pain, suffering or emotional distress that he experienced as a result of the discrimination against him and/or retaliatory constructive discharge of his employment?

                 YES _____          NO_____

6.    If you answered "YES" to Question VII (5), state below the amount that is to be awarded in compensatory damages for pain, suffering, or emotional distress. If you answered "NO" to Question VII (5), proceed to Question VII (7).

$_____

7.    If you answered "YES" to any Questions in Parts I through VI, do you find that Defendant, Manhattan Monster Inc., should be subject to punitive damages?

YES _____        NO_____

8.    If you answered "YES" to Question VII (7), state below the amount of punitive damages, if any, that you award to Plaintiff:

$_____

9.    If you answered "YES" to any Questions in Parts I through VI, do you find that Defendant, Spunk Events Inc., should be subject to punitive damages?

YES _____        NO_____

10.    If you answered "YES" to Question VII (9), state below the amount of punitive damages, if any, that you award to Plaintiff:

$_____

11.    If you answered "YES" to any Questions in Parts I through VI, do you find that Defendant, Charles Raymond Rice, should be subject to punitive damages?

YES _____        NO_____

12.    If you answered "YES" to Question VII (11), state below the amount of punitive damages, if any, that you award to Plaintiff:

$_____

13.    If you answered "YES" to any Questions in Parts I through VI, do you find that Defendant, Daniel Tobey, should be subject to punitive damages?

YES _____          NO_____

14.    If you answered "YES" to Question VII (13), state below the amount of punitive damages, if any, that you award to Plaintiff:

$_____

15.    If you answered "YES" to any Questions in Parts I through VI, do you find that Defendant, Jose Luis Lepe, should be subject to punitive damages?

YES _____          NO_____

16.    If you answered "YES" to Question VII (15), state below the amount of punitive damages, if any, that you award to Plaintiff:

$_____

*Please have the foreperson sign and date this Verdict Form and advise the Court by note that you have reached a verdict.*

Dated:  New York, New York

_____, 2024

_____

Jury Foreperson

# EXHIBIT 4

**Court Exhibit 4**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
 JUAN PEDRAZA,

                            Plaintiff,

-against-

 MANHATTAN MONSTER INC. d/b/a
 THE MONSTER BAR, SPUNK EVENTS INC.
 d/b/a SPUNK INC., CHARLES RAYMOND RICE,
 DANIEL TOBEY, and LUIS GOMEZ,

                        Defendants.
----------------------------------------------------------------
**VALERIE FIGUEREDO, United States Magistrate Judge**

            **23-CV-2596 (VF)**

           **<u>FINAL JURY INSTRUCTIONS</u>**

## TABLE OF CONTENTS

I. GENERAL INSTRUCTIONS ...................................................................................... 4

    Introductory Remarks ............................................................................................. 4

    Duty of the Court .................................................................................................... 5

    Duty of the Jury ...................................................................................................... 6

    Burden of Proof & Preponderance of the Evidence ................................................ 8

    What is Evidence .................................................................................................. 10

    What is Not Evidence ........................................................................................... 11

    Direct and Circumstantial Evidence; Inferences .................................................. 12

    Evidence for a Limited Purpose ............................................................................ 14

    Corporate Defendants/General Principles of Agency ........................................... 15

    Adverse Inference ..............................................................**Error! Bookmark not defined.**

    Role of Counsel/Objections and Sidebars ............................................................ 17

    The Court's Role .................................................................................................. 19

    Witness Credibility .............................................................................................. 20

    Preparation of Witnesses ...................................................................................... 23

II. SUBSTANTIVE CLAIMS .................................................................................... 24

    A. Overview of Claims and Defenses .................................................................. 24

    1. Discrimination Under Title VII ........................................................................ 27

    2. Discriminatory Termination Claim Under NYSHRL & NYCHRL ..................... 30

    3. Individual Defendants' Liability for Discrimination Under NYSHRL & NYCHRL .... **Error! Bookmark not defined.**

    4. Retaliatory Termination Under Title VII ........................................................... 32

    5. Retaliatory Termination Under New York Labor Law ..........**Error! Bookmark not defined.**

    6. Individual Defendant Dr. Femia's Liability Under the NYLL ............ **Error! Bookmark not defined.**

    7. Retaliatory Termination Under the Equal Pay Act ...............**Error! Bookmark not defined.**

    8. Retaliatory Termination Under NYSHRL & NYCHRL ....................................... 35

    9. Individual Liability for Retaliation Under NYSHRL & NYCHRL ..................... 37

    B. Damages ......................................................................................................... 38

    1. Economic Damages – Back Pay Damages ......................................................... 39

2. Back Pay and Front Pay Damages – Plaintiff's Duty to Mitigate ........................................ 41

3. Compensatory Damages .......................................................................................... 42

4. Punitive Damages ..................................................................................................... 43

5. Willfulness ..................................................................**Error! Bookmark not defined.**

III.  CLOSING INSTRUCTIONS .................................................................................... 46

Right to See Exhibits and Hear Testimony; Communications with the Court......................... 46

Notes.................................................................................................................................. 48

Duty to Deliberate/Unanimous Verdict.............................................................................. 49

Verdict Form/Return of Verdict ......................................................................................... 51

Selecting a Foreperson ...................................................................................................... 52

Juror Oath/Sympathy or Bias ............................................................................................ 53

IV. CONCLUSION.............................................................................................................. 54

## I.   GENERAL INSTRUCTIONS

### <u>Introductory Remarks</u>

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions. First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case. These instructions really would apply to just about any trial. Second, I'll give you some specific instructions about the legal rules applicable to this particular case. Third, I'll give you some final instructions about procedure. Listening to these instructions may not be easy. It is important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention. You'll notice that I'm reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying. I will be distributing to you a verdict form in which to record your verdict. It will list the questions that you must consider, in the order that you should consider them.

**Duty of the Court**

We are now approaching the most important part of this case: your deliberations. You have heard all of the evidence in this case, as well as the final arguments of the lawyers for the parties. It is my duty to provide these instructions, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration. It is your duty to accept these instructions of law and apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be. You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or should be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any particular instruction alone as stating the law, and you should consider my instructions as a whole when you retire to deliberate in the jury room. You are not to infer from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case. Any questions I asked were designed to make sure that the testimony was clear and to avoid confusion. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

**Duty of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in testimony; you draw whatever reasonable inferences you decide to draw from the facts as you determine them, and you determine the weight of the evidence.

In determining the facts, you must rely upon your own recollection of the evidence. None of what the lawyers have said in their opening statements, in their closing arguments, or in their objections is evidence. You should bear in mind particularly that a question put to a witness is never evidence. It is only the answer in the context of the question that is evidence. You may not consider any answer that I directed you to disregard. I remind you that nothing I have said during the trial or will say during these instructions is evidence. Similarly, the rulings I have made during the trial are not any indication of my views of what your decision should be.

The evidence before you consists of the answers given by witnesses, the exhibits that were received in evidence, and stipulated facts and admissions. Exhibits marked for identification but not received may not be considered as evidence. Anything you may have seen or heard about this case outside the courtroom is not evidence and must be disregarded entirely.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or

matters outside the case.

**Burden of Proof & Preponderance of the Evidence**

Because this is a civil lawsuit, Mr. Pedraza has the burden of proving each disputed part of his claims by a preponderance of the evidence and Defendants have the burden of proving each disputed part of their affirmative defenses by a preponderance of the evidence.

A preponderance of the evidence simply means that something is more likely so than not so. In other words, if you find that the credible evidence on a given issue is evenly divided between Mr. Pedraza and Defendants, then you must decide that issue for Defendants. However, if you find that the scales tip, however slightly, in favor of Mr. Pedraza that the issue is more likely than not true, then you are to find that Mr. Pedraza has proven the issue by a preponderance of the evidence. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

If Mr. Pedraza fails to prove an issue by a preponderance of the evidence, then you must find that issue in favor of Defendants. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. You should attach no significance to the fact that certain witnesses were called to testify by Plaintiff or by Defendants. Nor should you attach any meaning to the fact that a document or other exhibit was introduced by one party rather than another. Every party is entitled to the benefit of any evidence tending to support its arguments, even if such evidence came from witnesses or documents introduced by the other party. This is true with respect to any contested issue of fact in this case.

The law does not require any party to call as witnesses each and every person who may

have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. You should not draw any negative inference against any party with respect to any issue in dispute based on their failure to produce a witness over whom the party has no control.

A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented. Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should not consider or discuss that standard in your deliberations.

For certain defenses and issues in this case, the Defendants have the burden of proof. I will describe the burden of proof for each defense in a few minutes.

## **What is Evidence**

As I have said, in determining the facts, you must rely on your own recollection of the evidence. What is evidence? Evidence consists of the testimony of witnesses, whether here at trial or previously at their depositions, the exhibits that have been received into evidence, any stipulations of fact to which the lawyers have agreed, and any facts I may instruct you to accept as proven and not in dispute.

## **What is Not Evidence**

I also want to be clear on what is not evidence. What the attorneys say in their opening statements is not evidence, what they say in their closing arguments is not evidence, nor is testimony that I ask you to disregard. Any demonstratives used by attorneys during opening statements or closing statements is also not evidence. Anything I say is not evidence. The only testimony that is evidence in this case will come from a witness sitting in the witness stand or from depositions previously taken. Although the lawyers may comment to you about the testimony, their arguments are not evidence. Their arguments are just intended to help you understand the evidence.

If in the course of your deliberations your recollection of the facts differs from the lawyers' arguments, it is your recollection that controls. Also, anything that you see or hear when the court is not in session, even if it is said by one of the lawyers or one of the parties – for example, out in the hall or in the elevator – that is not evidence. Only what is admitted into evidence here that all of us can see and hear at the same time may be considered by you as evidence.

I want to say something about the subject of implicit bias. Everyone, including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern race, gender, national origin, sexual orientation, class, education, and many other issues.

These hidden thoughts can impact what we see and hear, how we remember what we see and hear and how we make important decisions. Because you're making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist

11

jumping to conclusions based on personal likes and dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes or biases. The law requires that you return a just verdict based solely on the evidence, your individual evaluation of the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence and not on any bias.

### Direct and Circumstantial Evidence; Inferences

In my beginning remarks, I told you that there were two kinds of evidence that you could use in reaching your verdict. One is direct evidence and the other is circumstantial evidence.

Direct evidence is when a witness testifies about something the witness knows by virtue of his or her senses. So, something the witness has observed or felt or touched or heard. Direct evidence may also be in the form of a document, or another exhibit admitted into evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

There is a simple example of circumstantial evidence that is often used in the courthouse. Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. Assume that the courtroom windows were covered so you couldn't see outside. Then, as you were sitting here, someone walked in with an umbrella that was dripping wet, and a few minutes later someone else also entered with a wet umbrella or a wet raincoat. Now, you can't see outside the courtroom and so you can't see with your own senses whether it is raining, so you have no direct evidence that it is raining. But on the

12

combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining. That is all there is to circumstantial evidence. You infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of some other fact. Similarly, based on the evidence presented at this trial, you may infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of other facts.

Let me say a few words about inferences. An inference is not speculation, suspicion or guess. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. There are times when different inferences may be drawn from the same proven facts. Here, the plaintiffs ask you to draw one set of inferences, while the defendant asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

## **Evidence for a Limited Purpose**

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

## Corporate Defendants/General Principles of Agency

As corporations, Manhattan Monster Inc. and Spunk Events Inc. act through their employees. It is established law that under certain circumstances an employer may be liable for the wrongs, even willful wrongs, done by its employees if the wrongs are committed during the scope of the employee's employment duties and in furtherance of the employer's business. An employer's liability rests upon a broad principle that if a corporation manages its affairs through others, the corporation is bound to manage them in such a way that no person shall suffer injury from a wrong done by that other while engaged upon the employer's business and acting within the scope of their employment.

The fact that an employee was not specifically authorized to commit the act or was even violating instructions which had been given to them does not relieve the corporation from liability if unlawful conduct is proven. A corporation is liable even if the employee was acting unlawfully if the acts were committed within the scope of his or her employment.

In this case, it is not disputed that the Daniel Tobey is the manager of Manhattan Monster Inc. and the owner of Spunk Events Inc. and any conduct by Mr. Tobey with respect to Mr. Pedraza was made while acting within the scope of his employment at Manhattan Monster Inc. and Spunk Events Inc. It is undisputed that if you find any unlawful acts were committed by Mr. Tobey, that such acts were the result of his attempts to carry out work that was entrusted to him by Manhattan Monster Inc. and Spunk Events Inc. Therefore, I instruct you that Manhattan Monster Inc. and Spunk Events Inc. are liable for Mr. Tobey's conduct. Plaintiff also alleges that Mr. Lepe is an agent of Manhattan Monster Inc. and Spunk Events Inc. If you find that to be true and find that any unlawful acts were committed by Mr. Lepe while acting within the scope of his agency relationship with Manhattan Monster Inc. and/or Spunk Events Inc., I instruct you that

Manhattan Monster Inc. and/or Spunk Events Inc. are liable for Mr. Lepe's conduct.

I am not suggesting that Manhattan Monster Inc. or Spunk Inc. are liable. Whether or not Mr. Pedraza was discriminated and/or retaliated against is a matter for you to decide in accordance with these instructions.

## Role of Counsel/Objections and Sidebars

Let me talk about the role of counsel and objections and sidebars. In the course of this trial, there may have been objections, motions may have been made to strike answers, or conferences may have been held. But you should not pay any attention to those matters. They are procedural matters; they are matters of law, and although you may have been curious about them, you should not consider them in your deliberations. Objections are not evidence. Objections are a proper part of the trial process, and you should make no inference or be influenced in any way by an objection or by the Court's ruling on it. Likewise, it is my function to cut off questioning, to strike remarks and to reprimand any person when I think it is necessary, but you should draw no inference from that.

During the trial, I may have sustained objections to questions that were asked. When that happened, the witness was not permitted to answer or if the witness had already answered, I instructed that the answer be stricken from the record. You may not consider any testimony that I directed you to disregard or that I directed be stricken from the record. In reaching your decision, you may not draw any inference from an unanswered question.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also has the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. You should not draw any inferences or harbor any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

None of the events relating to these conferences should enter into your deliberations at

all. Similarly, the personalities and the conduct of counsel in the courtroom are not in any way in issue. If you formed reactions of any kind to any of the lawyers, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

### The Court's Role

During the trial, I have been called upon to make various rulings – my rulings are not evidence.

The fact that I may have commented during the course of the trial or asked questions of witnesses does not indicate any feeling of mine about the facts or the credibility of any witness. I have no such feelings, and my comments were intended only to clarify the issue at hand. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or party because of any comment, question, or instruction of mine. It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

## **Witness Credibility**

You have now had the opportunity to listen to and observe all of the witnesses. It is now your job to decide how believable you find each witness's testimony to be. So how do you determine where the truth lies? You should use all of the tests for truthfulness that you would use in determining matters of importance in your own everyday life.

One thing you should consider is any motivation, hostility, opinion or affection that a witness may have shown for or against a party. It is your duty to consider whether the witness has permitted any such bias to color their testimony. If you find a witness is biased, then you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny. When I use the word bias here, I am not necessarily speaking of discriminatory bias, but bias in general – a favoritism or partiality to one of the parties in this action.

You should consider any other interest or motive that the witness may have in cooperating with a particular party, as well as any interest the witness may have in the outcome of the case. Interest in the outcome of the case may create a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interest. Therefore, you should accept the testimony of interested witnesses with great care. Keep in mind, though, that it doesn't automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter how strong their interest in the outcome of a case, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, a witness's interest has affected his or her testimony.

Additional factors you should consider are: the opportunity the witness had to see, hear and know the things about which he or she has testified; the accuracy of the witness's memory; the

witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's testimony; and the testimony's consistency or lack of consistency with other credible evidence or testimony. In other words, what you must try to do in deciding credibility is to size up a witness in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

You have heard evidence that at some earlier time witnesses have said or done something, or failed to say or do something, which counsel argues is inconsistent with the witnesses' testimony here in court. Evidence of a prior inconsistent statement was placed before you for the purpose of helping you decide whether to believe the trial testimony of the witness. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

If you find that any witness has willfully testified falsely to any material fact – that is, to an important matter – then the law permits you to disregard the entire testimony of that witness based upon the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem true and disregard what you find to be false. While it is quite legitimate for an attorney to try to attack the credibility of a witness, as the sole arbiters of the facts, you must decide for yourselves which witnesses you will believe, what portion of their testimony you will accept, and what weight you will give their testimony.

I will remind you of something I instructed on at the beginning of the case. Everyone,

including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices, and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern, race, gender, national origin, sexual orientation, class, education, and many other issues. These hidden thoughts can impact what we see and hear, how we remember what we see and hear, and how we make important decisions. Because you are making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your individual evaluation of that the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence, not on biases.

**Preparation of Witnesses**

You may have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying. The weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

## II.    SUBSTANTIVE CLAIMS

### A. **Overview of Claims and Defenses**

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations, claims, and defenses made in this case.

I am going to briefly state the contentions of the respective parties. In stating these contentions, I express no opinion about the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact in this case, then you are to disregard that, as you alone are the judges of the facts. You will consider all the facts, the testimony from the witness stand, the physical facts, and all legitimate inferences.

Plaintiff, Mr. Pedraza, brings gender and sexual-orientation discrimination and retaliation claims against Defendants under Title VII of the Civil Rights Act of 1964, which I will refer to as "Title VII" and the New York City Human Rights Law, which I will refer to by the acronym "NYCHRL."

These two statutes both prohibit discrimination in the terms and conditions of employment based on, among other things, a person's gender or sexual orientation. There are similarities among these laws and I will point out to you where the requirements of certain laws are the same. But there are also some differences, as I will draw to your attention.

Specifically, Mr. Pedraza alleges that Manhattan Monster Inc. discriminated against him in violation of Title VII and the NYCHRL, because he was subjected to a hostile work environment due to his gender and sexual orientation. Mr. Pedraza also alleges that he was retaliated against due to his gender and sexual orientation when he was constructively discharged from his position after he rejected verbal and physical sexual advances of Mr. Lepe. Based on these allegations, Mr. Pedraza brings hostile work environment and retaliation claims against

24

Manhattan Monster Inc. under Title VII. Mr. Pedraza also brings discrimination and retaliation claims against all Defendants under the NYCHRL.

Defendants deny all of Mr. Pedraza's claims. They deny that Mr. Pedraza was subject to a hostile work environment or that he was retaliated against in the terms and conditions of his employment. Defendants assert that Mr. Pedraza voluntarily quit and was not terminated or constructively discharged.

Thus, you are charged with determining the following:

1.  Whether Mr. Lepe made verbal and/or physical sexual advances on Mr. Pedraza, and as a result, whether Manhattan Monster Inc. discriminated against Mr. Pedraza based on his gender in violation of Title VII, by creating a hostile work environment;

2.  Whether Mr. Lepe made verbal and/or physical sexual advances on Mr. Pedraza, and as a result, whether Manhattan Monster Inc. discriminated against Mr. Pedraza based on his sexual orientation in violation of Title VII, by creating a hostile work environment;

3.  Whether Manhattan Monster Inc. discriminated against Mr. Pedraza because of his gender or sexual orientation and constructively discharged Mr. Pedraza's employment in retaliation for his complaints about Mr. Lepe's conduct in violation of Title VII;

4.  Whether Mr. Lepe made verbal and/or physical sexual advances on Mr. Pedraza, and as a result, whether all Defendants discriminated against Mr. Pedraza based on his gender in violation of the NYCHRL, by creating a hostile work environment;

25

5. Whether Mr. Lepe made verbal and/or physical sexual advances on Mr. Pedraza, and as a result, whether all Defendants discriminated against Mr. Pedraza based on his sexual orientation in violation of the NYCHRL, by creating a hostile work environment when;

6. Whether all Defendants discriminated against Mr. Pedraza because of his gender or sexual orientation and constructively discharged Mr. Pedraza's employment in retaliation for his opposition to Mr. Lepe's conduct in violation of the NYCHRL;

As to damages, Mr. Pedraza claims that, as a result of the violations of law, he was deprived of wages and certain benefits and that he suffered emotional distress. Mr. Pedraza also seeks punitive damages.

I'm about to turn to the first of the claims. I want to emphasize here that, although certain claims are related in ways that I will explain, you must consider each claim and each defendant separately. With respect to each claim and each defendant, the critical issue is whether Mr. Pedraza has proved all the elements of the claim you are considering against the defendant you are considering by a preponderance of the evidence. If you find a defendant liable to Mr. Pedraza, you must then decide the amount of damages, if any, for which that defendant is responsible.

1. **Hostile Work Environment Under Title VII**

Title VII prohibits the creation of a hostile work environment caused by harassment because of an employee's protected characteristics. Mr. Pedraza brings gender and sexual-orientation discrimination claims against Manhattan Monster Inc. under Title VII, alleging that Manhattan Monster Inc. created a hostile work environment because of his gender and sexual orientation. Mr. Pedraza claims that Mr. Lepe physically and verbally harassed him because of his gender and/or sexual orientation, creating a hostile work environment. Mr. Pedraza further claims that he suffered damages because of said hostile environment. Defendants deny engaging in any unlawful discrimination against Mr. Pedraza and deny they created a hostile work environment. Last, Defendants assert that Mr. Pedraza suffered no damages.

To succeed on his Title VII claim against Manhattan Monster, Inc., Mr. Pedraza must prove each of the following elements by a preponderance of the evidence: ***First***, that he was subjected to unwelcome harassment, ridicule, or other abusive conduct. ***Second***, that the abusive conduct was motivated, at least in part, by Mr. Pedraza's gender or sexual orientation. ***Third***, that the abusive conduct was so severe or pervasive that both Mr. Pedraza himself and a reasonable person in Mr. Pedraza's position would find his work environment so hostile or offensive that it would interfere with his work performance. And ***Fourth***, that the management of Manhattan Monster Inc. knew, or should have known, of the abusive conduct.

The test for a hostile environment has both objective and subjective elements: a hostile environment is one that would reasonably be perceived and is perceived as hostile or abusive.[1] The plaintiff must establish that he was adversely affected by the conduct and that a reasonable

---

[1] Faragher v. Boca Raton, 524 U.S. 775, 787 (1998); San Juan v. Leach, 278 A.D.2d 299 (N.Y. App. Div. 2000).

person also would have been adversely affected by the conduct.[2] Please note that generally, isolated remarks or occasional episodes will not suffice,[3] but if the alleged conduct is extraordinarily severe, a single incident may create a hostile environment.[4]

Harassment need not involve touching or be physically threatening to be actionable where, for example, it is humiliating and demeaning. Also, the conduct need not seriously affect an employee's psychological well-being or lead the employee to suffer injury in order to meet this standard. Rather, psychological harm is merely a relevant factor that may be taken into account in determining whether or not the employee actually found the environment abusive. When an alleged harasser is in a supervisory position over an employee, the objectionable conduct is automatically imputed to the employer—here, Manhattan Monster Inc.—for purposes of asserting a hostile work environment claim.

To determine whether the conduct in this case was "so severe or pervasive" that it materially altered the terms and conditions of Mr. Pedraza's employment, you should consider all the circumstances, including such matters as:

a. How often the discriminatory conduct occurred;

b. Its severity;

---

[2] Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 208 (4th Cir. 2014) (plaintiff was required to show that she perceived, and that a reasonable person would perceive, the environment to be abusive or hostile; district court accepted that plaintiff subjectively perceived her workplace to be offensive, but concluded that she had failed to produce evidence to satisfy the objective component of her claim).

[3] Forrest v. Jewish Guild for the Blind, 309 A.D.2d 546 (N.Y. App. Div. 2003) (three epithets over nine years insufficient) superseded by statute on other grounds, Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85; Thompson v. Lamprecht Transp., 39 A.D.3d 846 (N.Y. App. Div. 2007).

[4] Wahlstrom v. Metro-North Commuter R. Co., 89 F. Supp. 2d 506, 520 (S.D.N.Y. 2000); San Juan v. Leach, 278 A.D.2d 299 (N.Y. App. Div. 2000).

c. Whether it was physically or psychologically threatening or humiliating; and

d. Whether it unreasonably interfered with Mr. Pedraza's work performance.[5]

Manhattan Monster Inc. may be liable for discriminatory acts of Mr. Tobey if the jury finds that Mr. Tobey as plaintiff's supervisor acted as the proxy or alter ego of Monster Bar Inc.[6] A supervisor acts as a proxy or alter ego for his employer if he holds a sufficiently high position in the management hierarchy so as to speak for the corporate employer.

If the jury finds that Mr. Pedraza has proven that he was subjected to a hostile work environment by Mr. Lepe, the jury must decide whether Manhattan Monster Inc. is responsible for Mr. Lepe's conduct. Manhattan Monster Inc. is liable for permitting such behavior by Mr. Lepe if Mr. Pedraza proves by a preponderance of the evidence that: **First**, Manhattan Monster Inc. either failed to provide a reasonable avenue for complaint; or **Second**, that Manhattan Monster Inc. knew, or in the exercise of reasonable care should have known, about Mr. Lepe's discriminatory conduct and failed to take appropriate remedial action.[7]

---

[5] <u>Mack v. Port Authority of N.Y. & N.J.</u>, 225 F. Supp. 2d 376, 387 (S.D.N.Y. 2002).

[6] <u>Townsend v. Benjamin Enterprises, Inc.</u>, 679 F.3d 41 (2d Cir. 2012).

[7] <u>Howley v. Town of Stratford</u>, 217 F.3d 141, 154 (2d Cir. 2000).

2. __Discrimination Based on Gender and Sexual Orientation Under the New York City Human Rights Law (NYCHRL)__

Mr. Pedraza also brings discrimination claims on the basis of gender and sexual orientation under the New York City Human Rights Law, the NYCHRL, against all Defendants. The NYCHRL requires you to apply a different standard in determining whether Defendants subjected Mr. Pedraza to a hostile work environment. The NYCHRL was intended to be more protective than the federal counterpart.

Under the NYCHRL standard, Mr. Pedraza must prove that Defendants subjected him to unwelcomed discriminatory conduct that a reasonable person would find was more than "petty slights and trivial inconveniences."[8] Thus, a single act or comment related to Mr. Pedraza's gender or sexual orientation may be sufficient for Mr. Pedraza to prove his case as long as the comment or comments are more than petty slights or trivial inconveniences.[9]

Also, under the NYCHRL, employers are strictly liable for the harassing and hostile acts of any of its supervisors. Strictly liable means that if you believe that Mr. Tobey, as Mr. Pedraza's supervisor, subjected Mr. Pedraza to conduct that is more than a petty slight or trivial inconvenience, you should find in Mr. Pedraza's favor on this claim as against Manhattan Monster Inc. and Spunk Events Inc.[10]

---

[8] New York State Executive Law § 296(1)(h); Milhalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102, 114-15 (2d Cir. 2013).

[9] N.Y.C. Administrative Code §8-107(1)(a); Williams v. New York City Hous. Authority, 61 A.D.3d 62 (N.Y. App. Div. 2009).

[10] NYCHRL §8-107(13)(b)(1); Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 547, 556 (S.D.N.Y. 2013) ("[s]trict liability in employment context for acts of managers and supervisors").

Mr. Pedraza must show that Defendants intentionally discriminated against him.

However, Mr. Pedraza is not required to produce direct evidence of intentional discrimination.

Intentional discrimination may be inferred from the existence of other facts.[11]

---

[11] Federal Jury Practice and Instructions, Vol. 3C § 177:23 (Oct. 2024 Update).

3. **Retaliatory Termination Under Title VII**

Mr. Pedraza also alleges that Manhattan Monster Inc. unlawfully retaliated against him in violation of Title VII, by terminating his employment because he opposed Mr. Lepe's sexual harassment. Title VII makes it an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice under Title VII. This is referred to as retaliation.

Mr. Pedraza's Title VII claim is against Manhattan Monster Inc. However, you may consider the conduct of Mr. Rice, Mr. Tobey, and/or Mr. Lepe in determining whether Mr. Pedraza has proven that his employment was constructively discharged because of his opposition to discrimination, in violation of Title VII.

Accordingly, to prove a claim of retaliation under Title VII, Mr. Pedraza must prove, by a preponderance of the evidence, each of the following elements.

**First**, that Mr. Pedraza engaged in protected activity;

**Second**, that Manhattan Monster Inc. was aware of Mr. Pedraza's protected activity;

**Third**, that Mr. Pedraza was then subject to a material adverse action by Manhattan Monster Inc., such as constructive discharge; and

**Finally**, that there was a causal connection between Mr. Pedraza's protected activity and the materially adverse employment action.

First, in determining whether Manhattan Monster Inc. unlawfully retaliated against Mr. Pedraza for opposing Mr. Lepe's sexual harassment and discrimination of him, you must first decide whether Mr. Pedraza engaged in protected activity. A protected activity includes the opposition to any unlawful employment practice, including gender discrimination, sexual discrimination, and/or sexual harassment. Mr. Pedraza must prove that he had a good faith,

reasonable belief that Manhattan Monster Inc.'s conduct violated the laws prohibiting gender and/or sexual orientation discrimination and sexual harassment. He need not establish that he was correct in his actions demonstrating an opposition to Manhattan Monster Inc.'s conduct or that there was indeed discrimination.

The second element that Mr. Pedraza must prove by a preponderance of the evidence is that Manhattan Monster Inc. was aware of his protected activity. If you find that Mr. Pedraza has proved by a preponderance of the evidence that he complained to Mr. Tobey about Mr. Lepe's alleged discriminatory behavior, then this satisfies the requirement that he prove Manhattan Monster Inc. was aware of the protected activity. If, however, you find that Mr. Pedraza did not prove by a preponderance of the evidence that he complained to Mr. Tobey about alleged discriminatory behavior, then he has failed to prove this second element of his retaliatory termination claim.

The third element that Mr. Pedraza must prove by a preponderance of the evidence is that he suffered a materially adverse employment action, one that reasonably deterred him from complaining about discriminatory conduct. Here, Mr. Pedraza claims he suffered an adverse employment action when Manhattan Monster Inc. constructively discharged Mr. Pedraza by creating working conditions that were so intolerable a reasonable person in Mr. Pedraza's position would feel compelled to resign.

The fourth element requires that Mr. Pedraza prove by a preponderance of the evidence that there was a causal connection between his complaint of discrimination and the adverse employment action. Mr. Pedraza does not need to prove that retaliation was the one and only cause of the employer's action. A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory

treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against Mr. Pedraza by Manhattan Monster Inc.

As you evaluate whether a particular action was taken in retaliation, you should consider the length of time between the protected activity and the allegedly retaliatory act. Although there is no hard and fast rule fixing a specific period of time beyond which it is not possible to infer that an adverse action is retaliatory, logic will tell you that the longer the period between the protected activity and the adverse employment action, the less likely it is that the adverse action resulted from retaliation. You should consider the totality of the evidence on the question of causation.

Manhattan Monster Inc. contends that it did not engage in any retaliatory action against Mr. Pedraza. Manhattan Monster Inc. instead contends that Mr. Pedraza resigned without notice.

If Mr. Pedraza proves by a preponderance of the evidence that he engaged in protected activity, that Manhattan Monster Inc. took an adverse employment action, and that the action was causally related to Mr. Pedraza's protected activity, you must find that Manhattan Monster Inc. unlawfully retaliated against Mr. Pedraza. If, however, Mr. Pedraza fails to prove even one of the elements by a preponderance of the evidence, you must find for Manhattan Monster Inc.

**4. <u>Retaliatory Termination Under the NYCHRL</u>**

Mr. Pedraza also brings retaliation claims against Manhattan Monster Inc. under the NYCHRL. The NYCHRL makes it an unlawful practice to retaliate in any manner against any person because such person has opposed discrimination.

To prevail on his retaliation claim against Manhattan Monster Inc. under the NYCHRL, Mr. Pedraza must prove each of the following four elements by a preponderance of the evidence.

*First*, that he was engaged in protected activity, such as making a complaint to his employer about unlawful discrimination or opposing conduct that he believed was unlawful discrimination. With respect to the first element, "protected activity," you must use the same analysis that you used in analyzing Mr. Pedraza's Title VII retaliatory claim as to whether he proved, by a preponderance of the evidence, that he engaged in protected activity under NYCHRL.

*Second*, that Manhattan Monster Inc. knew about Mr. Pedraza's protected activity—that is, Mr. Pedraza's alleged opposition to Mr. Lepe's sexual harassment. General corporate knowledge that Mr. Pedraza engaged in protected activity is sufficient to establish this element of a retaliation claim under the NYCHRL. With respect to the second element, you must use the same analysis that you used in analyzing the second element of Mr. Pedraza's Title VII retaliatory claim.

*Third*, that Manhattan Monster Inc. engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity.

*Fourth*, that Mr. Pedraza's protected activity was a motivating factor in Manhattan Monster Inc.'s constructive discharge of Mr. Pedraza as an employee.

In sum, if you find that Mr. Pedraza has proved each of the four elements I just outlined

by a preponderance of the evidence, you must find that Manhattan Monster Inc. is liable.

**5.** **Individual Liability for Retaliation Under the NYCHRL**

Mr. Pedraza also brings retaliation claims for individual liability against Mr. Rice, Mr. Tobey, and Mr. Lepe under the NYCHRL. The NYCHRL provides that an individual defendant who participates in the conduct giving rise to a retaliation claim can be found individually liable.

Specifically, if you find that Mr. Pedraza has proven, by a preponderance of the evidence, that the Mr. Rice, Mr. Tobey, and/or Mr. Lepe had personal knowledge of Mr. Pedraza's protected activity and that his protected activity was a motivating factor in the materially adverse employment action, you must find for Mr. Pedraza with respect to the individual liability of Mr. Rice, Mr. Tobey, and/or Mr. Lepe. However, if you find that Mr. Pedraza has not proven by a preponderance of evidence these two elements, then you must find for Mr. Rice, Mr. Tobey, and/or Mr. Lepe.

You must find Manhattan Monster Inc. and/or Spunk Events Inc. liable for retaliation under the NYCHRL in order to find Mr. Rice, Mr. Tobey, and/or Mr. Lepe individually liable under the NYCHRL. If you find that Mr. Pedraza has not proven, by a preponderance of evidence, that Manhattan Monster Inc. and/or Spunk Events Inc. retaliated against him based on his protected activity under the NYCHRL, then you must find for Mr. Tobey, Mr. Rice, and Mr. Lepe.

### B. **Damages**

I will now instruct you on the measure of damages you should award to Mr. Pedraza in the event you conclude that Mr. Pedraza has proven his claims for discrimination and/or retaliation. The law permits me to charge you on damages now so that in the event you decide that Mr. Pedraza is entitled to prevail on any of his claims and you reach the issue of damages, you will not have to come back in to listen to my charge on damages.

You should not interpret the fact that I am giving instructions about damages now as an indication that I believe that Mr. Pedraza should, or should not, receive damages. It is your task and yours alone to decide whether Mr. Pedraza is entitled to prevail on his claims. In other words, you should only reach the issue of what damages may be appropriate if you decide that Mr. Pedraza prevails on any of his claims.

You may award only those damages that Mr. Pedraza has proved by a preponderance of the evidence. Any damages that you may choose to award should be based on the evidence presented at trial.

If you decide to award damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

I will explain each category of damages separately, but generally Mr. Pedraza seeks lost wages, compensatory damages, and punitive damages.

1. **Economic Damages – Back Pay Damages**

If you determine that Mr. Pedraza has proven, by a preponderance of the evidence, that he was discriminated or retaliated against, he may recover wages, bonuses, and other benefits he would have earned if he had not been discriminated or retaliated against by Defendants. An award of back pay runs from the date of the discriminatory or retaliatory action to the date of the judgment. Therefore, in awarding back pay, you must determine the damages Mr. Pedraza is entitled to starting from May 22, 2022, through the present. In other words, you must determine the total amount of compensation Mr. Pedraza would have earned between the time Defendants constructively discharged him through the present. You should include any lost or reduced salary, bonuses, raises, benefits, promotions, training opportunities and other compensation increases or payments necessary to make Mr. Pedraza whole in determining your total award for back pay damages.

Please note that Mr. Pedraza is only entitled to be compensated once for any alleged back pay that arose from his proven discriminatory and/or retaliatory termination claims.

If Mr. Pedraza has proved a claim, he would be entitled to back pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Mr. Pedraza should be resolved in his favor. That said, Mr. Pedraza has the burden of proving by a preponderance of the evidence that he actually incurred a loss of back pay.

2.  **Economic Damages – Front Pay Damages**

Front pay damages, if any, represent a plaintiff's lost salary and benefits caused by an unlawful adverse action.

If you find for Mr. Pedraza on any of his claims for retaliatory termination, and if you find that Mr. Pedraza will be unable to earn in the future what he would have earned at Manhattan Monster Inc., then you may award him, as additional compensation, the amount he would have earned from the day of your verdict until either: (i) the date you believe he would have worked at Manhattan Monster Inc. absent any discriminatory conduct or (ii) the date you can reasonably predict that he has a reasonable prospect of obtaining comparable employment. Factors to be considered in determining front pay include Mr. Pedraza's age and his reasonable prospects of obtaining comparable employment. You should bear in mind that the purpose of front pay is to make a plaintiff whole—that is, to put the plaintiff in the position he would have been in if Defendants had not discriminated and/or retaliated against him.

Please note that Mr. Pedraza is entitled to be compensated only once for any alleged front pay that arose from his proven claims.

If Mr. Pedraza has proved a claim, he would be entitled to front pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Mr. Pedraza should be resolved in his favor. That said, Mr. Pedraza has the burden of proving by a preponderance of the evidence that he actually incurred a loss of front pay.

**3. Plaintiff's Duty to Mitigate Damages**

A plaintiff has a duty to mitigate back pay and front pay damages by using reasonable care and diligence in seeking suitable alternative employment. The burden is on Defendants to prove by a preponderance of the evidence that Mr. Pedraza has failed in his duty to mitigate. Thus, if you find that Mr. Pedraza failed to use reasonable care and diligence and that he could have obtained a job substantially equivalent to the one he left at Manhattan Monster Inc., then you should reduce any award of back pay by the amount you find he could have earned from such employment.

In assessing the reasonableness of Mr. Pedraza's efforts to mitigate his damages, you may consider what you have learned about Mr. Pedraza's qualifications for employment, the characteristics of the job market, and the quantity and quality of the efforts made by Mr. Pedraza to find suitable work. The question whether Mr. Pedraza acted reasonably with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. In weighing the evidence, keep in mind that Mr. Pedraza was under no obligation to enter another line of work, or to take a demotion or a demeaning job.

Mr. Pedraza's failure to make a reasonable effort to minimize damages does not prevent all recovery, but does prevent recovery of such damages as might have been avoided.

**4.**  **Compensatory Damages**

If you find that Mr. Pedraza has established any of his claims, you may award him compensatory damages for injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life that was caused by the Defendants' unlawful conduct. Compensatory damages are separate from back pay and front pay and are an amount that will fairly compensate Mr. Pedraza for any injury he actually sustained as a result of Defendants' conduct. There is no requirement that a claim for emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damages. No expert testimony is necessary to prove such harm, and you may rest your findings solely on Mr. Pedraza's testimony.

No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Rather, you may issue an award of monetary damages based on the emotional harm you determine Mr. Pedraza to have suffered, based on the evidence presented and your best judgment. You may not simply award damages for any injury suffered by Mr. Pedraza, you must award damages only for those injuries that were a proximate result of conduct by Defendants that violated Mr. Pedraza's rights. But, you may not award compensatory damages based on speculation or sympathy.

**5.  <u>Punitive Damages</u>**

If you find that Mr. Pedraza prevails on any of his claims under Title VII or the NYCHRL, you may award him punitive damages. Punitive damages are awarded, in the discretion of the jury, to punish a defendant and to set an example in order to deter Defendants and others from committing similar acts in the future. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct. There is no exact rule by which to determine the amount of punitive damages. It is up to the jury to decide what amount is sufficient to punish Defendants.

A plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Under this standard, a defendant need not know that it or he was violating the law, and the plaintiff is not required to prove intentional or malicious conduct.

In calculating a punitive damages award, you should consider, among other things, the (1) nature and reprehensibility of the Defendants' conduct, including the character of the wrongdoing and the Defendants' awareness of what harm the conduct caused or was likely to cause; (2) the amount of time the Defendants engaged in the conduct; and (3) the Defendants' financial condition and the impact your punitive damages award will have on the Defendants. If you award punitive damages, you may consider the Defendants' net worth and the impact of paying that award.

Keep in mind that punitive damages are not intended to, and may not be used to, compensate a plaintiff for his injuries. Instead, the purpose of punitive damages is to punish a defendant and to deter similar conduct in the future. Any punitive damages award should be

limited to the amount reasonably necessary to achieve the goals of punishment and deterrence.

There is an affirmative defense to punitive damages available to an employer such as Manhattan Monster Inc. and/or Spunk Events Inc. under Title VII and the NYCHRL. An employer will not be liable for punitive damages if it has made good faith efforts to enforce an antidiscrimination policy. This defense requires an employer to establish both that it had an antidiscrimination policy and that it made good faith effort to enforce it. This defense focuses on the employer's state of mind. It precludes punitive damages unless the employer discriminated in the face of a perceived risk that its actions would violate federal, state, or local law.

Under the NYCHRL, an employer will not be liable for punitive damages if it has made a good faith effort to enforce an antidiscrimination policy. However, even if you decide to award punitive damages to Mr. Pedraza based on Mr. Lepe's conduct and not Manhattan Monster Inc.'s or Spunk Events Inc.'s, Manhattan Monster Inc. and/or Spunk Events Inc. may still be liable for Mr. Lepe's punitive damages. Under the NYCHRL, an employer is held liable for any award of punitive damages imposed on a managerial or supervisory employee found to have engaged in unlawful discrimination with the necessary state of mind. In effect, the liability for the misconduct of the manager or supervisor is attributed to the employer. Thus, if you assess punitive damages against Mr. Tobey, Manhattan Monster Inc. and/or Spunk Events Inc. would be obligated to pay the amount of such damages you impose. That liability would be joint, meaning that the entire award could be collected from either one or from all of these Defendants in amounts adding up to the total punitive damages. However, you may, in your discretion, reduce the amount of the punitive damages award imposed upon Mr. Tobey that is imputed to Manhattan Monster Inc. and/or Spunk Events Inc. In doing so, you may consider whether Manhattan Monster Inc. and/or Spunk Events Inc. established and complied with policies,

44

programs, and procedures for the prevention and detection of unlawful discriminatory or retaliatory practices by employees, including, but not limited to:

1. A meaningful and responsive procedure for investigation of complaints of discriminatory practices by employees and for taking appropriate action against those persons who are found to have engaged in such practices;

2.  A firm policy against such practices, which is effectively communicated to employees and gives employees the opportunity to make complaints of discrimination or retaliation to her employer;

3.  A program to educate employees about unlawful discriminatory practices under the local, state, and federal law; and

4.  Procedures for the supervision of employees specifically directed at the prevention and detection of such practices.

You may also consider whether Manhattan Monster Inc. and/or Spunk Events Inc. had a record of no or relatively few prior incidents of sex-based or sexual orientation-based discriminatory or retaliatory conduct.

You must consider whether Manhattan Monster Inc. and/or Spunk Events Inc. has established any or all of the factors listed above, and, if so, the degree to which the award against Manhattan Monster Inc. and/or Spunk Events Inc. should be reduced relative to the award against Mr. Tobey, if any. Further, you may take into account Manhattan Monster Inc. and/or Spunk Events Inc.'s financial condition in deciding whether to reduce its responsibility for any punitive damages you may impose against Mr. Tobey.

### III.     CLOSING INSTRUCTIONS

#### <u>Right to See Exhibits and Hear Testimony; Communications with the Court</u>

If during your deliberations you want to see any of the exhibits, you may request that

they be sent to you in the jury room. A list of exhibits received in evidence will be forwarded to

you in the jury room. If you want any of the testimony read, that can also be done and will occur

here in open court. Please remember that it is not always easy to locate what you may want, so

try to be as specific as you possibly can in requesting exhibits or portions of the testimony. To

this end, please be patient—with respect to requests for testimony, it can sometimes take counsel

and the Court some time to identify the portions that are responsive to your request. If you want

any further explanation of the law as I have explained it to you, you may also request that.

Your requests for exhibits or testimony—in fact, any communication with the Court,

including any questions on the law, should be made to me in writing, signed by your foreperson,

and given to the marshal. If there is any doubt or question about the meaning of any part of the

instructions that I have given you during this trial, you should not hesitate to send me a note

asking for clarification or for a further explanation. I will respond to any questions or requests

you have as promptly as possible, by having you return to the courtroom so that I can address

you in person. In any event, do not tell me or anyone else how the jury stands on any issue until

after a unanimous verdict is reached.

It is very important that you not communicate with anyone outside the jury room about

your deliberations or about anything touching this case. There is only one exception to this rule.

If it becomes necessary during your deliberations to communicate with me—to request

testimony, or to request clarification on the law—you should send a note to me, in writing,

signed by your foreperson, and given to one of the court security officers or to my courtroom

deputy. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing, or orally here in open court. If you send any notes to the Court, do not disclose anything about your deliberations. Specifically, do not disclose to anyone—not even to me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

## Notes

Many of you have taken notes periodically throughout this trial. You should not show your notes to, or discuss your notes with, any other jurors during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

## Duty to Deliberate/Unanimous Verdict

You will now retire to the jury room to begin your deliberations. In order for Mr. Pedraza to prevail on his claims, Mr. Pedraza must sustain his burden of proof as I have explained to you with respect to his claims and the specific questions you are considering. Your verdict on each question must be unanimous. Similarly, defendants must carry their burden as to those areas I have likewise identified for you.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard and is entitled to their opinion, but you are required to exchange views with your fellow jurors. No one juror should hold center stage in the jury room, and no one juror should control and monopolize the deliberations. It is your duty to discuss the evidence. If, after listening to your fellow jurors, and if, after stating your own view, you become convinced that your view is wrong, do not hesitate to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered. Your final vote must reflect your conscientious belief as to how the issues should be decided.

Your verdict must be unanimous. Until such time as you reach unanimous agreement, you must not reveal the standing of the jurors, that is, the split of the vote, to anyone, including the court or anyone else outside the jury room. You are not to discuss the case until all jurors are present. Without all members of the jury, a select handful of jurors is only a gathering of individuals and only collectively when all are present do you constitute a jury, and only then may you deliberate.

Your duty is to decide the issues fairly and impartially, to apply the law as I instructed you, and to see that justice is done. Remember at all times, you are not partisans. You are judges

– judges of the facts, evidence, and the application of the law. Your sole interests are to seek the truth from the evidence in the case, and to determine whether the plaintiff has proved his claims by a preponderance of evidence and whether the defendants have proven any of their defenses by a preponderance of the evidence with respect to damages sought. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

**<u>Verdict Form/Return of Verdict</u>**

I have prepared a verdict form for you to use in recording your decision. Please use that form to report your verdict. Once you have made your verdict, you will record your decisions in the verdict form. You should also proceed through the questions in the order in which they are listed, following the instructions on that form.

After you have reached a verdict, your foreperson will fill out the jury verdict form that will be given to you, sign, and date it, and the foreperson will advise the marshal outside your door that you are ready to return to the courtroom. Do not specify what the verdict is in your note.

I stress that each of you must be in agreement with the verdict that is announced by the foreperson in open court and officially recorded. Once your verdict is announced by your foreperson in open court, and officially recorded, it cannot ordinarily be revoked.

**Selecting a Foreperson**

Members of the jury, the first thing you should do when you retire to the jury room is to elect one member of the jury as your foreperson. The foreperson has no greater voice or authority than any other juror, and their vote or opinion does not count for any more than any other juror's vote or opinion. The foreperson is simply the person who will communicate with the Court when questions arise. The foreperson is merely your spokesperson to the court. The foreperson can send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict.

**Juror Oath/Sympathy or Bias**

I will remind you that you took an oath to render judgment impartially and fairly, without regard to prejudice or sympathy and without fear, solely upon the evidence and the applicable law. So that is your duty, and I know you will do your duty and reach a just and fair verdict.

If you follow that oath and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict. You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence. It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex, sexual orientation, or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. Both parties are entitled to the same fair trial at your hands. Both parties stand equal before the law and are to be dealt with as equals in this Court.

I have just one more comment. I don't think it is necessary because it seems that even though you haven't known each other very long you have a good relationship, but it is the custom in this courthouse to say it. You should treat each other with courtesy and respect during your deliberations. All litigants stand equal in this room. All litigants stand equal before the bar of justice. Your duty is to decide between these parties fairly and impartially to see that justice is done, all in accordance with your oath as jurors. Thank you for your time and your attentiveness, and now the case is in your hands.

## IV.    CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement. Please don't discuss the case while seated in the box because the case still has not been formally submitted to you.

* * *

Members of the jury, my deputy is going to swear the court security officer.

(Court Security Officer sworn)

Members of the jury, you may now retire. You are instructed to retire to the jury room and you may begin your deliberations.

# EXHIBIT 5

**Court Exhibit 5**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
 JUAN PEDRAZA,

                             Plaintiff,                   **23-CV-2596 (VF)**

-against-

 MANHATTAN MONSTER INC. d/b/a               **<u>FINAL JURY INSTRUCTIONS</u>**
 THE MONSTER BAR, SPUNK EVENTS INC.
 d/b/a SPUNK INC., CHARLES RAYMOND RICE,
 DANIEL TOBEY, and LUIS GOMEZ,

                          Defendants.
----------------------------------------------------------------
**VALERIE FIGUEREDO, United States Magistrate Judge**

## TABLE OF CONTENTS

I. GENERAL INSTRUCTIONS ................................................................................................. 4

    Introductory Remarks ................................................................................................... 4

    Duty of the Court ........................................................................................................... 5

    Duty of the Jury ............................................................................................................. 6

    Burden of Proof & Preponderance of the Evidence ..................................................... 8

    What is Evidence ......................................................................................................... 10

    What is Not Evidence .................................................................................................. 11

    Direct and Circumstantial Evidence; Inferences ........................................................ 12

    Evidence for a Limited Purpose .................................................................................. 14

    Corporate Defendants/General Principles of Agency .................................................. 15

    Adverse Inference ...................................................................**Error! Bookmark not defined.**

    Role of Counsel/Objections and Sidebars ................................................................... 17

    The Court's Role ......................................................................................................... 19

    Witness Credibility ..................................................................................................... 20

    Preparation of Witnesses ............................................................................................. 23

II. SUBSTANTIVE CLAIMS ............................................................................................... 24

    A. Overview of Claims and Defenses ......................................................................... 24

    1. Discrimination Under Title VII .............................................................................. 27

    2. Discriminatory Termination Claim Under NYSHRL & NYCHRL ....................... 30

    3. Individual Defendants' Liability for Discrimination Under NYSHRL & NYCHRL .... **Error! Bookmark not defined.**

    4. Retaliatory Termination Under Title VII ................................................................ 32

    5. Retaliatory Termination Under New York Labor Law ..........**Error! Bookmark not defined.**

    6. Individual Defendant Dr. Femia's Liability Under the NYLL ............ **Error! Bookmark not defined.**

    7. Retaliatory Termination Under the Equal Pay Act ................**Error! Bookmark not defined.**

    8. Retaliatory Termination Under NYSHRL & NYCHRL ......................................... 35

    9. Individual Liability for Retaliation Under NYSHRL & NYCHRL ....................... 37

    B. Damages ................................................................................................................. 38

    1. Economic Damages – Back Pay Damages............................................................... 39

2. Back Pay and Front Pay Damages – Plaintiff's Duty to Mitigate.......................................... 41

3. Compensatory Damages...................................................................................................... 42

4. Punitive Damages............................................................................................................... 43

5. Willfulness .................................................................**Error! Bookmark not defined.**

III.  CLOSING INSTRUCTIONS .................................................................................. 46

Right to See Exhibits and Hear Testimony; Communications with the Court......................... 46

Notes.................................................................................................................................. 48

Duty to Deliberate/Unanimous Verdict................................................................................ 49

Verdict Form/Return of Verdict .......................................................................................... 51

Selecting a Foreperson ....................................................................................................... 52

Juror Oath/Sympathy or Bias .............................................................................................. 53

IV. CONCLUSION.......................................................................................................... 54

## I.   GENERAL INSTRUCTIONS

### <u>Introductory Remarks</u>

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions. First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case. These instructions really would apply to just about any trial. Second, I'll give you some specific instructions about the legal rules applicable to this particular case. Third, I'll give you some final instructions about procedure. Listening to these instructions may not be easy. It is important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention. You'll notice that I'm reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying. I will be distributing to you a verdict form in which to record your verdict. It will list the questions that you must consider, in the order that you should consider them.

**Duty of the Court**

We are now approaching the most important part of this case: your deliberations. You have heard all of the evidence in this case, as well as the final arguments of the lawyers for the parties. It is my duty to provide these instructions, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration. It is your duty to accept these instructions of law and apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be. You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or should be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any particular instruction alone as stating the law, and you should consider my instructions as a whole when you retire to deliberate in the jury room. You are not to infer from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case. Any questions I asked were designed to make sure that the testimony was clear and to avoid confusion. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

## **Duty of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in testimony; you draw whatever reasonable inferences you decide to draw from the facts as you determine them, and you determine the weight of the evidence.

In determining the facts, you must rely upon your own recollection of the evidence. None of what the lawyers have said in their opening statements, in their closing arguments, or in their objections is evidence. You should bear in mind particularly that a question put to a witness is never evidence. It is only the answer in the context of the question that is evidence. You may not consider any answer that I directed you to disregard. I remind you that nothing I have said during the trial or will say during these instructions is evidence. Similarly, the rulings I have made during the trial are not any indication of my views of what your decision should be.

The evidence before you consists of the answers given by witnesses, the exhibits that were received in evidence, and stipulated facts and admissions. Exhibits marked for identification but not received may not be considered as evidence. Anything you may have seen or heard about this case outside the courtroom is not evidence and must be disregarded entirely.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or

6

matters outside the case.

**Burden of Proof & Preponderance of the Evidence**

Because this is a civil lawsuit, Mr. Pedraza has the burden of proving each disputed part of his claims by a preponderance of the evidence and Defendants have the burden of proving each disputed part of their affirmative defenses by a preponderance of the evidence.

A preponderance of the evidence simply means that something is more likely so than not so. In other words, if you find that the credible evidence on a given issue is evenly divided between Mr. Pedraza and Defendants, then you must decide that issue for Defendants. However, if you find that the scales tip, however slightly, in favor of Mr. Pedraza that the issue is more likely than not true, then you are to find that Mr. Pedraza has proven the issue by a preponderance of the evidence. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

If Mr. Pedraza fails to prove an issue by a preponderance of the evidence, then you must find that issue in favor of Defendants. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. You should attach no significance to the fact that certain witnesses were called to testify by Plaintiff or by Defendants. Nor should you attach any meaning to the fact that a document or other exhibit was introduced by one party rather than another. Every party is entitled to the benefit of any evidence tending to support its arguments, even if such evidence came from witnesses or documents introduced by the other party. This is true with respect to any contested issue of fact in this case.

The law does not require any party to call as witnesses each and every person who may

have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. You should not draw any negative inference against any party with respect to any issue in dispute based on their failure to produce a witness over whom the party has no control.

A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented. Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should not consider or discuss that standard in your deliberations.

For certain defenses and issues in this case, the Defendants have the burden of proof. I will describe the burden of proof for each defense in a few minutes.

## **What is Evidence**

As I have said, in determining the facts, you must rely on your own recollection of the evidence. What is evidence? Evidence consists of the testimony of witnesses, whether here at trial or previously at their depositions, the exhibits that have been received into evidence, any stipulations of fact to which the lawyers have agreed, and any facts I may instruct you to accept as proven and not in dispute.

**What is Not Evidence**

I also want to be clear on what is not evidence. What the attorneys say in their opening statements is not evidence, what they say in their closing arguments is not evidence, nor is testimony that I ask you to disregard. Any demonstratives used by attorneys during opening statements or closing statements is also not evidence. Anything I say is not evidence. The only testimony that is evidence in this case will come from a witness sitting in the witness stand or from depositions previously taken. Although the lawyers may comment to you about the testimony, their arguments are not evidence. Their arguments are just intended to help you understand the evidence.

If in the course of your deliberations your recollection of the facts differs from the lawyers' arguments, it is your recollection that controls. Also, anything that you see or hear when the court is not in session, even if it is said by one of the lawyers or one of the parties – for example, out in the hall or in the elevator – that is not evidence. Only what is admitted into evidence here that all of us can see and hear at the same time may be considered by you as evidence.

I want to say something about the subject of implicit bias. Everyone, including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern race, gender, national origin, sexual orientation, class, education, and many other issues.

These hidden thoughts can impact what we see and hear, how we remember what we see and hear and how we make important decisions. Because you're making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist

jumping to conclusions based on personal likes and dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes or biases. The law requires that you return a just verdict based solely on the evidence, your individual evaluation of the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence and not on any bias.

### Direct and Circumstantial Evidence; Inferences

In my beginning remarks, I told you that there were two kinds of evidence that you could use in reaching your verdict. One is direct evidence and the other is circumstantial evidence.

Direct evidence is when a witness testifies about something the witness knows by virtue of his or her senses. So, something the witness has observed or felt or touched or heard. Direct evidence may also be in the form of a document, or another exhibit admitted into evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

There is a simple example of circumstantial evidence that is often used in the courthouse. Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. Assume that the courtroom windows were covered so you couldn't see outside. Then, as you were sitting here, someone walked in with an umbrella that was dripping wet, and a few minutes later someone else also entered with a wet umbrella or a wet raincoat. Now, you can't see outside the courtroom and so you can't see with your own senses whether it is raining, so you have no direct evidence that it is raining. But on the

combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining. That is all there is to circumstantial evidence. You infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of some other fact. Similarly, based on the evidence presented at this trial, you may infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of other facts.

Let me say a few words about inferences. An inference is not speculation, suspicion or guess. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. There are times when different inferences may be drawn from the same proven facts. Here, the plaintiffs ask you to draw one set of inferences, while the defendant asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

**<u>Evidence for a Limited Purpose</u>**

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

## Corporate Defendants/General Principles of Agency

As corporations, Manhattan Monster Inc. and Spunk Events Inc. act through their employees. It is established law that under certain circumstances an employer may be liable for the wrongs, even willful wrongs, done by its employees if the wrongs are committed during the scope of the employee's employment duties and in furtherance of the employer's business. An employer's liability rests upon a broad principle that if a corporation manages its affairs through others, the corporation is bound to manage them in such a way that no person shall suffer injury from a wrong done by that other while engaged upon the employer's business and acting within the scope of their employment.

The fact that an employee was not specifically authorized to commit the act or was even violating instructions which had been given to them does not relieve the corporation from liability if unlawful conduct is proven. A corporation is liable even if the employee was acting unlawfully if the acts were committed within the scope of his or her employment.

In this case, it is not disputed that the Daniel Tobey is the manager of Manhattan Monster Inc. and the owner of Spunk Events Inc. and any conduct by Mr. Tobey with respect to Mr. Pedraza was made while acting within the scope of his employment at Manhattan Monster Inc. and Spunk Events Inc. It is undisputed that if you find any unlawful acts were committed by Mr. Tobey, that such acts were the result of his attempts to carry out work that was entrusted to him by Manhattan Monster Inc. and Spunk Events Inc. Therefore, I instruct you that Manhattan Monster Inc. and Spunk Events Inc. are liable for Mr. Tobey's conduct. Plaintiff also alleges that Mr. Lepe is an agent of Manhattan Monster Inc. and Spunk Events Inc. If you find that to be true and find that any unlawful acts were committed by Mr. Lepe while acting within the scope of his agency relationship with Manhattan Monster Inc. and/or Spunk Events Inc., I instruct you that

15

Manhattan Monster Inc. and/or Spunk Events Inc. are liable for Mr. Lepe's conduct.

I am not suggesting that Manhattan Monster Inc. or Spunk Inc. are liable. Whether or not Mr. Pedraza was discriminated and/or retaliated against is a matter for you to decide in accordance with these instructions.

## Role of Counsel/Objections and Sidebars

Let me talk about the role of counsel and objections and sidebars. In the course of this trial, there may have been objections, motions may have been made to strike answers, or conferences may have been held. But you should not pay any attention to those matters. They are procedural matters; they are matters of law, and although you may have been curious about them, you should not consider them in your deliberations. Objections are not evidence. Objections are a proper part of the trial process, and you should make no inference or be influenced in any way by an objection or by the Court's ruling on it. Likewise, it is my function to cut off questioning, to strike remarks and to reprimand any person when I think it is necessary, but you should draw no inference from that.

During the trial, I may have sustained objections to questions that were asked. When that happened, the witness was not permitted to answer or if the witness had already answered, I instructed that the answer be stricken from the record. You may not consider any testimony that I directed you to disregard or that I directed be stricken from the record. In reaching your decision, you may not draw any inference from an unanswered question.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also has the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. You should not draw any inferences or harbor any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

None of the events relating to these conferences should enter into your deliberations at

17

all. Similarly, the personalities and the conduct of counsel in the courtroom are not in any way in issue. If you formed reactions of any kind to any of the lawyers, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

## **The Court's Role**

During the trial, I have been called upon to make various rulings – my rulings are not evidence.

The fact that I may have commented during the course of the trial or asked questions of witnesses does not indicate any feeling of mine about the facts or the credibility of any witness. I have no such feelings, and my comments were intended only to clarify the issue at hand. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or party because of any comment, question, or instruction of mine. It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

## Witness Credibility

You have now had the opportunity to listen to and observe all of the witnesses. It is now your job to decide how believable you find each witness's testimony to be. So how do you determine where the truth lies? You should use all of the tests for truthfulness that you would use in determining matters of importance in your own everyday life.

One thing you should consider is any motivation, hostility, opinion or affection that a witness may have shown for or against a party. It is your duty to consider whether the witness has permitted any such bias to color their testimony. If you find a witness is biased, then you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny. When I use the word bias here, I am not necessarily speaking of discriminatory bias, but bias in general – a favoritism or partiality to one of the parties in this action.

You should consider any other interest or motive that the witness may have in cooperating with a particular party, as well as any interest the witness may have in the outcome of the case. Interest in the outcome of the case may create a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interest. Therefore, you should accept the testimony of interested witnesses with great care. Keep in mind, though, that it doesn't automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter how strong their interest in the outcome of a case, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, a witness's interest has affected his or her testimony.

Additional factors you should consider are: the opportunity the witness had to see, hear and know the things about which he or she has testified; the accuracy of the witness's memory; the

witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's testimony; and the testimony's consistency or lack of consistency with other credible evidence or testimony. In other words, what you must try to do in deciding credibility is to size up a witness in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

You have heard evidence that at some earlier time witnesses have said or done something, or failed to say or do something, which counsel argues is inconsistent with the witnesses' testimony here in court. Evidence of a prior inconsistent statement was placed before you for the purpose of helping you decide whether to believe the trial testimony of the witness. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

If you find that any witness has willfully testified falsely to any material fact – that is, to an important matter – then the law permits you to disregard the entire testimony of that witness based upon the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem true and disregard what you find to be false. While it is quite legitimate for an attorney to try to attack the credibility of a witness, as the sole arbiters of the facts, you must decide for yourselves which witnesses you will believe, what portion of their testimony you will accept, and what weight you will give their testimony.

I will remind you of something I instructed on at the beginning of the case. Everyone,

including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices, and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern, race, gender, national origin, sexual orientation, class, education, and many other issues. These hidden thoughts can impact what we see and hear, how we remember what we see and hear, and how we make important decisions. Because you are making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your individual evaluation of that the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence, not on biases.

## **<u>Preparation of Witnesses</u>**

You may have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying. The weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

## II.     SUBSTANTIVE CLAIMS

### A. **Overview of Claims and Defenses**

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations, claims, and defenses made in this case.

I am going to briefly state the contentions of the respective parties. In stating these contentions, I express no opinion about the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact in this case, then you are to disregard that, as you alone are the judges of the facts. You will consider all the facts, the testimony from the witness stand, the physical facts, and all legitimate inferences.

Plaintiff, Mr. Pedraza, brings gender and sexual-orientation discrimination and retaliation claims against Defendants under Title VII of the Civil Rights Act of 1964, which I will refer to as "Title VII" and the New York City Human Rights Law, which I will refer to by the acronym "NYCHRL."

These two statutes both prohibit discrimination in the terms and conditions of employment based on, among other things, a person's gender or sexual orientation. There are similarities among these laws and I will point out to you where the requirements of certain laws are the same. But there are also some differences, as I will draw to your attention.

Specifically, Mr. Pedraza alleges that Manhattan Monster Inc. discriminated against him in violation of Title VII and the NYCHRL, because he was subjected to a hostile work environment due to his gender and sexual orientation. Mr. Pedraza also alleges that he was retaliated against due to his gender and sexual orientation when he was constructively discharged from his position after he rejected verbal and physical sexual advances of Mr. Lepe. Based on these allegations, Mr. Pedraza brings hostile work environment and retaliation claims against

Manhattan Monster Inc. under Title VII. Mr. Pedraza also brings discrimination and retaliation claims against all Defendants under the NYCHRL.

Defendants deny all of Mr. Pedraza's claims. They deny that Mr. Pedraza was subject to a hostile work environment or that he was retaliated against in the terms and conditions of his employment. Defendants assert that Mr. Pedraza voluntarily quit and was not terminated or constructively discharged.

Thus, you are charged with determining the following:

1. Whether Mr. Lepe made verbal and/or physical sexual advances on Mr. Pedraza, and as a result, whether Manhattan Monster Inc. discriminated against Mr. Pedraza based on his gender in violation of Title VII, by creating a hostile work environment;

2. Whether Mr. Lepe made verbal and/or physical sexual advances on Mr. Pedraza, and as a result, whether Manhattan Monster Inc. discriminated against Mr. Pedraza based on his sexual orientation in violation of Title VII, by creating a hostile work environment;

3. Whether Manhattan Monster Inc. discriminated against Mr. Pedraza because of his gender or sexual orientation and constructively discharged Mr. Pedraza's employment in retaliation for his complaints about Mr. Lepe's conduct in violation of Title VII;

4. Whether Mr. Lepe made verbal and/or physical sexual advances on Mr. Pedraza, and as a result, whether all Defendants discriminated against Mr. Pedraza based on his gender in violation of the NYCHRL, by creating a hostile work environment;

5.  Whether Mr. Lepe made verbal and/or physical sexual advances on Mr. Pedraza, and as a result, whether all Defendants discriminated against Mr. Pedraza based on his sexual orientation in violation of the NYCHRL, by creating a hostile work environment when;

6.  Whether all Defendants discriminated against Mr. Pedraza because of his gender or sexual orientation and constructively discharged Mr. Pedraza's employment in retaliation for his opposition to Mr. Lepe's conduct in violation of the NYCHRL;

As to damages, Mr. Pedraza claims that, as a result of the violations of law, he was deprived of wages and certain benefits and that he suffered emotional distress. Mr. Pedraza also seeks punitive damages.

I'm about to turn to the first of the claims. I want to emphasize here that, although certain claims are related in ways that I will explain, you must consider each claim and each defendant separately. With respect to each claim and each defendant, the critical issue is whether Mr. Pedraza has proved all the elements of the claim you are considering against the defendant you are considering by a preponderance of the evidence. If you find a defendant liable to Mr. Pedraza, you must then decide the amount of damages, if any, for which that defendant is responsible.

1.  **Hostile Work Environment Under Title VII**

Title VII prohibits the creation of a hostile work environment caused by harassment because of an employee's protected characteristics. Mr. Pedraza brings gender and sexual-orientation discrimination claims against Manhattan Monster Inc. under Title VII, alleging that Manhattan Monster Inc. created a hostile work environment because of his gender and sexual orientation. Mr. Pedraza claims that Mr. Lepe physically and verbally harassed him because of his gender and/or sexual orientation, creating a hostile work environment. Mr. Pedraza further claims that he suffered damages because of said hostile environment. Defendants deny engaging in any unlawful discrimination against Mr. Pedraza and deny they created a hostile work environment. Last, Defendants assert that Mr. Pedraza suffered no damages.

To succeed on his Title VII claim against Manhattan Monster, Inc., Mr. Pedraza must prove each of the following elements by a preponderance of the evidence: *First*, that he was subjected to unwelcome harassment, ridicule, or other abusive conduct. *Second*, that the abusive conduct was motivated, at least in part, by Mr. Pedraza's gender or sexual orientation. *Third*, that the abusive conduct was so severe or pervasive that both Mr. Pedraza himself and a reasonable person in Mr. Pedraza's position would find his work environment so hostile or offensive that it would interfere with his work performance. And *Fourth*, that the management of Manhattan Monster Inc. knew, or should have known, of the abusive conduct.

The test for a hostile environment has both objective and subjective elements: a hostile environment is one that would reasonably be perceived and is perceived as hostile or abusive.[1] The plaintiff must establish that he was adversely affected by the conduct and that a reasonable

---

[1] Faragher v. Boca Raton, 524 U.S. 775, 787 (1998); San Juan v. Leach, 278 A.D.2d 299 (N.Y. App. Div. 2000).

person also would have been adversely affected by the conduct.[2] Please note that generally, isolated remarks or occasional episodes will not suffice,[3] but if the alleged conduct is extraordinarily severe, a single incident may create a hostile environment.[4]

Harassment need not involve touching or be physically threatening to be actionable where, for example, it is humiliating and demeaning. Also, the conduct need not seriously affect an employee's psychological well-being or lead the employee to suffer injury in order to meet this standard. Rather, psychological harm is merely a relevant factor that may be taken into account in determining whether or not the employee actually found the environment abusive. When an alleged harasser is in a supervisory position over an employee, the objectionable conduct is automatically imputed to the employer—here, Manhattan Monster Inc.—for purposes of asserting a hostile work environment claim.

To determine whether the conduct in this case was "so severe or pervasive" that it materially altered the terms and conditions of Mr. Pedraza's employment, you should consider all the circumstances, including such matters as:

a. How often the discriminatory conduct occurred;

b. Its severity;

---

[2] Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 208 (4th Cir. 2014) (plaintiff was required to show that she perceived, and that a reasonable person would perceive, the environment to be abusive or hostile; district court accepted that plaintiff subjectively perceived her workplace to be offensive, but concluded that she had failed to produce evidence to satisfy the objective component of her claim).

[3] Forrest v. Jewish Guild for the Blind, 309 A.D.2d 546 (N.Y. App. Div. 2003) (three epithets over nine years insufficient) superseded by statute on other grounds, Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85; Thompson v. Lamprecht Transp., 39 A.D.3d 846 (N.Y. App. Div. 2007).

[4] Wahlstrom v. Metro-North Commuter R. Co., 89 F. Supp. 2d 506, 520 (S.D.N.Y. 2000); San Juan v. Leach, 278 A.D.2d 299 (N.Y. App. Div. 2000).

c. Whether it was physically or psychologically threatening or humiliating; and

d. Whether it unreasonably interfered with Mr. Pedraza's work performance.[5]

Manhattan Monster Inc. may be liable for discriminatory acts of Mr. Tobey if the jury finds that Mr. Tobey as plaintiff's supervisor acted as the proxy or alter ego of Monster Bar Inc.[6] A supervisor acts as a proxy or alter ego for his employer if he holds a sufficiently high position in the management hierarchy so as to speak for the corporate employer.

If the jury finds that Mr. Pedraza has proven that he was subjected to a hostile work environment by Mr. Lepe, the jury must decide whether Manhattan Monster Inc. is responsible for Mr. Lepe's conduct. Manhattan Monster Inc. is liable for permitting such behavior by Mr. Lepe if Mr. Pedraza proves by a preponderance of the evidence that: ***First***, Manhattan Monster Inc. either failed to provide a reasonable avenue for complaint; or ***Second***, that Manhattan Monster Inc. knew, or in the exercise of reasonable care should have known, about Mr. Lepe's discriminatory conduct and failed to take appropriate remedial action.[7]

---

[5] Mack v. Port Authority of N.Y. & N.J., 225 F. Supp. 2d 376, 387 (S.D.N.Y. 2002).

[6] Townsend v. Benjamin Enterprises, Inc., 679 F.3d 41 (2d Cir. 2012).

[7] Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000).

2. <u>**Discrimination Based on Gender and Sexual Orientation Under the New York City**</u>
<u>**Human Rights Law (NYCHRL)**</u>

Mr. Pedraza also brings discrimination claims on the basis of gender and sexual

orientation under the New York City Human Rights Law, the NYCHRL, against all Defendants.

The NYCHRL requires you to apply a different standard in determining whether Defendants

subjected Mr. Pedraza to a hostile work environment. The NYCHRL was intended to be more

protective than the federal counterpart.

Under the NYCHRL standard, Mr. Pedraza must prove that Defendants subjected him to

unwelcomed discriminatory conduct that a reasonable person would find was more than "petty

slights and trivial inconveniences."[8] Thus, a single act or comment related to Mr. Pedraza's

gender or sexual orientation may be sufficient for Mr. Pedraza to prove his case as long as the

comment or comments are more than petty slights or trivial inconveniences.[9]

Also, under the NYCHRL, employers are strictly liable for the harassing and hostile acts

of any of its supervisors. Strictly liable means that if you believe that Mr. Tobey, as Mr.

Pedraza's supervisor, subjected Mr. Pedraza to conduct that is more than a petty slight or trivial

inconvenience, you should find in Mr. Pedraza's favor on this claim as against Manhattan

Monster Inc. and Spunk Events Inc.[10]

---

[8] New York State Executive Law § 296(1)(h); <u>Milhalik v. Credit Agricole Cheuvreux</u>
<u>North America, Inc.</u>, 715 F.3d 102, 114-15 (2d Cir. 2013).

[9] N.Y.C. Administrative Code §8-107(1)(a); <u>Williams v. New York City Hous.</u>
<u>Authority</u>, 61 A.D.3d 62 (N.Y. App. Div. 2009).

[10] NYCHRL §8-107(13)(b)(1); <u>Chen-Oster v. Goldman, Sachs & Co.</u>, 293 F.R.D. 547,
556 (S.D.N.Y. 2013) ("[s]trict liability in employment context for acts of managers and
supervisors").

Mr. Pedraza must show that Defendants intentionally discriminated against him.

However, Mr. Pedraza is not required to produce direct evidence of intentional discrimination.

Intentional discrimination may be inferred from the existence of other facts.[11]

---

[11] Federal Jury Practice and Instructions, Vol. 3C § 177:23 (Oct. 2024 Update).

### 3. **Retaliatory Termination Under Title VII**

Mr. Pedraza also alleges that Manhattan Monster Inc. unlawfully retaliated against him in violation of Title VII, by terminating his employment because he opposed Mr. Lepe's sexual harassment. Title VII makes it an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice under Title VII. This is referred to as retaliation.

Mr. Pedraza's Title VII claim is against Manhattan Monster Inc. However, you may consider the conduct of Mr. Rice, Mr. Tobey, and/or Mr. Lepe in determining whether Mr. Pedraza has proven that his employment was constructively discharged because of his opposition to discrimination, in violation of Title VII.

Accordingly, to prove a claim of retaliation under Title VII, Mr. Pedraza must prove, by a preponderance of the evidence, each of the following elements.

*First*, that Mr. Pedraza engaged in protected activity;

*Second*, that Manhattan Monster Inc. was aware of Mr. Pedraza's protected activity;

*Third*, that Mr. Pedraza was then subject to a material adverse action by Manhattan Monster Inc., such as constructive discharge; and

*Finally*, that there was a causal connection between Mr. Pedraza's protected activity and the materially adverse employment action.

First, in determining whether Manhattan Monster Inc. unlawfully retaliated against Mr. Pedraza for opposing Mr. Lepe's sexual harassment and discrimination of him, you must first decide whether Mr. Pedraza engaged in protected activity. A protected activity includes the opposition to any unlawful employment practice, including gender discrimination, sexual discrimination, and/or sexual harassment. Mr. Pedraza must prove that he had a good faith,

reasonable belief that Manhattan Monster Inc.'s conduct violated the laws prohibiting gender and/or sexual orientation discrimination and sexual harassment. He need not establish that he was correct in his actions demonstrating an opposition to Manhattan Monster Inc.'s conduct or that there was indeed discrimination.

The second element that Mr. Pedraza must prove by a preponderance of the evidence is that Manhattan Monster Inc. was aware of his protected activity. If you find that Mr. Pedraza has proved by a preponderance of the evidence that he complained to Mr. Tobey about Mr. Lepe's alleged discriminatory behavior, then this satisfies the requirement that he prove Manhattan Monster Inc. was aware of the protected activity. If, however, you find that Mr. Pedraza did not prove by a preponderance of the evidence that he complained to Mr. Tobey about alleged discriminatory behavior, then he has failed to prove this second element of his retaliatory termination claim.

The third element that Mr. Pedraza must prove by a preponderance of the evidence is that he suffered a materially adverse employment action, one that reasonably deterred him from complaining about discriminatory conduct. Here, Mr. Pedraza claims he suffered an adverse employment action when Manhattan Monster Inc. constructively discharged Mr. Pedraza by creating working conditions that were so intolerable a reasonable person in Mr. Pedraza's position would feel compelled to resign.

The fourth element requires that Mr. Pedraza prove by a preponderance of the evidence that there was a causal connection between his complaint of discrimination and the adverse employment action. Mr. Pedraza does not need to prove that retaliation was the one and only cause of the employer's action. A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory

treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against Mr. Pedraza by Manhattan Monster Inc.

As you evaluate whether a particular action was taken in retaliation, you should consider the length of time between the protected activity and the allegedly retaliatory act. Although there is no hard and fast rule fixing a specific period of time beyond which it is not possible to infer that an adverse action is retaliatory, logic will tell you that the longer the period between the protected activity and the adverse employment action, the less likely it is that the adverse action resulted from retaliation. You should consider the totality of the evidence on the question of causation.

Manhattan Monster Inc. contends that it did not engage in any retaliatory action against Mr. Pedraza. Manhattan Monster Inc. instead contends that Mr. Pedraza resigned without notice.

If Mr. Pedraza proves by a preponderance of the evidence that he engaged in protected activity, that Manhattan Monster Inc. took an adverse employment action, and that the action was causally related to Mr. Pedraza's protected activity, you must find that Manhattan Monster Inc. unlawfully retaliated against Mr. Pedraza. If, however, Mr. Pedraza fails to prove even one of the elements by a preponderance of the evidence, you must find for Manhattan Monster Inc.

4. **Retaliatory Termination Under the NYCHRL**

Mr. Pedraza also brings retaliation claims against Manhattan Monster Inc. under the NYCHRL. The NYCHRL makes it an unlawful practice to retaliate in any manner against any person because such person has opposed discrimination.

To prevail on his retaliation claim against Manhattan Monster Inc. under the NYCHRL, Mr. Pedraza must prove each of the following four elements by a preponderance of the evidence.

*First*, that he was engaged in protected activity, such as making a complaint to his employer about unlawful discrimination or opposing conduct that he believed was unlawful discrimination. With respect to the first element, "protected activity," you must use the same analysis that you used in analyzing Mr. Pedraza's Title VII retaliatory claim as to whether he proved, by a preponderance of the evidence, that he engaged in protected activity under NYCHRL.

*Second*, that Manhattan Monster Inc. knew about Mr. Pedraza's protected activity—that is, Mr. Pedraza's alleged opposition to Mr. Lepe's sexual harassment. General corporate knowledge that Mr. Pedraza engaged in protected activity is sufficient to establish this element of a retaliation claim under the NYCHRL. With respect to the second element, you must use the same analysis that you used in analyzing the second element of Mr. Pedraza's Title VII retaliatory claim.

*Third*, that Manhattan Monster Inc. engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity.

*Fourth*, that Mr. Pedraza's protected activity was a motivating factor in Manhattan Monster Inc.'s constructive discharge of Mr. Pedraza as an employee.

In sum, if you find that Mr. Pedraza has proved each of the four elements I just outlined

by a preponderance of the evidence, you must find that Manhattan Monster Inc. is liable.

**5.  <u>Individual Liability for Retaliation Under the NYCHRL</u>**

Mr. Pedraza also brings retaliation claims for individual liability against Mr. Rice, Mr. Tobey, and Mr. Lepe under the NYCHRL. The NYCHRL provides that an individual defendant who participates in the conduct giving rise to a retaliation claim can be found individually liable.

Specifically, if you find that Mr. Pedraza has proven, by a preponderance of the evidence, that the Mr. Rice, Mr. Tobey, and/or Mr. Lepe had personal knowledge of Mr. Pedraza's protected activity and that his protected activity was a motivating factor in the materially adverse employment action, you must find for Mr. Pedraza with respect to the individual liability of Mr. Rice, Mr. Tobey, and/or Mr. Lepe. However, if you find that Mr. Pedraza has not proven by a preponderance of evidence these two elements, then you must find for Mr. Rice, Mr. Tobey, and/or Mr. Lepe.

You must find Manhattan Monster Inc. and/or Spunk Events Inc. liable for retaliation under the NYCHRL in order to find Mr. Rice, Mr. Tobey, and/or Mr. Lepe individually liable under the NYCHRL. If you find that Mr. Pedraza has not proven, by a preponderance of evidence, that Manhattan Monster Inc. and/or Spunk Events Inc. retaliated against him based on his protected activity under the NYCHRL, then you must find for Mr. Tobey, Mr. Rice, and Mr. Lepe.

### B. **Damages**

I will now instruct you on the measure of damages you should award to Mr. Pedraza in the event you conclude that Mr. Pedraza has proven his claims for discrimination and/or retaliation. The law permits me to charge you on damages now so that in the event you decide that Mr. Pedraza is entitled to prevail on any of his claims and you reach the issue of damages, you will not have to come back in to listen to my charge on damages.

You should not interpret the fact that I am giving instructions about damages now as an indication that I believe that Mr. Pedraza should, or should not, receive damages. It is your task and yours alone to decide whether Mr. Pedraza is entitled to prevail on his claims. In other words, you should only reach the issue of what damages may be appropriate if you decide that Mr. Pedraza prevails on any of his claims.

You may award only those damages that Mr. Pedraza has proved by a preponderance of the evidence. Any damages that you may choose to award should be based on the evidence presented at trial.

If you decide to award damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

I will explain each category of damages separately, but generally Mr. Pedraza seeks lost wages, compensatory damages, and punitive damages.

1. **Economic Damages – Back Pay Damages**

If you determine that Mr. Pedraza has proven, by a preponderance of the evidence, that he was discriminated or retaliated against, he may recover wages, bonuses, and other benefits he would have earned if he had not been discriminated or retaliated against by Defendants. An award of back pay runs from the date of the discriminatory or retaliatory action to the date of the judgment. Therefore, in awarding back pay, you must determine the damages Mr. Pedraza is entitled to starting from May 22, 2022, through the present. In other words, you must determine the total amount of compensation Mr. Pedraza would have earned between the time Defendants constructively discharged him through the present. You should include any lost or reduced salary, bonuses, raises, benefits, promotions, training opportunities and other compensation increases or payments necessary to make Mr. Pedraza whole in determining your total award for back pay damages.

Please note that Mr. Pedraza is only entitled to be compensated once for any alleged back pay that arose from his proven discriminatory and/or retaliatory termination claims.

If Mr. Pedraza has proved a claim, he would be entitled to back pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Mr. Pedraza should be resolved in his favor. That said, Mr. Pedraza has the burden of proving by a preponderance of the evidence that he actually incurred a loss of back pay.

**2.** **Economic Damages – Front Pay Damages**

Front pay damages, if any, represent a plaintiff's lost salary and benefits caused by an unlawful adverse action.

If you find for Mr. Pedraza on any of his claims for retaliatory termination, and if you find that Mr. Pedraza will be unable to earn in the future what he would have earned at Manhattan Monster Inc., then you may award him, as additional compensation, the amount he would have earned from the day of your verdict until either: (i) the date you believe he would have worked at Manhattan Monster Inc. absent any discriminatory conduct or (ii) the date you can reasonably predict that he has a reasonable prospect of obtaining comparable employment. Factors to be considered in determining front pay include Mr. Pedraza's age and his reasonable prospects of obtaining comparable employment. You should bear in mind that the purpose of front pay is to make a plaintiff whole—that is, to put the plaintiff in the position he would have been in if Defendants had not discriminated and/or retaliated against him.

Please note that Mr. Pedraza is entitled to be compensated only once for any alleged front pay that arose from his proven claims.

If Mr. Pedraza has proved a claim, he would be entitled to front pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Mr. Pedraza should be resolved in his favor. That said, Mr. Pedraza has the burden of proving by a preponderance of the evidence that he actually incurred a loss of front pay.

**3.  Plaintiff's Duty to Mitigate Damages**

A plaintiff has a duty to mitigate back pay and front pay damages by using reasonable care and diligence in seeking suitable alternative employment. The burden is on Defendants to prove by a preponderance of the evidence that Mr. Pedraza has failed in his duty to mitigate. Thus, if you find that Mr. Pedraza failed to use reasonable care and diligence and that he could have obtained a job substantially equivalent to the one he left at Manhattan Monster Inc., then you should reduce any award of back pay by the amount you find he could have earned from such employment.

In assessing the reasonableness of Mr. Pedraza's efforts to mitigate his damages, you may consider what you have learned about Mr. Pedraza's qualifications for employment, the characteristics of the job market, and the quantity and quality of the efforts made by Mr. Pedraza to find suitable work. The question whether Mr. Pedraza acted reasonably with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. In weighing the evidence, keep in mind that Mr. Pedraza was under no obligation to enter another line of work, or to take a demotion or a demeaning job.

Mr. Pedraza's failure to make a reasonable effort to minimize damages does not prevent all recovery, but does prevent recovery of such damages as might have been avoided.

4.  **<u>Compensatory Damages</u>**

If you find that Mr. Pedraza has established any of his claims, you may award him compensatory damages for injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life that was caused by the Defendants' unlawful conduct. Compensatory damages are separate from back pay and front pay and are an amount that will fairly compensate Mr. Pedraza for any injury he actually sustained as a result of Defendants' conduct. There is no requirement that a claim for emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damages. No expert testimony is necessary to prove such harm, and you may rest your findings solely on Mr. Pedraza's testimony.

No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Rather, you may issue an award of monetary damages based on the emotional harm you determine Mr. Pedraza to have suffered, based on the evidence presented and your best judgment. You may not simply award damages for any injury suffered by Mr. Pedraza, you must award damages only for those injuries that were a proximate result of conduct by Defendants that violated Mr. Pedraza's rights. But, you may not award compensatory damages based on speculation or sympathy.

5. **Punitive Damages**

If you find that Mr. Pedraza prevails on any of his claims under Title VII or the NYCHRL, you may award him punitive damages. Punitive damages are awarded, in the discretion of the jury, to punish a defendant and to set an example in order to deter Defendants and others from committing similar acts in the future. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct. There is no exact rule by which to determine the amount of punitive damages. It is up to the jury to decide what amount is sufficient to punish Defendants.

A plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Under this standard, a defendant need not know that it or he was violating the law, and the plaintiff is not required to prove intentional or malicious conduct.

In calculating a punitive damages award, you should consider, among other things, the (1) nature and reprehensibility of the Defendants' conduct, including the character of the wrongdoing and the Defendants' awareness of what harm the conduct caused or was likely to cause; (2) the amount of time the Defendants engaged in the conduct; and (3) the Defendants' financial condition and the impact your punitive damages award will have on the Defendants. If you award punitive damages, you may consider the Defendants' net worth and the impact of paying that award.

Keep in mind that punitive damages are not intended to, and may not be used to, compensate a plaintiff for his injuries. Instead, the purpose of punitive damages is to punish a defendant and to deter similar conduct in the future. Any punitive damages award should be

limited to the amount reasonably necessary to achieve the goals of punishment and deterrence.

There is an affirmative defense to punitive damages available to an employer such as Manhattan Monster Inc. and/or Spunk Events Inc. under Title VII and the NYCHRL. An employer will not be liable for punitive damages if it has made good faith efforts to enforce an antidiscrimination policy. This defense requires an employer to establish both that it had an antidiscrimination policy and that it made good faith effort to enforce it. This defense focuses on the employer's state of mind. It precludes punitive damages unless the employer discriminated in the face of a perceived risk that its actions would violate federal, state, or local law.

Under the NYCHRL, an employer will not be liable for punitive damages if it has made a good faith effort to enforce an antidiscrimination policy. However, even if you decide to award punitive damages to Mr. Pedraza based on Mr. Lepe's conduct and not Manhattan Monster Inc.'s or Spunk Events Inc.'s, Manhattan Monster Inc. and/or Spunk Events Inc. may still be liable for Mr. Lepe's punitive damages. Under the NYCHRL, an employer is held liable for any award of punitive damages imposed on a managerial or supervisory employee found to have engaged in unlawful discrimination with the necessary state of mind. In effect, the liability for the misconduct of the manager or supervisor is attributed to the employer. Thus, if you assess punitive damages against Mr. Tobey, Manhattan Monster Inc. and/or Spunk Events Inc. would be obligated to pay the amount of such damages you impose. That liability would be joint, meaning that the entire award could be collected from either one or from all of these Defendants in amounts adding up to the total punitive damages. However, you may, in your discretion, reduce the amount of the punitive damages award imposed upon Mr. Tobey that is imputed to Manhattan Monster Inc. and/or Spunk Events Inc. In doing so, you may consider whether Manhattan Monster Inc. and/or Spunk Events Inc. established and complied with policies,

programs, and procedures for the prevention and detection of unlawful discriminatory or retaliatory practices by employees, including, but not limited to:

1. A meaningful and responsive procedure for investigation of complaints of discriminatory practices by employees and for taking appropriate action against those persons who are found to have engaged in such practices;

2. A firm policy against such practices, which is effectively communicated to employees and gives employees the opportunity to make complaints of discrimination or retaliation to her employer;

3. A program to educate employees about unlawful discriminatory practices under the local, state, and federal law; and

4. Procedures for the supervision of employees specifically directed at the prevention and detection of such practices.

You may also consider whether Manhattan Monster Inc. and/or Spunk Events Inc. had a record of no or relatively few prior incidents of sex-based or sexual orientation-based discriminatory or retaliatory conduct.

You must consider whether Manhattan Monster Inc. and/or Spunk Events Inc. has established any or all of the factors listed above, and, if so, the degree to which the award against Manhattan Monster Inc. and/or Spunk Events Inc. should be reduced relative to the award against Mr. Tobey, if any. Further, you may take into account Manhattan Monster Inc. and/or Spunk Events Inc.'s financial condition in deciding whether to reduce its responsibility for any punitive damages you may impose against Mr. Tobey.

### III.    CLOSING INSTRUCTIONS

**Right to See Exhibits and Hear Testimony; Communications with the Court**

If during your deliberations you want to see any of the exhibits, you may request that they be sent to you in the jury room. A list of exhibits received in evidence will be forwarded to you in the jury room. If you want any of the testimony read, that can also be done and will occur here in open court. Please remember that it is not always easy to locate what you may want, so try to be as specific as you possibly can in requesting exhibits or portions of the testimony. To this end, please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request. If you want any further explanation of the law as I have explained it to you, you may also request that.

Your requests for exhibits or testimony—in fact, any communication with the Court, including any questions on the law, should be made to me in writing, signed by your foreperson, and given to the marshal. If there is any doubt or question about the meaning of any part of the instructions that I have given you during this trial, you should not hesitate to send me a note asking for clarification or for a further explanation. I will respond to any questions or requests you have as promptly as possible, by having you return to the courtroom so that I can address you in person. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching this case. There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me—to request testimony, or to request clarification on the law—you should send a note to me, in writing, signed by your foreperson, and given to one of the court security officers or to my courtroom

deputy. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing, or orally here in open court. If you send any notes to the Court, do not disclose anything about your deliberations. Specifically, do not disclose to anyone—not even to me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

## **Notes**

Many of you have taken notes periodically throughout this trial.  You should not show your notes to, or discuss your notes with, any other jurors during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

## **Duty to Deliberate/Unanimous Verdict**

You will now retire to the jury room to begin your deliberations. In order for Mr. Pedraza to prevail on his claims, Mr. Pedraza must sustain his burden of proof as I have explained to you with respect to his claims and the specific questions you are considering. Your verdict on each question must be unanimous. Similarly, defendants must carry their burden as to those areas I have likewise identified for you.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard and is entitled to their opinion, but you are required to exchange views with your fellow jurors. No one juror should hold center stage in the jury room, and no one juror should control and monopolize the deliberations. It is your duty to discuss the evidence. If, after listening to your fellow jurors, and if, after stating your own view, you become convinced that your view is wrong, do not hesitate to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered. Your final vote must reflect your conscientious belief as to how the issues should be decided.

Your verdict must be unanimous. Until such time as you reach unanimous agreement, you must not reveal the standing of the jurors, that is, the split of the vote, to anyone, including the court or anyone else outside the jury room. You are not to discuss the case until all jurors are present. Without all members of the jury, a select handful of jurors is only a gathering of individuals and only collectively when all are present do you constitute a jury, and only then may you deliberate.

Your duty is to decide the issues fairly and impartially, to apply the law as I instructed you, and to see that justice is done. Remember at all times, you are not partisans. You are judges

– judges of the facts, evidence, and the application of the law. Your sole interests are to seek the truth from the evidence in the case, and to determine whether the plaintiff has proved his claims by a preponderance of evidence and whether the defendants have proven any of their defenses by a preponderance of the evidence with respect to damages sought. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

**<u>Verdict Form/Return of Verdict</u>**

I have prepared a verdict form for you to use in recording your decision. Please use that form to report your verdict. Once you have made your verdict, you will record your decisions in the verdict form. You should also proceed through the questions in the order in which they are listed, following the instructions on that form.

After you have reached a verdict, your foreperson will fill out the jury verdict form that will be given to you, sign, and date it, and the foreperson will advise the marshal outside your door that you are ready to return to the courtroom. Do not specify what the verdict is in your note.

I stress that each of you must be in agreement with the verdict that is announced by the foreperson in open court and officially recorded. Once your verdict is announced by your foreperson in open court, and officially recorded, it cannot ordinarily be revoked.

## **Selecting a Foreperson**

Members of the jury, the first thing you should do when you retire to the jury room is to elect one member of the jury as your foreperson. The foreperson has no greater voice or authority than any other juror, and their vote or opinion does not count for any more than any other juror's vote or opinion. The foreperson is simply the person who will communicate with the Court when questions arise. The foreperson is merely your spokesperson to the court. The foreperson can send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict.

**Juror Oath/Sympathy or Bias**

I will remind you that you took an oath to render judgment impartially and fairly, without regard to prejudice or sympathy and without fear, solely upon the evidence and the applicable law. So that is your duty, and I know you will do your duty and reach a just and fair verdict.

If you follow that oath and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict. You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence. It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex, sexual orientation, or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. Both parties are entitled to the same fair trial at your hands. Both parties stand equal before the law and are to be dealt with as equals in this Court.

I have just one more comment. I don't think it is necessary because it seems that even though you haven't known each other very long you have a good relationship, but it is the custom in this courthouse to say it. You should treat each other with courtesy and respect during your deliberations. All litigants stand equal in this room. All litigants stand equal before the bar of justice. Your duty is to decide between these parties fairly and impartially to see that justice is done, all in accordance with your oath as jurors. Thank you for your time and your attentiveness, and now the case is in your hands.

## IV.    CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement. Please don't discuss the case while seated in the box because the case still has not been formally submitted to you.

*  *  *

Members of the jury, my deputy is going to swear the court security officer.

(Court Security Officer sworn)

Members of the jury, you may now retire. You are instructed to retire to the jury room and you may begin your deliberations.

# EXHIBIT 6

**Court Exhibit 6**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
 JUAN PEDRAZA,

                              Plaintiff,                          **23-CV-2596 (VF)**

-against-

 MANHATTAN MONSTER INC. d/b/a
 THE MONSTER BAR, SPUNK EVENTS INC.
 d/b/a SPUNK INC., CHARLES RAYMOND RICE,
 DANIEL TOBEY, and JOSE LUIS LEPE,

                              Defendants.
----------------------------------------------------------------
**VALERIE FIGUEREDO, United States Magistrate Judge**

<u>PLEASE CHECK ( ✔) YOUR ANSWERS</u>
All jurors must agree on the answers to all the questions.

**I.    <u>Discrimination Based on Gender under Title VII</u>**

    1.    Do you find from a preponderance of the evidence that Manhattan Monster Inc.

created or maintained a severe or pervasive hostile work environment on the basis of Mr.

Pedraza's gender?

              YES _____          NO_____

**II.    <u>Discrimination Based on Sexual Orientation under Title VII</u>**

    1.    Do you find from a preponderance of the evidence that Manhattan Monster Inc.

created or maintained a severe or pervasive hostile work environment on the basis of Mr.

Pedraza's perceived sexual orientation?

              YES _____          NO_____

**III.**    **Discrimination Based on Gender under NYCHRL**

1.    Do you find from a preponderance of the evidence that Manhattan Monster Inc. created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's gender?

YES _____        NO_____

2.    Do you find from a preponderance of the evidence that Spunk Events Inc. created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's gender?

YES _____        NO_____

3.    Do you find from a preponderance of the evidence that Charles Raymond Rice created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's gender?

YES _____        NO_____

4.    Do you find from a preponderance of the evidence that Daniel Tobey created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's gender?

YES _____        NO_____

5.    Do you find from a preponderance of the evidence that Jose Luis Lepe created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's gender?

YES _____        NO_____

**IV.**    **Discrimination Based on Sexual Orientation under NYCHRL**

     1.     Do you find from a preponderance of the evidence that Manhattan Monster Inc. created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's perceived sexual orientation?

               YES _____          NO_____

     2.     Do you find from a preponderance of the evidence that Spunk Events Inc. created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's perceived sexual orientation?

               YES _____          NO_____

     3.     Do you find from a preponderance of the evidence that Charles Raymond Rice created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's perceived sexual orientation?

               YES _____          NO_____

     4.     Do you find from a preponderance of the evidence that Daniel Tobey created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's perceived sexual orientation?

               YES _____          NO_____

     5.     Do you find from a preponderance of the evidence that Jose Luis Lepe created or maintained a hostile work environment that amounts to more than petty slights or trivial inconveniences on the basis of Mr. Pedraza's perceived sexual orientation?

               YES _____          NO_____

**V.    <u>Retaliation under Title VII of the Civil Rights Act of 1964</u>**

1.     Has Mr. Pedraza proved, by a preponderance of the evidence, that Manhattan Monster Inc. subjected him to a retaliatory adverse employment action in the form of constructive discharge based on his protected activity in violation of Title VII?

YES _____          NO_____

**VI.    <u>Retaliation under NYCHRL</u>**

1.     Has Mr. Pedraza proved, by a preponderance of the evidence, that he was subjected to retaliatory adverse employment action in the form of constructive discharge based on his protected activity in violation of NYCHRL?

a)     By Manhattan Monster Inc.?

YES _____          NO_____

b)     By Charles Raymond Rice? [*You may only answer YES to this question if you answered YES to Question No. VI (1)(a) above*]

YES _____          NO_____

c)     By Daniel Tobey? [*You may only answer YES to this question if you answered YES to Question No. VI (1)(a) above*]

YES _____          NO_____

d)     By Jose Luis Lepe? [*You may only answer YES to this question if you answered YES to Question No. VI (1)(a) above*]

YES _____          NO_____

**VII.    <u>Damages</u>**

*The following questions need only be answered if you answered YES to one or more of the prior*

*questions.*

1.      Has Mr. Pedraza proven, by a preponderance of the evidence, that he is entitled to back pay, as a result of the Defendants' discrimination against him and/or retaliatory constructive discharge of his employment?

YES _____          NO_____

2.      If you answered "YES" to Question VII (1), state below the amount that is to be awarded in back pay. If you answered "NO" to Question VII (1), proceed to Question VII (3).

$_____

3.      If you answered "YES" to any Questions in Parts V through VI, do you find that Mr. Pedraza has proven, by a preponderance of the evidence, that he is entitled to front pay as a result of the discrimination against him and/or retaliatory constructive discharge of his employment?

YES _____          NO_____

4.      If you answered "YES" to Question VII (3), state below the amount that is to be awarded in front pay. If you answered "NO" to Question VII (3), proceed to Question VII (5).

$_____

5.      Do you find that Mr. Pedraza has proven, by a preponderance of evidence, that he is entitled to compensatory damages for pain, suffering or emotional distress that he experienced as a result of the discrimination against him and/or retaliatory constructive discharge of his employment?

YES _____          NO_____

6.      If you answered "YES" to Question VII (5), state below the amount that is to be awarded in compensatory damages for pain, suffering, or emotional distress. If you answered "NO" to Question VII (5), proceed to Question VII (7).

$_____

7.      If you answered "YES" to any Questions in Parts I through VI, do you find that Defendant, Manhattan Monster Inc., should be subject to punitive damages?

YES _____        NO_____

8.      If you answered "YES" to Question VII (7), state below the amount of punitive damages, if any, that you award to Plaintiff:

$_____

9.      If you answered "YES" to any Questions in Parts I through VI, do you find that Defendant, Spunk Events Inc., should be subject to punitive damages?

YES _____        NO_____

10.      If you answered "YES" to Question VII (9), state below the amount of punitive damages, if any, that you award to Plaintiff:

$_____

11.      If you answered "YES" to any Questions in Parts I through VI, do you find that Defendant, Charles Raymond Rice, should be subject to punitive damages?

YES _____        NO_____

12.      If you answered "YES" to Question VII (11), state below the amount of punitive damages, if any, that you award to Plaintiff:

$_____

13.     If you answered "YES" to any Questions in Parts I through VI, do you find that Defendant, Daniel Tobey, should be subject to punitive damages?

YES _____          NO_____

14.     If you answered "YES" to Question VII (13), state below the amount of punitive damages, if any, that you award to Plaintiff:

$_____

15.     If you answered "YES" to any Questions in Parts I through VI, do you find that Defendant, Jose Luis Lepe, should be subject to punitive damages?

YES _____          NO_____

16.     If you answered "YES" to Question VII (15), state below the amount of punitive damages, if any, that you award to Plaintiff:

$_____

*Please have the foreperson sign and date this Verdict Form and advise the Court by note that you have reached a verdict.*

Dated:  New York, New York

_____, 2024

_____
Jury Foreperson

# EXHIBIT 7

**Court Exhibit 7**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
  JUAN PEDRAZA,

                                    Plaintiff,                    **23-CV-2596 (VF)**

-against-

  MANHATTAN MONSTER INC. d/b/a                    **FINAL JURY INSTRUCTIONS**
  THE MONSTER BAR, SPUNK EVENTS INC.
  d/b/a SPUNK INC., CHARLES RAYMOND RICE,
  DANIEL TOBEY, and LUIS GOMEZ,

                                    Defendants.
-----------------------------------------------------------------
**VALERIE FIGUEREDO, United States Magistrate Judge**

1

## TABLE OF CONTENTS

I.           GENERAL INSTRUCTIONS ................................................................ 4

    Introductory Remarks ................................................................................ 4

    Duty of the Court ...................................................................................... 5

    Duty of the Jury ........................................................................................ 6

    Burden of Proof & Preponderance of the Evidence ................................. 8

    What is Evidence ...................................................................................... 10

    What is Not Evidence ............................................................................... 11

    Direct and Circumstantial Evidence; Inferences ..................................... 12

    Evidence for a Limited Purpose .............................................................. 14

    Corporate Defendants/General Principles of Agency .............................. 15

    Role of Counsel/Objections and Sidebars ............................................... 17

    The Court's Role ...................................................................................... 19

    Witness Credibility ................................................................................... 20

    Preparation of Witnesses ......................................................................... 23

II.          SUBSTANTIVE CLAIMS ................................................................ 24

    A.        Overview of Claims and Defenses ................................................. 24

    1.         Hostile Work Environment Under Title VII .................................... 27

    2.         Discrimination Based on Gender and Sexual Orientation Under the New York City Human Rights Law (NYCHRL) .............................. 30

    3.         Retaliatory Termination Under Title VII .......................................... 31

    4.         Retaliatory Termination Under the NYCHRL ................................. 34

    5.         Individual Liability for Retaliation Under the NYCHRL .................. 36

B.           Damages ................................................................................. 37

    1.         Economic Damages – Back Pay Damages ...................................... 38

    2.         Economic Damages – Front Pay Damages ...................................... 39

    3.         Plaintiff's Duty to Mitigate Damages .............................................. 40

    4.         Compensatory Damages .................................................................. 41

    5.         Punitive Damages .......................................................................... 42

III.        CLOSING INSTRUCTIONS ............................................................ 45

    Right to See Exhibits and Hear Testimony; Communications with the Court ......................... 45

Notes.................................................................................................................. 47

Duty to Deliberate/Unanimous Verdict........................................................ 48

Verdict Form/Return of Verdict .................................................................. 50

Selecting a Foreperson ............................................................................... 51

Juror Oath/Sympathy or Bias ..................................................................... 52

IV.            CONCLUSION............................................................................. 53

## I.    GENERAL INSTRUCTIONS

### <u>Introductory Remarks</u>

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions. First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case. These instructions really would apply to just about any trial. Second, I'll give you some specific instructions about the legal rules applicable to this particular case. Third, I'll give you some final instructions about procedure. Listening to these instructions may not be easy. It is important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention. You'll notice that I'm reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying. I will be distributing to you a verdict form in which to record your verdict. It will list the questions that you must consider, in the order that you should consider them.

**Duty of the Court**

We are now approaching the most important part of this case: your deliberations. You have heard all of the evidence in this case, as well as the final arguments of the lawyers for the parties. It is my duty to provide these instructions, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration. It is your duty to accept these instructions of law and apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be. You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or should be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any particular instruction alone as stating the law, and you should consider my instructions as a whole when you retire to deliberate in the jury room. You are not to infer from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case. Any questions I asked were designed to make sure that the testimony was clear and to avoid confusion. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

**Duty of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in testimony; you draw whatever reasonable inferences you decide to draw from the facts as you determine them, and you determine the weight of the evidence.

In determining the facts, you must rely upon your own recollection of the evidence. None of what the lawyers have said in their opening statements, in their closing arguments, or in their objections is evidence. You should bear in mind particularly that a question put to a witness is never evidence. It is only the answer in the context of the question that is evidence. You may not consider any answer that I directed you to disregard. I remind you that nothing I have said during the trial or will say during these instructions is evidence. Similarly, the rulings I have made during the trial are not any indication of my views of what your decision should be.

The evidence before you consists of the answers given by witnesses, the exhibits that were received in evidence, and stipulated facts and admissions. Exhibits marked for identification but not received may not be considered as evidence. Anything you may have seen or heard about this case outside the courtroom is not evidence and must be disregarded entirely.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or

matters outside the case.

## Burden of Proof & Preponderance of the Evidence

Because this is a civil lawsuit, Mr. Pedraza has the burden of proving each disputed part of his claims by a preponderance of the evidence and Defendants have the burden of proving each disputed part of their affirmative defenses by a preponderance of the evidence.

A preponderance of the evidence simply means that something is more likely so than not so. In other words, if you find that the credible evidence on a given issue is evenly divided between Mr. Pedraza and Defendants, then you must decide that issue for Defendants. However, if you find that the scales tip, however slightly, in favor of Mr. Pedraza that the issue is more likely than not true, then you are to find that Mr. Pedraza has proven the issue by a preponderance of the evidence. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.

If Mr. Pedraza fails to prove an issue by a preponderance of the evidence, then you must find that issue in favor of Defendants. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. You should attach no significance to the fact that certain witnesses were called to testify by Plaintiff or by Defendants. Nor should you attach any meaning to the fact that a document or other exhibit was introduced by one party rather than another. Every party is entitled to the benefit of any evidence tending to support its arguments, even if such evidence came from witnesses or documents introduced by the other party. This is true with respect to any contested issue of fact in this case.

The law does not require any party to call as witnesses each and every person who may

have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. You should not draw any negative inference against any party with respect to any issue in dispute based on their failure to produce a witness over whom the party has no control.

A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented. Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should not consider or discuss that standard in your deliberations.

For certain defenses and issues in this case, the Defendants have the burden of proof. I will describe the burden of proof for each defense in a few minutes.

## **What is Evidence**

As I have said, in determining the facts, you must rely on your own recollection of the evidence. What is evidence? Evidence consists of the testimony of witnesses, whether here at trial or previously at their depositions, the exhibits that have been received into evidence, any stipulations of fact to which the lawyers have agreed, and any facts I may instruct you to accept as proven and not in dispute.

### **What is Not Evidence**

I also want to be clear on what is not evidence. What the attorneys say in their opening statements is not evidence, what they say in their closing arguments is not evidence, nor is testimony that I ask you to disregard. Any demonstratives used by attorneys during opening statements or closing statements is also not evidence. Anything I say is not evidence. The only testimony that is evidence in this case will come from a witness sitting in the witness stand or from depositions previously taken. Although the lawyers may comment to you about the testimony, their arguments are not evidence. Their arguments are just intended to help you understand the evidence.

If in the course of your deliberations your recollection of the facts differs from the lawyers' arguments, it is your recollection that controls. Also, anything that you see or hear when the court is not in session, even if it is said by one of the lawyers or one of the parties – for example, out in the hall or in the elevator – that is not evidence. Only what is admitted into evidence here that all of us can see and hear at the same time may be considered by you as evidence.

I want to say something about the subject of implicit bias. Everyone, including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern race, gender, national origin, sexual orientation, class, education, and many other issues.

These hidden thoughts can impact what we see and hear, how we remember what we see and hear and how we make important decisions. Because you're making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist

jumping to conclusions based on personal likes and dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes or biases. The law requires that you return a just verdict based solely on the evidence, your individual evaluation of the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence and not on any bias.

### Direct and Circumstantial Evidence; Inferences

In my beginning remarks, I told you that there were two kinds of evidence that you could use in reaching your verdict. One is direct evidence and the other is circumstantial evidence.

Direct evidence is when a witness testifies about something the witness knows by virtue of his or her senses. So, something the witness has observed or felt or touched or heard. Direct evidence may also be in the form of a document, or another exhibit admitted into evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. Circumstantial evidence is of no less value than direct evidence. It is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

There is a simple example of circumstantial evidence that is often used in the courthouse. Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. Assume that the courtroom windows were covered so you couldn't see outside. Then, as you were sitting here, someone walked in with an umbrella that was dripping wet, and a few minutes later someone else also entered with a wet umbrella or a wet raincoat. Now, you can't see outside the courtroom and so you can't see with your own senses whether it is raining, so you have no direct evidence that it is raining. But on the

combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining. That is all there is to circumstantial evidence. You infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of some other fact. Similarly, based on the evidence presented at this trial, you may infer from one or more established facts, on the basis of reason, experience and common sense, the existence or nonexistence of other facts.

Let me say a few words about inferences. An inference is not speculation, suspicion or guess. An inference is a reasoned, logical deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. There are times when different inferences may be drawn from the same proven facts. Here, the plaintiffs ask you to draw one set of inferences, while the defendant asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

## **Evidence for a Limited Purpose**

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

## **Corporate Defendants/General Principles of Agency**

As corporations, Manhattan Monster Inc. and Spunk Events Inc. act through their employees. It is established law that under certain circumstances an employer may be liable for the wrongs, even willful wrongs, done by its employees if the wrongs are committed during the scope of the employee's employment duties and in furtherance of the employer's business. An employer's liability rests upon a broad principle that if a corporation manages its affairs through others, the corporation is bound to manage them in such a way that no person shall suffer injury from a wrong done by that other while engaged upon the employer's business and acting within the scope of their employment.

The fact that an employee was not specifically authorized to commit the act or was even violating instructions which had been given to them does not relieve the corporation from liability if unlawful conduct is proven. A corporation is liable even if the employee was acting unlawfully if the acts were committed within the scope of his or her employment.

In this case, it is not disputed that the Daniel Tobey is the manager of Manhattan Monster Inc. and the owner of Spunk Events Inc. and any conduct by Mr. Tobey with respect to Mr. Pedraza was made while acting within the scope of his employment at Manhattan Monster Inc. and Spunk Events Inc. It is undisputed that if you find any unlawful acts were committed by Mr. Tobey, that such acts were the result of his attempts to carry out work that was entrusted to him by Manhattan Monster Inc. and Spunk Events Inc. Therefore, I instruct you that Manhattan Monster Inc. and Spunk Events Inc. are liable for Mr. Tobey's conduct. Plaintiff also alleges that Mr. Lepe is an agent of Manhattan Monster Inc. and Spunk Events Inc. If you find that to be true and find that any unlawful acts were committed by Mr. Lepe while acting within the scope of his agency relationship with Manhattan Monster Inc. and/or Spunk Events Inc., I instruct you that

Manhattan Monster Inc. and/or Spunk Events Inc. are liable for Mr. Lepe's conduct.

I am not suggesting that Manhattan Monster Inc. or Spunk Inc. are liable. Whether or not Mr. Pedraza was discriminated and/or retaliated against is a matter for you to decide in accordance with these instructions.

**Role of Counsel/Objections and Sidebars**

Let me talk about the role of counsel and objections and sidebars. In the course of this trial, there may have been objections, motions may have been made to strike answers, or conferences may have been held. But you should not pay any attention to those matters. They are procedural matters; they are matters of law, and although you may have been curious about them, you should not consider them in your deliberations. Objections are not evidence. Objections are a proper part of the trial process, and you should make no inference or be influenced in any way by an objection or by the Court's ruling on it. Likewise, it is my function to cut off questioning, to strike remarks and to reprimand any person when I think it is necessary, but you should draw no inference from that.

During the trial, I may have sustained objections to questions that were asked. When that happened, the witness was not permitted to answer or if the witness had already answered, I instructed that the answer be stricken from the record. You may not consider any testimony that I directed you to disregard or that I directed be stricken from the record. In reaching your decision, you may not draw any inference from an unanswered question.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also has the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. You should not draw any inferences or harbor any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

None of the events relating to these conferences should enter into your deliberations at

all. Similarly, the personalities and the conduct of counsel in the courtroom are not in any way in issue. If you formed reactions of any kind to any of the lawyers, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

## **The Court's Role**

During the trial, I have been called upon to make various rulings – my rulings are not evidence.

The fact that I may have commented during the course of the trial or asked questions of witnesses does not indicate any feeling of mine about the facts or the credibility of any witness. I have no such feelings, and my comments were intended only to clarify the issue at hand. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or party because of any comment, question, or instruction of mine. It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

**<u>Witness Credibility</u>**

You have now had the opportunity to listen to and observe all of the witnesses. It is now your job to decide how believable you find each witness's testimony to be. So how do you determine where the truth lies? You should use all of the tests for truthfulness that you would use in determining matters of importance in your own everyday life.

One thing you should consider is any motivation, hostility, opinion or affection that a witness may have shown for or against a party. It is your duty to consider whether the witness has permitted any such bias to color their testimony. If you find a witness is biased, then you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny. When I use the word bias here, I am not necessarily speaking of discriminatory bias, but bias in general – a favoritism or partiality to one of the parties in this action.

You should consider any other interest or motive that the witness may have in cooperating with a particular party, as well as any interest the witness may have in the outcome of the case. Interest in the outcome of the case may create a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interest. Therefore, you should accept the testimony of interested witnesses with great care. Keep in mind, though, that it doesn't automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter how strong their interest in the outcome of a case, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, a witness's interest has affected his or her testimony.

Additional factors you should consider are: the opportunity the witness had to see, hear and know the things about which he or she has testified; the accuracy of the witness's memory; the

20

witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's testimony; and the testimony's consistency or lack of consistency with other credible evidence or testimony. In other words, what you must try to do in deciding credibility is to size up a witness in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

You have heard evidence that at some earlier time witnesses have said or done something, or failed to say or do something, which counsel argues is inconsistent with the witnesses' testimony here in court. Evidence of a prior inconsistent statement was placed before you for the purpose of helping you decide whether to believe the trial testimony of the witness. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

If you find that any witness has willfully testified falsely to any material fact – that is, to an important matter – then the law permits you to disregard the entire testimony of that witness based upon the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem true and disregard what you find to be false. While it is quite legitimate for an attorney to try to attack the credibility of a witness, as the sole arbiters of the facts, you must decide for yourselves which witnesses you will believe, what portion of their testimony you will accept, and what weight you will give their testimony.

I will remind you of something I instructed on at the beginning of the case. Everyone,

21

including me, has feelings, assumptions, perceptions, fears, sympathies, generalizations, prejudices, and stereotypes that we may not be aware of. These are called implicit biases. These biases may concern, race, gender, national origin, sexual orientation, class, education, and many other issues. These hidden thoughts can impact what we see and hear, how we remember what we see and hear, and how we make important decisions. Because you are making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your individual evaluation of that the evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence, not on biases.

## **Preparation of Witnesses**

You may have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying. The weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

## II.    SUBSTANTIVE CLAIMS

### A.  **Overview of Claims and Defenses**

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations, claims, and defenses made in this case.

I am going to briefly state the contentions of the respective parties. In stating these contentions, I express no opinion about the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact in this case, then you are to disregard that, as you alone are the judges of the facts. You will consider all the facts, the testimony from the witness stand, the physical facts, and all legitimate inferences.

Plaintiff, Mr. Pedraza, brings gender and sexual-orientation discrimination and retaliation claims against Defendants under Title VII of the Civil Rights Act of 1964, which I will refer to as "Title VII" and the New York City Human Rights Law, which I will refer to by the acronym "NYCHRL."

These two statutes both prohibit discrimination in the terms and conditions of employment based on, among other things, a person's gender or sexual orientation. There are similarities among these laws and I will point out to you where the requirements of certain laws are the same. But there are also some differences, as I will draw to your attention.

Specifically, Mr. Pedraza alleges that Manhattan Monster Inc. discriminated against him in violation of Title VII and the NYCHRL, because he was subjected to a hostile work environment due to his gender and sexual orientation. Mr. Pedraza also alleges that he was retaliated against due to his gender and sexual orientation when he was constructively discharged from his position after he rejected verbal and physical sexual advances of Mr. Lepe. Based on these allegations, Mr. Pedraza brings hostile work environment and retaliation claims against

Manhattan Monster Inc. under Title VII. Mr. Pedraza also brings discrimination and retaliation claims against all Defendants under the NYCHRL.

Defendants deny all of Mr. Pedraza's claims. They deny that Mr. Pedraza was subject to a hostile work environment or that he was retaliated against in the terms and conditions of his employment. Defendants assert that Mr. Pedraza voluntarily quit and was not terminated or constructively discharged.

Thus, you are charged with determining the following:

1. Whether Mr. Lepe made verbal and/or physical sexual advances on Mr. Pedraza, and as a result, whether Manhattan Monster Inc. discriminated against Mr. Pedraza based on his gender in violation of Title VII, by creating a hostile work environment;

2. Whether Mr. Lepe made verbal and/or physical sexual advances on Mr. Pedraza, and as a result, whether Manhattan Monster Inc. discriminated against Mr. Pedraza based on his sexual orientation in violation of Title VII, by creating a hostile work environment;

3. Whether Manhattan Monster Inc. discriminated against Mr. Pedraza because of his gender or sexual orientation and constructively discharged Mr. Pedraza's employment in retaliation for his complaints about Mr. Lepe's conduct in violation of Title VII;

4. Whether Mr. Lepe made verbal and/or physical sexual advances on Mr. Pedraza, and as a result, whether all Defendants discriminated against Mr. Pedraza based on his gender in violation of the NYCHRL, by creating a hostile work environment;

5. Whether Mr. Lepe made verbal and/or physical sexual advances on Mr. Pedraza, and as a result, whether all Defendants discriminated against Mr. Pedraza based on his sexual orientation in violation of the NYCHRL, by creating a hostile work environment when;

6. Whether all Defendants discriminated against Mr. Pedraza because of his gender or sexual orientation and constructively discharged Mr. Pedraza's employment in retaliation for his opposition to Mr. Lepe's conduct in violation of the NYCHRL;

As to damages, Mr. Pedraza claims that, as a result of the violations of law, he was deprived of wages and certain benefits and that he suffered emotional distress. Mr. Pedraza also seeks punitive damages.

I'm about to turn to the first of the claims. I want to emphasize here that, although certain claims are related in ways that I will explain, you must consider each claim and each defendant separately. With respect to each claim and each defendant, the critical issue is whether Mr. Pedraza has proved all the elements of the claim you are considering against the defendant you are considering by a preponderance of the evidence. If you find a defendant liable to Mr. Pedraza, you must then decide the amount of damages, if any, for which that defendant is responsible.

1. **Hostile Work Environment Under Title VII**

Title VII prohibits the creation of a hostile work environment caused by harassment because of an employee's protected characteristics. Mr. Pedraza brings gender and sexual-orientation discrimination claims against Manhattan Monster Inc. under Title VII, alleging that Manhattan Monster Inc. created a hostile work environment because of his gender and sexual orientation. Mr. Pedraza claims that Mr. Lepe physically and verbally harassed him because of his gender and/or sexual orientation, creating a hostile work environment. Mr. Pedraza further claims that he suffered damages because of said hostile environment. Defendants deny engaging in any unlawful discrimination against Mr. Pedraza and deny they created a hostile work environment. Last, Defendants assert that Mr. Pedraza suffered no damages.

To succeed on his Title VII claim against Manhattan Monster, Inc., Mr. Pedraza must prove each of the following elements by a preponderance of the evidence: ***First***, that he was subjected to unwelcome harassment, ridicule, or other abusive conduct. ***Second***, that the abusive conduct was motivated, at least in part, by Mr. Pedraza's gender or sexual orientation. ***Third***, that the abusive conduct was so severe or pervasive that both Mr. Pedraza himself and a reasonable person in Mr. Pedraza's position would find his work environment so hostile or offensive that it would interfere with his work performance. And ***Fourth***, that the management of Manhattan Monster Inc. knew, or should have known, of the abusive conduct.

The test for a hostile environment has both objective and subjective elements: a hostile environment is one that would reasonably be perceived and is perceived as hostile or abusive. The plaintiff must establish that he was adversely affected by the conduct and that a reasonable person also would have been adversely affected by the conduct. Please note that generally,

isolated remarks or occasional episodes will not suffice, but if the alleged conduct is extraordinarily severe, a single incident may create a hostile environment.

Harassment need not involve touching or be physically threatening to be actionable where, for example, it is humiliating and demeaning. Also, the conduct need not seriously affect an employee's psychological well-being or lead the employee to suffer injury in order to meet this standard. Rather, psychological harm is merely a relevant factor that may be taken into account in determining whether or not the employee actually found the environment abusive. When an alleged harasser is in a supervisory position over an employee, the objectionable conduct is automatically imputed to the employer—here, Manhattan Monster Inc.—for purposes of asserting a hostile work environment claim.

To determine whether the conduct in this case was "so severe or pervasive" that it materially altered the terms and conditions of Mr. Pedraza's employment, you should consider all the circumstances, including such matters as:

a. How often the discriminatory conduct occurred;

b. Its severity;

c. Whether it was physically or psychologically threatening or humiliating; and

d. Whether it unreasonably interfered with Mr. Pedraza's work performance.

Manhattan Monster Inc. may be liable for discriminatory acts of Mr. Tobey if the jury finds that Mr. Tobey as plaintiff's supervisor acted as the proxy or alter ego of Monster Bar Inc. A supervisor acts as a proxy or alter ego for his employer if he holds a sufficiently high position in the management hierarchy so as to speak for the corporate employer.

If the jury finds that Mr. Pedraza has proven that he was subjected to a hostile work environment by Mr. Lepe, the jury must decide whether Manhattan Monster Inc. is responsible

28

for Mr. Lepe's conduct. Manhattan Monster Inc. is liable for permitting such behavior by Mr. Lepe if Mr. Pedraza proves by a preponderance of the evidence that: ***First***, Manhattan Monster Inc. either failed to provide a reasonable avenue for complaint; or ***Second***, that Manhattan Monster Inc. knew, or in the exercise of reasonable care should have known, about Mr. Lepe's discriminatory conduct and failed to take appropriate remedial action.

2. <u>**Discrimination Based on Gender and Sexual Orientation Under the New York City Human Rights Law (NYCHRL)**</u>

Mr. Pedraza also brings discrimination claims on the basis of gender and sexual orientation under the New York City Human Rights Law, the NYCHRL, against all Defendants. The NYCHRL requires you to apply a different standard in determining whether Defendants subjected Mr. Pedraza to a hostile work environment. The NYCHRL was intended to be more protective than the federal counterpart.

Under the NYCHRL standard, Mr. Pedraza must prove that Defendants subjected him to unwelcomed discriminatory conduct that a reasonable person would find was more than "petty slights and trivial inconveniences." Thus, a single act or comment related to Mr. Pedraza's gender or sexual orientation may be sufficient for Mr. Pedraza to prove his case as long as the comment or comments are more than petty slights or trivial inconveniences.

Also, under the NYCHRL, employers are strictly liable for the harassing and hostile acts of any of its supervisors. Strictly liable means that if you believe that Mr. Tobey, as Mr. Pedraza's supervisor, subjected Mr. Pedraza to conduct that is more than a petty slight or trivial inconvenience, you should find in Mr. Pedraza's favor on this claim as against Manhattan Monster Inc. and Spunk Events Inc.

Mr. Pedraza must show that Defendants intentionally discriminated against him. However, Mr. Pedraza is not required to produce direct evidence of intentional discrimination. Intentional discrimination may be inferred from the existence of other facts.

3. **<u>Retaliatory Termination Under Title VII</u>**

Mr. Pedraza also alleges that Manhattan Monster Inc. unlawfully retaliated against him in violation of Title VII, by terminating his employment because he opposed Mr. Lepe's sexual harassment. Title VII makes it an unlawful employment practice for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice under Title VII. This is referred to as retaliation.

Mr. Pedraza's Title VII claim is against Manhattan Monster Inc. However, you may consider the conduct of Mr. Rice, Mr. Tobey, and/or Mr. Lepe in determining whether Mr. Pedraza has proven that his employment was constructively discharged because of his opposition to discrimination, in violation of Title VII.

Accordingly, to prove a claim of retaliation under Title VII, Mr. Pedraza must prove, by a preponderance of the evidence, each of the following elements.

***First***, that Mr. Pedraza engaged in protected activity;

***Second***, that Manhattan Monster Inc. was aware of Mr. Pedraza's protected activity;

***Third***, that Mr. Pedraza was then subject to a material adverse action by Manhattan Monster Inc., such as constructive discharge; and

***Finally***, that there was a causal connection between Mr. Pedraza's protected activity and the materially adverse employment action.

First, in determining whether Manhattan Monster Inc. unlawfully retaliated against Mr. Pedraza for opposing Mr. Lepe's sexual harassment and discrimination of him, you must first decide whether Mr. Pedraza engaged in protected activity. A protected activity includes the opposition to any unlawful employment practice, including gender discrimination, sexual discrimination, and/or sexual harassment. Mr. Pedraza must prove that he had a good faith,

reasonable belief that Manhattan Monster Inc.'s conduct violated the laws prohibiting gender and/or sexual orientation discrimination and sexual harassment. He need not establish that he was correct in his actions demonstrating an opposition to Manhattan Monster Inc.'s conduct or that there was indeed discrimination.

The second element that Mr. Pedraza must prove by a preponderance of the evidence is that Manhattan Monster Inc. was aware of his protected activity. If you find that Mr. Pedraza has proved by a preponderance of the evidence that he complained to Mr. Tobey about Mr. Lepe's alleged discriminatory behavior, then this satisfies the requirement that he prove Manhattan Monster Inc. was aware of the protected activity. If, however, you find that Mr. Pedraza did not prove by a preponderance of the evidence that he complained to Mr. Tobey about alleged discriminatory behavior, then he has failed to prove this second element of his retaliatory termination claim.

The third element that Mr. Pedraza must prove by a preponderance of the evidence is that he suffered a materially adverse employment action, one that reasonably deterred him from complaining about discriminatory conduct. Here, Mr. Pedraza claims he suffered an adverse employment action when Manhattan Monster Inc. constructively discharged Mr. Pedraza by creating working conditions that were so intolerable a reasonable person in Mr. Pedraza's position would feel compelled to resign.

The fourth element requires that Mr. Pedraza prove by a preponderance of the evidence that there was a causal connection between his complaint of discrimination and the adverse employment action. Mr. Pedraza does not need to prove that retaliation was the one and only cause of the employer's action. A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory

32

treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against Mr. Pedraza by Manhattan Monster Inc.

As you evaluate whether a particular action was taken in retaliation, you should consider the length of time between the protected activity and the allegedly retaliatory act. Although there is no hard and fast rule fixing a specific period of time beyond which it is not possible to infer that an adverse action is retaliatory, logic will tell you that the longer the period between the protected activity and the adverse employment action, the less likely it is that the adverse action resulted from retaliation. You should consider the totality of the evidence on the question of causation.

Manhattan Monster Inc. contends that it did not engage in any retaliatory action against Mr. Pedraza. Manhattan Monster Inc. instead contends that Mr. Pedraza resigned without notice.

If Mr. Pedraza proves by a preponderance of the evidence that he engaged in protected activity, that Manhattan Monster Inc. took an adverse employment action, and that the action was causally related to Mr. Pedraza's protected activity, you must find that Manhattan Monster Inc. unlawfully retaliated against Mr. Pedraza. If, however, Mr. Pedraza fails to prove even one of the elements by a preponderance of the evidence, you must find for Manhattan Monster Inc.

4. **Retaliatory Termination Under the NYCHRL**

Mr. Pedraza also brings retaliation claims against Manhattan Monster Inc. under the NYCHRL. The NYCHRL makes it an unlawful practice to retaliate in any manner against any person because such person has opposed discrimination.

To prevail on his retaliation claim against Manhattan Monster Inc. under the NYCHRL, Mr. Pedraza must prove each of the following four elements by a preponderance of the evidence.

*First*, that he was engaged in protected activity, such as making a complaint to his employer about unlawful discrimination or opposing conduct that he believed was unlawful discrimination. With respect to the first element, "protected activity," you must use the same analysis that you used in analyzing Mr. Pedraza's Title VII retaliatory claim as to whether he proved, by a preponderance of the evidence, that he engaged in protected activity under NYCHRL.

*Second*, that Manhattan Monster Inc. knew about Mr. Pedraza's protected activity—that is, Mr. Pedraza's alleged opposition to Mr. Lepe's sexual harassment. General corporate knowledge that Mr. Pedraza engaged in protected activity is sufficient to establish this element of a retaliation claim under the NYCHRL. With respect to the second element, you must use the same analysis that you used in analyzing the second element of Mr. Pedraza's Title VII retaliatory claim.

*Third*, that Manhattan Monster Inc. engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity.

*Fourth*, that Mr. Pedraza's protected activity was a motivating factor in Manhattan Monster Inc.'s constructive discharge of Mr. Pedraza as an employee.

In sum, if you find that Mr. Pedraza has proved each of the four elements I just outlined

34

by a preponderance of the evidence, you must find that Manhattan Monster Inc. is liable.

**5. <u>Individual Liability for Retaliation Under the NYCHRL</u>**

Mr. Pedraza also brings retaliation claims for individual liability against Mr. Rice, Mr. Tobey, and Mr. Lepe under the NYCHRL. The NYCHRL provides that an individual defendant who participates in the conduct giving rise to a retaliation claim can be found individually liable.

Specifically, if you find that Mr. Pedraza has proven, by a preponderance of the evidence, that the Mr. Rice, Mr. Tobey, and/or Mr. Lepe had personal knowledge of Mr. Pedraza's protected activity and that his protected activity was a motivating factor in the materially adverse employment action, you must find for Mr. Pedraza with respect to the individual liability of Mr. Rice, Mr. Tobey, and/or Mr. Lepe. However, if you find that Mr. Pedraza has not proven by a preponderance of evidence these two elements, then you must find for Mr. Rice, Mr. Tobey, and/or Mr. Lepe.

You must find Manhattan Monster Inc. and/or Spunk Events Inc. liable for retaliation under the NYCHRL in order to find Mr. Rice, Mr. Tobey, and/or Mr. Lepe individually liable under the NYCHRL. If you find that Mr. Pedraza has not proven, by a preponderance of evidence, that Manhattan Monster Inc. and/or Spunk Events Inc. retaliated against him based on his protected activity under the NYCHRL, then you must find for Mr. Tobey, Mr. Rice, and Mr. Lepe.

B. **Damages**

I will now instruct you on the measure of damages you should award to Mr. Pedraza in the event you conclude that Mr. Pedraza has proven his claims for discrimination and/or retaliation. The law permits me to charge you on damages now so that in the event you decide that Mr. Pedraza is entitled to prevail on any of his claims and you reach the issue of damages, you will not have to come back in to listen to my charge on damages.

You should not interpret the fact that I am giving instructions about damages now as an indication that I believe that Mr. Pedraza should, or should not, receive damages. It is your task and yours alone to decide whether Mr. Pedraza is entitled to prevail on his claims. In other words, you should only reach the issue of what damages may be appropriate if you decide that Mr. Pedraza prevails on any of his claims.

You may award only those damages that Mr. Pedraza has proved by a preponderance of the evidence. Any damages that you may choose to award should be based on the evidence presented at trial.

If you decide to award damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

I will explain each category of damages separately, but generally Mr. Pedraza seeks lost wages, compensatory damages, and punitive damages.

1.  **Economic Damages – Back Pay Damages**

If you determine that Mr. Pedraza has proven, by a preponderance of the evidence, that he was discriminated or retaliated against, he may recover wages, bonuses, and other benefits he would have earned if he had not been discriminated or retaliated against by Defendants. An award of back pay runs from the date of the discriminatory or retaliatory action to the date of the judgment. Therefore, in awarding back pay, you must determine the damages Mr. Pedraza is entitled to starting from May 22, 2022, through the present. In other words, you must determine the total amount of compensation Mr. Pedraza would have earned between the time Defendants constructively discharged him through the present. You should include any lost or reduced salary, bonuses, raises, benefits, promotions, training opportunities and other compensation increases or payments necessary to make Mr. Pedraza whole in determining your total award for back pay damages.

Please note that Mr. Pedraza is only entitled to be compensated once for any alleged back pay that arose from his proven discriminatory and/or retaliatory termination claims.

If Mr. Pedraza has proved a claim, he would be entitled to back pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Mr. Pedraza should be resolved in his favor. That said, Mr. Pedraza has the burden of proving by a preponderance of the evidence that he actually incurred a loss of back pay.

2. **Economic Damages – Front Pay Damages**

Front pay damages, if any, represent a plaintiff's lost salary and benefits caused by an unlawful adverse action.

If you find for Mr. Pedraza on any of his claims for retaliatory termination, and if you find that Mr. Pedraza will be unable to earn in the future what he would have earned at Manhattan Monster Inc., then you may award him, as additional compensation, the amount he would have earned from the day of your verdict until either: (i) the date you believe he would have worked at Manhattan Monster Inc. absent any discriminatory conduct or (ii) the date you can reasonably predict that he has a reasonable prospect of obtaining comparable employment. Factors to be considered in determining front pay include Mr. Pedraza's age and his reasonable prospects of obtaining comparable employment. You should bear in mind that the purpose of front pay is to make a plaintiff whole—that is, to put the plaintiff in the position he would have been in if Defendants had not discriminated and/or retaliated against him.

Please note that Mr. Pedraza is entitled to be compensated only once for any alleged front pay that arose from his proven claims.

If Mr. Pedraza has proved a claim, he would be entitled to front pay arising under such claim even if they are difficult to calculate. Any uncertainty about the amount of lost compensation to be awarded to Mr. Pedraza should be resolved in his favor. That said, Mr. Pedraza has the burden of proving by a preponderance of the evidence that he actually incurred a loss of front pay.

### 3. **Plaintiff's Duty to Mitigate Damages**

A plaintiff has a duty to mitigate back pay and front pay damages by using reasonable care and diligence in seeking suitable alternative employment. The burden is on Defendants to prove by a preponderance of the evidence that Mr. Pedraza has failed in his duty to mitigate. Thus, if you find that Mr. Pedraza failed to use reasonable care and diligence and that he could have obtained a job substantially equivalent to the one he left at Manhattan Monster Inc., then you should reduce any award of back pay by the amount you find he could have earned from such employment.

In assessing the reasonableness of Mr. Pedraza's efforts to mitigate his damages, you may consider what you have learned about Mr. Pedraza's qualifications for employment, the characteristics of the job market, and the quantity and quality of the efforts made by Mr. Pedraza to find suitable work. The question whether Mr. Pedraza acted reasonably with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. In weighing the evidence, keep in mind that Mr. Pedraza was under no obligation to enter another line of work, or to take a demotion or a demeaning job.

Mr. Pedraza's failure to make a reasonable effort to minimize damages does not prevent all recovery, but does prevent recovery of such damages as might have been avoided.

4. **<u>Compensatory Damages</u>**

If you find that Mr. Pedraza has established any of his claims, you may award him compensatory damages for injuries such as emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life that was caused by the Defendants' unlawful conduct. Compensatory damages are separate from back pay and front pay and are an amount that will fairly compensate Mr. Pedraza for any injury he actually sustained as a result of Defendants' conduct. There is no requirement that a claim for emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damages. No expert testimony is necessary to prove such harm, and you may rest your findings solely on Mr. Pedraza's testimony.

No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Rather, you may issue an award of monetary damages based on the emotional harm you determine Mr. Pedraza to have suffered, based on the evidence presented and your best judgment. You may not simply award damages for any injury suffered by Mr. Pedraza, you must award damages only for those injuries that were a proximate result of conduct by Defendants that violated Mr. Pedraza's rights. But, you may not award compensatory damages based on speculation or sympathy.

**5.  <u>Punitive Damages</u>**

If you find that Mr. Pedraza prevails on any of his claims under Title VII or the NYCHRL, you may award him punitive damages. Punitive damages are awarded, in the discretion of the jury, to punish a defendant and to set an example in order to deter Defendants and others from committing similar acts in the future. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct. There is no exact rule by which to determine the amount of punitive damages. It is up to the jury to decide what amount is sufficient to punish Defendants.

A plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Under this standard, a defendant need not know that it or he was violating the law, and the plaintiff is not required to prove intentional or malicious conduct.

In calculating a punitive damages award, you should consider, among other things, the (1) nature and reprehensibility of the Defendants' conduct, including the character of the wrongdoing and the Defendants' awareness of what harm the conduct caused or was likely to cause; (2) the amount of time the Defendants engaged in the conduct; and (3) the Defendants' financial condition and the impact your punitive damages award will have on the Defendants. If you award punitive damages, you may consider the Defendants' net worth and the impact of paying that award.

Keep in mind that punitive damages are not intended to, and may not be used to, compensate a plaintiff for his injuries. Instead, the purpose of punitive damages is to punish a defendant and to deter similar conduct in the future. Any punitive damages award should be

limited to the amount reasonably necessary to achieve the goals of punishment and deterrence.

There is an affirmative defense to punitive damages available to an employer such as Manhattan Monster Inc. and/or Spunk Events Inc. under Title VII and the NYCHRL. An employer will not be liable for punitive damages if it has made good faith efforts to enforce an antidiscrimination policy. This defense requires an employer to establish both that it had an antidiscrimination policy and that it made good faith effort to enforce it. This defense focuses on the employer's state of mind. It precludes punitive damages unless the employer discriminated in the face of a perceived risk that its actions would violate federal, state, or local law.

Under the NYCHRL, an employer will not be liable for punitive damages if it has made a good faith effort to enforce an antidiscrimination policy. However, even if you decide to award punitive damages to Mr. Pedraza based on Mr. Lepe's conduct and not Manhattan Monster Inc.'s or Spunk Events Inc.'s, Manhattan Monster Inc. and/or Spunk Events Inc. may still be liable for Mr. Lepe's punitive damages. Under the NYCHRL, an employer is held liable for any award of punitive damages imposed on a managerial or supervisory employee found to have engaged in unlawful discrimination with the necessary state of mind. In effect, the liability for the misconduct of the manager or supervisor is attributed to the employer. Thus, if you assess punitive damages against Mr. Tobey, Manhattan Monster Inc. and/or Spunk Events Inc. would be obligated to pay the amount of such damages you impose. That liability would be joint, meaning that the entire award could be collected from either one or from all of these Defendants in amounts adding up to the total punitive damages. However, you may, in your discretion, reduce the amount of the punitive damages award imposed upon Mr. Tobey that is imputed to Manhattan Monster Inc. and/or Spunk Events Inc. In doing so, you may consider whether Manhattan Monster Inc. and/or Spunk Events Inc. established and complied with policies,

43

programs, and procedures for the prevention and detection of unlawful discriminatory or retaliatory practices by employees, including, but not limited to:

1. A meaningful and responsive procedure for investigation of complaints of discriminatory practices by employees and for taking appropriate action against those persons who are found to have engaged in such practices;

2. A firm policy against such practices, which is effectively communicated to employees and gives employees the opportunity to make complaints of discrimination or retaliation to her employer;

3. A program to educate employees about unlawful discriminatory practices under the local, state, and federal law; and

4. Procedures for the supervision of employees specifically directed at the prevention and detection of such practices.

You may also consider whether Manhattan Monster Inc. and/or Spunk Events Inc. had a record of no or relatively few prior incidents of sex-based or sexual orientation-based discriminatory or retaliatory conduct.

You must consider whether Manhattan Monster Inc. and/or Spunk Events Inc. has established any or all of the factors listed above, and, if so, the degree to which the award against Manhattan Monster Inc. and/or Spunk Events Inc. should be reduced relative to the award against Mr. Tobey, if any. Further, you may take into account Manhattan Monster Inc. and/or Spunk Events Inc.'s financial condition in deciding whether to reduce its responsibility for any punitive damages you may impose against Mr. Tobey.

### III.    CLOSING INSTRUCTIONS

### <u>Right to See Exhibits and Hear Testimony; Communications with the Court</u>

If during your deliberations you want to see any of the exhibits, you may request that they be sent to you in the jury room. A list of exhibits received in evidence will be forwarded to you in the jury room. If you want any of the testimony read, that can also be done and will occur here in open court. Please remember that it is not always easy to locate what you may want, so try to be as specific as you possibly can in requesting exhibits or portions of the testimony. To this end, please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request. If you want any further explanation of the law as I have explained it to you, you may also request that.

Your requests for exhibits or testimony—in fact, any communication with the Court, including any questions on the law, should be made to me in writing, signed by your foreperson, and given to the marshal. If there is any doubt or question about the meaning of any part of the instructions that I have given you during this trial, you should not hesitate to send me a note asking for clarification or for a further explanation. I will respond to any questions or requests you have as promptly as possible, by having you return to the courtroom so that I can address you in person. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching this case. There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me—to request testimony, or to request clarification on the law—you should send a note to me, in writing, signed by your foreperson, and given to one of the court security officers or to my courtroom

deputy. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing, or orally here in open court. If you send any notes to the Court, do not disclose anything about your deliberations. Specifically, do not disclose to anyone—not even to me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

## **Notes**

Many of you have taken notes periodically throughout this trial. You should not show your notes to, or discuss your notes with, any other jurors during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

## **Duty to Deliberate/Unanimous Verdict**

You will now retire to the jury room to begin your deliberations. In order for Mr. Pedraza to prevail on his claims, Mr. Pedraza must sustain his burden of proof as I have explained to you with respect to his claims and the specific questions you are considering. Your verdict on each question must be unanimous. Similarly, defendants must carry their burden as to those areas I have likewise identified for you.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard and is entitled to their opinion, but you are required to exchange views with your fellow jurors. No one juror should hold center stage in the jury room, and no one juror should control and monopolize the deliberations. It is your duty to discuss the evidence. If, after listening to your fellow jurors, and if, after stating your own view, you become convinced that your view is wrong, do not hesitate to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered. Your final vote must reflect your conscientious belief as to how the issues should be decided.

Your verdict must be unanimous. Until such time as you reach unanimous agreement, you must not reveal the standing of the jurors, that is, the split of the vote, to anyone, including the court or anyone else outside the jury room. You are not to discuss the case until all jurors are present. Without all members of the jury, a select handful of jurors is only a gathering of individuals and only collectively when all are present do you constitute a jury, and only then may you deliberate.

Your duty is to decide the issues fairly and impartially, to apply the law as I instructed you, and to see that justice is done. Remember at all times, you are not partisans. You are judges

48

– judges of the facts, evidence, and the application of the law. Your sole interests are to seek the truth from the evidence in the case, and to determine whether the plaintiff has proved his claims by a preponderance of evidence and whether the defendants have proven any of their defenses by a preponderance of the evidence with respect to damages sought. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

## **Verdict Form/Return of Verdict**

I have prepared a verdict form for you to use in recording your decision. Please use that form to report your verdict. Once you have made your verdict, you will record your decisions in the verdict form. You should also proceed through the questions in the order in which they are listed, following the instructions on that form.

After you have reached a verdict, your foreperson will fill out the jury verdict form that will be given to you, sign, and date it, and the foreperson will advise the marshal outside your door that you are ready to return to the courtroom. Do not specify what the verdict is in your note.

I stress that each of you must be in agreement with the verdict that is announced by the foreperson in open court and officially recorded. Once your verdict is announced by your foreperson in open court, and officially recorded, it cannot ordinarily be revoked.

## **Selecting a Foreperson**

Members of the jury, the first thing you should do when you retire to the jury room is to elect one member of the jury as your foreperson. The foreperson has no greater voice or authority than any other juror, and their vote or opinion does not count for any more than any other juror's vote or opinion. The foreperson is simply the person who will communicate with the Court when questions arise. The foreperson is merely your spokesperson to the court. The foreperson can send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict.

**Juror Oath/Sympathy or Bias**

I will remind you that you took an oath to render judgment impartially and fairly, without regard to prejudice or sympathy and without fear, solely upon the evidence and the applicable law. So that is your duty, and I know you will do your duty and reach a just and fair verdict.

If you follow that oath and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict. You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence. It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex, sexual orientation, or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. Both parties are entitled to the same fair trial at your hands. Both parties stand equal before the law and are to be dealt with as equals in this Court.

I have just one more comment. I don't think it is necessary because it seems that even though you haven't known each other very long you have a good relationship, but it is the custom in this courthouse to say it. You should treat each other with courtesy and respect during your deliberations. All litigants stand equal in this room. All litigants stand equal before the bar of justice. Your duty is to decide between these parties fairly and impartially to see that justice is done, all in accordance with your oath as jurors. Thank you for your time and your attentiveness, and now the case is in your hands.

## IV.    CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement. Please don't discuss the case while seated in the box because the case still has not been formally submitted to you.

*  *  *

Members of the jury, my deputy is going to swear the court security officer.

(Court Security Officer sworn)

Members of the jury, you may now retire. You are instructed to retire to the jury room and you may begin your deliberations.